**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CANAL INDEMNITY COMPANY, A SOUTH CAROLINA CORPORATION, | § § § | |
| Plaintiff, | § § § | |
| V. | § § | |
| COASTAL TRANSPORT CO., INC., A TEXAS CORPORATION; CALJET II, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; CALJET OF AMERICA, LLC, AN ARIZONA LIMITED LIABILITY COMPANY; CHEVRON U.S.A., INC., AN PENNSYLVANIA CORPORATION; VALERO MARKETING AND SUPPLY COMPANY, A DELAWARE CORPORATION; CIRCLE K TERMINAL, LLC, A DELAWARE LIMITED LIABILITY COMPANY; NATIONAL INTERSTATE INSURANCE COMPANY, AN OHIO CORPORATION; PHILLIPS66, A DELAWARE CORPORATION; AND PRO-PETROLEUM, INC., A TEXAS CORPORATION, | § § § § § § § § § § § § § § § § § | CASE NO.:   4:19-cv-2945          JURY DEMANDED |
| Defendants. | § § | |

## COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

Pursuant to 28 U.S.C. § 2201 and the Federal Civil Procedure Rule 57, Plaintiff Canal Indemnity Company ("Canal") files this Complaint for Declaratory Judgment against Defendants Caljet II, LLC; Caljet of America, LLC; Chevron U.S.A., Inc.; Valero Marketing and Supply Company; Circle K Terminal, LLC; Phillips66; Pro-Petroleum, Inc. (collectively referred to as the "Defendants"); National Interstate Insurance Company; and Coastal Transport Co., Inc. (referred to as "Coastal"). Canal alleges as follows:

## INTRODUCTION

1.      This case involves an insurance dispute relating to whether Defendants are entitled coverage as additional insureds under liability policies Canal issued to a Texas insured, Coastal Transport Co., Inc.

2.      A justiciable controversy exists between Canal and the Defendants as to whether Canal has a duty to defend or indemnify the Defendants in connection with claims asserted against in the Superior Court for the State of Arizona in Maricopa County under Case No. CV2018-003217 (the "Underlying Lawsuit").

3.      Canal agreed to provide a defense to several Defendants in the Underlying Lawsuit pursuant to a complete reservation of rights. Two of the defendants (Chevron and Phillips 66) voluntarily settled the claims in the Underlying Lawsuit and now seek reimbursement from Canal for amounts paid toward defense and indemnity. For the defendants who remain parties to the Underlying Lawsuit, Canal's defense under reservation is ongoing. Canal denied a defense tender from Pro-Petroleum.

4.      Canal did not agree to provide a defense to Pro-Petroleum, Inc. because Pro-Petroleum, Inc. did not provide Canal with a contract with Coastal showing that Coastal was required to name it as additional insureds under the Canal Policies.

5.      The Canal automobile liability policies each contain a combined single limit of $1,000,000. The Canal commercial general liability policies each contain per occurrence limits of $1,000,000 with aggregate limits of $2,000,000. The defense expenses are paid outside of those limits.

6.      Coastal is Canal's named insured and is included in this action as a necessary party to the extent Canal seeks declaratory relief pertaining to the interpretation of Coastal's Policies.

7.     National Interstate Insurance Company insured Coastal from approximately 2009 to 2016, and upon information and belief, is defending or has defended some of the Defendants in the Lawsuit.  National Interstate Insurance Company is joined as a necessary party to the extent that its rights might be affected by the outcome of the declaratory relief sought by Canal.

8.     Canal brings this Complaint to obtain a declaration regarding the existence and extent of its duties to the Defendants in connection with the Underlying Lawsuit.

## THE PARTIES

9.     Canal is a South Carolina corporation with its principal place of business in South Carolina. Canal is domiciled in South Carolina.

10.     Caljet II, LLC is an Arizona limited liability company with two members: Ditta, LLC and Tridave, LLC. Ditta, LLC has three members with Arizona addresses: Boa Sorte Limited Partnership, Ben Fatto Limited Partnership, and Viel Gluck Limited Partnership. Tridave LLC has a single member, "Of The Tri-First Trust" located in Arizona. Caljet II, LLC is domiciled in Arizona.

11.     Caljet of America, LLC is an Arizona limited liability company with two members: ProPetroleum, Inc. (a Texas corporation) and Caljet II, LLC (see above). Caljet of America, LLC is domiciled in Texas and Arizona.

12.     Phillips 66 is a Delaware corporation with its principal place of business in Houston, Texas. Phillips 66 is domiciled in Delaware and Texas. Phillips 66 has the right to conduct business in Texas and has a registered agent in Austin, Texas.

13.     Chevron U.S.A, Inc. ("Chevron") is a Pennsylvania corporation with its principal place of business in California. Chevron is domiciled in Pennsylvania and California. Chevron has the right to conduct business in Texas and has a registered agent in Austin, Texas.

14.     Valero Marketing and Supply Company ("Valero") is a Delaware corporation with its principal place of business in San Antonio, Texas. Valero is domiciled in Delaware and Texas. Valero has the right to conduct business in Texas and has a registered agent in Dallas, Texas.

15.     Circle K Terminal, LLC ("Circle K") is a Delaware limited liability company with a single member: Circle K Stores, Inc. Circle K Stores, Inc. is a Texas corporation with its principal place of business in Texas. Circle K is domiciled in Texas.  Circle K has the right to conduct business in Texas and has a registered agent in Austin, Texas.

16.     Coastal Transport Co., Inc. is a Texas corporation with its principal place of business in Texas. Coastal is domiciled in Texas. Coastal has the right to conduct business in Texas and has a registered agent in San Antonio, Texas.

17.     National Interstate Insurance Company is an Ohio corporation with its principal place of business in Ohio. National Interstate Insurance Company has the right to conduct business in Texas and has a registered agent in Austin, Texas.

18.     Pro-Petroleum, Inc. ("Pro-Petroleum") is a Texas corporation with its principal place of business in Texas. Pro-Petroleum, Inc. has the right to conduct business in Texas and has a registered agent in Lubbock, Texas.

19.     Defendants Caljet II, LLC, Caljet of America, LLC, Phillips 66, Chevron, Circle K, Valero, and Pro-Petroleum are referred to collectively throughout this complaint as "Defendants."

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the subject matter of this declaratory relief action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between Canal and all defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

21.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because one or more defendants reside in this District and within this Division.

## FACTUAL BACKGROUND OF UNDERLYING LAWSUIT

22.     Canal's factual background is based upon the allegations in the Complaint filed in the Underlying Lawsuit filed on March 6, 2018 (the "Complaint").

23.     This Underlying Lawsuit relates to wrongful death claims asserted by Mary Major and Joshua Webb, the surviving spouse and son of Elwyn Webb (the "Webb Plaintiffs").

24.     Mr. Webb was a gasoline truck driver for Calzona Tankways, Inc. between 1985 and 1993, and Coastal Transport Co., Inc. between 1993 and 2015.

25.     The Complaint alleges that Mr. Webb loaded gasoline at terminals and loading racks owned by the Defendants between 1985 and 2016.

26.     The Complaint is silent as to the period of time in which Defendants owned or operated the subject terminals or when Mr. Webb visited them.

27.     The Complaint alleges that in the course of his work Mr. Webb was exposed to benzene-containing gasoline through inhalation and dermal absorption, and that as a direct result of his exposure to benzene Mr. Webb contracted Myelodysplastic Syndrome (MDS), a blood and bone marrow cancer.

28.     Mr. Webb was diagnosed with MDS in January 2016 and passed away on March 19, 2016.

29.     In their Complaint, the Webb Plaintiffs assert claims for premises liability and failure to warn against the following defendants: SFPP, LP; Caljet of America, LLC; Caljet II, LLC; Shell Oil Company; Equilon Enterprises, LLC; Phillips 66; Atlantic Richfield Company dba Arco Products Company; Circle K Terminal, LLC; BP Product North America; Exxon Mobil Corporation

dba Mobil Oil Corp; Chevron Products Company; Chevron USA, Inc.; Pro-Petroleum, Inc.; and Valero Marketing and Supply Company.

30.    The Complaint does not contain any allegations that Coastal or Mr. Webb was negligent, or that Coastal is in any way liable for the Webb Plaintiffs' damages.

31.    Instead, the first count for premises liability alleges that Defendants (1) owed a duty of care to individuals, like Mr. Webb, working on its premises, (2) knew or should have known of an unreasonably dangerous condition on its premises (i.e. benzene exposure), and (3) failed to use reasonable care to prevent harm to Mr. Webb.

32.    The examples the Webb Plaintiffs provide in their Complaint of Defendants' alleged negligence include: failing to take proper precautions, failing to warn Mr. Webb of the dangers of handling benzene, failing to provide Mr. Webb with knowledge about how to protect himself, failing to place adequate warnings on the property, failing to instruct Mr. Webb on how to handle benzene, ignoring or failing to learn the risks associated with benzene, creating a dangerous condition on its premises, failing to keep the premises reasonably safe, failing to perform industrial hygiene monitoring, and failing to monitor benzene levels at its premises. The count alleges that the Webb Plaintiffs' damages were "a direct and proximate result" of Defendants' negligence.

33.    The second count for negligent failure to warn alleges that Defendants manufactured, distributed and/or sold benzene-containing gasoline and therefore had a duty to warn Mr. Webb about the risks associated with their product.

34.    The examples the Webb Plaintiffs provide in their Complaint of Defendants' alleged negligence include: failing to warn Mr. Webb of the dangers of benzene and carcinogens, failure to provide Mr. Webb with knowledge regarding safe and sufficient apparel and protective wear, failing to place adequate warnings on the property, supplying products with manufacturing defects, failing

to provide safety equipment, and failure to warn Mr. Webb about the dangers of developing cancer. The count alleges that the Webb Plaintiffs' damages were "a direct and proximate result" of Defendants' negligence.

35.     The Complaint seeks general damages, special damages, wrongful death damages, medical expenses, funeral and burial expenses, punitive damages, and the Webb Plaintiffs' costs.

## THE CANAL INSURANCE POLICIES

36.     Canal Indemnity Company issued numerous auto liability and commercial general liability policies to named insured Coastal Transport Co., Inc., located at 1603 Ackerman Road in San Antonio, Texas.

37.     The policies were countersigned by Canal's general agent, Delta General Agency Corporation, in Houston, Texas. Coastal's agents for these policies included J. Howse, Inc. and The Transportation Group—both located in Houston, Texas. The policies also contain numerous endorsements that are specific to Texas law.

38.     The automobile liability policies each contain a combined single limit of $1,000,000. The commercial general liability policies each contain per occurrence limits of $1,000,000 with aggregate limits of $2,000,000.

39.     The policy numbers and effective dates for the policies are as follows:

**Automobile Liability Policies (collectively "the Auto Policies")**

- Policy No. LH01508 with effective dates from November 15, 2001 to July 1, 2002 (the "2001 Auto Policy")

- Policy No. L031944 with effective dates from June 1, 2003 to May 1, 2004 (the "2003 Auto Policy")

- Policy No. L037588 with effective dates from May 1, 2004 to March 15, 2005 (the "2004 Auto Policy")

- Policy No. L037755 with effective dates from March 15, 2005 to May 1, 2006 (the "2005 Auto Policy")

- Policy No. L045542 with effective dates from May 1, 2006 to May 1, 2007 (the "2006 Auto Policy")

- Policy No. L060240 with effective dates from May 1, 2007 to May 1, 2008 (the "2007 Auto Policy")

- Policy No. PDA00788501 with effective dates from May 1, 2008 to May 1, 2009 (the "2008 Auto Policy")

**Commercial General Liability Policies (collectively "the CGL Policies")**

- CGL014504 with effective dates from June 7, 2003 to May 15, 2004 (the "2003 CGL Policy")

- CGL014507 with effective dates from May 15, 2004 to March 15, 2005 (the "2004 CGL Policy")

- CGL014511 with effective dates from March 15, 2005 to May 1, 2006 (the "2005 CGL Policy")

- CGL014515 with effective dates from May 1, 2006 to May 1, 2007 (the "2006 CGL Policy")

- PDA00248901 with effective dates from May 1, 2007 to May 1, 2008 (the "2007 CGL Policy")

- PDA00788701 with effective dates from May 1, 2008 to May 1, 2009 (the "2008 CGL Policy")

## THE AUTO POLICIES

**A.    Defendants Do Not Qualify as Additional Insureds**

40.    As the entities seeking coverage, Defendants must demonstrate that they qualify as insureds under the Auto Policies.

41.    None of the Defendants is identified as a Named Insured on the Auto Policies on the Declarations.

42.    The Auto Policies define "insured" to mean "any person or organization qualifying as an insured in the 'Persons Insured' provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability."

43.    Section III – Persons Insured in the Auto Policies says that "Each of the following is an insured under this insurance to the extent set forth below…(a) the named insured…(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above."

44.    Section III also states "None of the following is an insured…(iii) any person or organization, other than the named insured, with respect to: (1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a trailer designed for use with a four wheel private passenger automobile and not being used for business purposes with another type motor vehicle), or (2) a trailer while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company."

45.    Section II.A.1. "Who Is An Insured" in the 2008 Auto Policy, as well as the amendments to that policy through the Motor Carrier Endorsement written on form IA 11 CW 0907,

contain language that differs from the earlier policies. The 2008 Auto Policy states that for operations Coastal engages in as a "motor carrier," the Liability Coverage portion of the policy is changed to include as "insureds": "b. Anyone else while using with [Coastal's] permission a covered 'auto' you own, hire, or borrow except…(4) Anyone other than [Coastal's] 'employees'…while moving property to or from a covered 'auto'…" It also includes as insureds "e. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

46.     This "Who Is An Insured" provision is also amended by the Trucker's Endorsement, form IA 06 CW 0906 to state "6. No coverage is afforded to any person, firm or organization using the described 'auto' pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, expressed or implied." The Trucker's Endorsement also amends Section IV. – Business Auto Conditions to include this provision regarding other insurance: "e. Regardless of the provisions of paragraph a. above, in the event the 'auto' described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded you shall be excess insurance over any other insurance."

47.     The 2008 Auto Policy also includes an endorsement entitled "Hired Autos Specified As Covered Autos You Own", written on form CA 99 16 12 93. This includes the following provision in the "Who Is An Insured" section for liability coverage: "While any covered 'auto' described in the Schedule is rented or leased to you and is being used by or for you, its owner and anyone else from whom you rent or lease it is an 'insured' but only for that covered auto." The Schedule states "Per Monthly Reporting Under Fleet Automatic" 2008 "Monthly Reporting."

48.     As discussed above, the allegations in the Complaint against Defendants relate to their own independent negligence for premises liability and failure to warn. There are no allegations

in the Complaint that Coastal is liable for the Webb Plaintiffs' damages, or in any way at fault for the Webb Plaintiffs' damages, nor are there allegations that Defendants are liable for Coastal's conduct.

49.     Because Defendants are not named insureds, and do not qualify as insureds pursuant to the "Who Is An Insured" provisions based upon the available information, they only has coverage if they qualify as additional insureds under one of the Auto Policies' additional insured ("AI") endorsements.

50.     The 2001 Auto Policy does not contain any AI endorsements. Therefore, there is no potential for coverage for Defendants under the 2001 Auto Policy.

51.     The 2003 Auto Policy, the 2004 Auto Policy, the 2005 Auto Policy, the 2006 Auto Policy, and the 2007 Auto Policy, each contain a "General Change" endorsement that states as follows:

> IT IS HEREBY UNDERSTOOD AND AGREED, THAT NOT WITHSTANDING THE CONTRACTUAL LIABILITY EXCLUSION A OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED, SUCH INSURANCE AS IS AFFORDED HEREIN SHALL APPLY AS ADDITIONAL INSURED COVERAGE TO ANY COMPANY WITH WHICH THE NAMED INSURED HAS A CONTRACT IN WRITING PRIOR TO AN OCCURRENCE, AGREEING TO PROVIDE PROTECTION FOR LIABILITY CLAIMS ARISING OUT OF THE NAMED INSURED'S OPERATION OF VEHICLES INSURED HEREUNDER. WHERE REQUIRED BY CONTRACT IN WRITING, IT IS AGREED SUBROGATION RIGHTS AGAINST THE ADDITIONAL INSURED ARE WAIVED UNLESS CAUSED SOLELY BY THE ADDITIONAL INSURED. IN THE EVENT OF CANCELLATION, NOTICE WILL BE SENT ONLY TO THE NAMED INSURED.

52.     The 2008 Auto Policy contains a "POLICY CHANGES" endorsement written on form IL 45fe CW 0107 that states as follows:

> ADDITIONAL INSURED ENDORSEMENT. This endorsement modifies insurance provided under the following BUSINESS AUTO COVERAGE FORM With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement This endorsement identifies person(s)

or organization(s) who are "insured's" [sic] under the Who Is An Insured provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form. SCHEDULE Name of Person(s) or Organization(s): Any organization that has requested to be a Designated Insured and you are obligated through a written contract to provide insurance. Each person or organization shown in the Schedule is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is Insured Provision contained in Section II of the Coverage Form. For the purposes of the coverage provided by this endorsement, Section II, Who Is An Insured is changed to include the owner of a non-owned trailer. If "you" or "we" cancel the policy, we will give notice of cancellation to the person(s) or organization(s) named in the Scheduled above as allowed by the Cancellation Common Policy Condition.

53.     Lastly, the 2008 Auto Policy also contains an endorsement written on form IA 101 CW 0906 entitled "ADDITIONAL INSURED WITH WAIVER OF RIGHTS OF RECOVERY". It amends the BUSINESS AUTO COVERAGE FORM and states "The person or organization shown above is an 'insured' for Liability Coverage as indicated in Section II Liability Coverage under Who Is An Insured. We will waive our rights of recovery against the person or organization shown above." The Name of Person or Organization is identified as "PER LIST AT DELTA." Canal has not yet been able to access the list that would have existed at Delta for the 2008 Auto Policy.

54.     Coverage through the AI endorsements to the 2003-2007 Auto Policies requires that the contract with Coastal exist prior to the "occurrence" at issue.

55.     The 2008 Auto Policy's AI endorsement does not require a written contract with Coastal to have existed prior to the occurrence, but it does require that the entity with the contract also qualify as an insured under Section II. As set forth above, none of the Defendants qualifies as an insured under Section II. Therefore, the AI endorsement on the 2008 Auto Policy will not afford them coverage either.

56.     Canal has been provided with two contracts in connection with the Caljet tender, one dated May 9, 1995 and another dated May 9, 2013. The 1995 contract is between "Coastal

Transport" and "Caljet, Inc." Caljet II, LLC and Caljet of America, LLC are not parties to the 1995 contract. The 2013 contract is between Coastal Transport Co., Inc. and Caljet of America, LLC. The 2013 contract requires Coastal to name Caljet of America, LLC as an additional insured on its liability policies.

57.     Canal has been provided with portions of three contracts between Valero Marketing & Supply Company and Coastal, including a January 1, 2006 Transportation Services Agreement, a September 1, 2015 Transportation Services Agreement, and a September 1, 2018 Transportation Services Agreement. The 2006 contract requires Coastal to name "Valero Energy Corporation, its subsidiaries and affiliates, and each of their officers, directors and employees" as additional insureds on Coastal's liability policies. Canal has not been provided with complete copies of the 2015 or 2018 contracts and do not have information on whether they also contain requirements relating to additional insured coverage.

58.     Canal has been provided with a single contract dated September 15, 2005 between Coastal and Phillips 66. The contract states that Coastal's liability policies shall be endorsed to show Phillips 66 as an additional insured.

59.     Canal has been provided with two "Master Fuel Transportation Agreements" between Coastal and "Chevron Products Company, a division of Chevron U.S.A., Inc." One is dated June 1, 2008 and the other June 1, 2013. The contracts require Coastal to include "Chevron, affiliates and the officers, directors, employees and agents of each'" as additional insureds on its liability policies.

60.     Canal has been provided with three contracts between Coastal and Circle K Stores, Inc. dated January 9, 2010, February 1, 2012 and February 1, 2015. The contracts require that Coastal name "Circle K Stores, Inc., and its parent, subsidiaries, agents, assigns, affiliates, employees, directors and officers as additional insureds" on its liability policies.

61.     Canal has not been provided with complete copies of contracts between Coastal and Pro-Petroleum, Inc. and does not have information on whether they also contain requirements relating to additional insured coverage.

62.     Defendants have not met the conditions to coverage set forth in the AI endorsements and therefore do not qualify as additional insureds under the Auto Policies.

**B.      The Defendants Cannot Bring the Claims Against Them Within the Auto Policies' Insuring Agreement**

63.     As the entities seeking coverage, Defendants also have the responsibility to bring these claims within the purview of the insuring agreements.

64.     Section A.I.A. in the insuring agreement in the 2003-2007 Auto Policies states that Canal "will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of bodily injury and property damage to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile** and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage** …."

65.     The 2003-2007 Auto Policies define "**bodily injury**" to mean "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." They define "**occurrence**" to mean "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured." They define "**owned automobile**" to include "an automobile which is owned by the **named insured** and described in the declarations" and "a **trailer** not described in this policy, if designated for use with a four wheel private passenger

automobile and if not being used for business purposes with another type of automobile." These policies define "**trailer**" to include a "semi-trailer but does not include mobile equipment."

66.     The 2008 Auto Policy's insuring agreement states that Canal will pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Section II entitled "Liability Coverage" also provides that Canal "will also pay all sums an 'insured' legally must pay as a 'covered pollution cost or expense' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos'. However, [Canal] will only pay for the 'covered pollution cost or expense' if there is either 'bodily injury' or 'property damage' to which this insurance applies that is caused by the same 'accident'."

67.     The 2008 Auto Policy defines "auto" as "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." However, the definition of "'auto' does not include 'mobile equipment'." This policy further defines "accident" as including "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." In addition, the 2008 Auto Policy defines "pollutant" to include "any solid, liquid, gaseous or thermal irritant or contaminate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." "Covered pollution cost or expense" is defined as:

any cost or expense arising out of:

**1.**  Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants";

    **a.** That are, or that are contained in any property that is:

        **1.** Being transported or towed by, handled or handled for movement into, onto, or from the covered "auto";

        **2.** Otherwise in the course of transit by or on behalf of the "insured"; or

        **3.** Being stored, disposed of, treated or processed in or upon the covered "auto";

    **b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

    **c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** "does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

        **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed, or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

        **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from the premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    **A.** The "pollutants" or any property in which the "pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

---

**B.** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is cased directly by such upset, overturn or damage.

68.     The 2008 Auto Policy's liability coverage provides coverage for any "auto," as indicated by the "11" symbol under the "Covered Auto" section of the Schedule of Coverages and Covered Autos. This symbol is defined as "any 'auto' 10,000 GVW or greater."

69.     Section IV.B.7. of the 2008 Auto Policy states that "Under this Coverage Form, we cover 'accidents' and 'losses' occurring: a. During the policy period shown in the Declarations; and b. Within the coverage territory. The coverage territory is: a. The United States of America…."

70.     The 2008 Auto Policy contains an endorsement entitled "HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN". This endorsement provides "Any 'auto' described in the Schedule will be considered a covered 'auto' you own and not a covered 'auto' you hire, borrow, or lease under the coverage for which it is a covered 'auto.'" The schedule states "PER MONTHLY REPORTING UNDER FLEET AUTOMATIC" 2008 "MONTHLY REPORTING."

71.     Defendants have not demonstrated that the Complaint alleges damages because of bodily injury caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading of an owned automobile and therefore cannot bring the claims against them within the insuring agreement of the Auto Policies.

### C.     Several Exclusions in the Auto Policies Preclude Coverage

72.     The 2003-2007 Auto Policies also contains several relevant exclusions. The first is Exclusion (g), which states the insurance does not apply to "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

73.     The next is written on an endorsement entitled "Occupant Hazard Excluded". This states "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile. It is further agreed that, in the event the company shall, because of provision of Federal or State statutes become obligated to pay any sum or sums of money because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the company for any and all loss, costs and expenses paid or incurred by the company."

74.     The 2003-2007 Auto Policies also contain an exclusion entitled "Truckman's Endorsement" that provides "In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement either written or oral, expressed or implied, the terms and provisions of the Insuring Agreement III of Section A, entitled "Persons Insured" notwithstanding." It further provides that "In the event the automobile described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded the named insured shall be excess insurance over any other insurance."

75.     There is also an endorsement to the 2003-2007 Auto Policies that amends the exclusion section to preclude coverage for "bodily injury or property damage arising out of the named insured's work after that work has been completed or abandoned. In this exclusion, the named insured's work means: (1) work or operations performed by the named insured or on behalf of the named insured; and (2) materials, parts or equipment furnished in connection with such work or operations." It provides that the "named insured's work will be deemed completed at the earliest

of the following times: (1) when all of the work called for in the named insured's contract has been completed; (2) when all of the work to be done at the site has been completed if the named insured's contract calls for work at more than one site; and (3) when that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project…work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." This same endorsement includes an exclusion for bodily injury "arising out of the operation of the following…pumps…well servicing equipment."

76.     The 2008 Auto Policy contains other relevant exclusions. For example, Exclusion 7., Handling of Property, precludes coverage for "'bodily injury'…resulting from the handling of property: a. Before it is moved from the place where it is accepted by the 'insured' for movement into or onto the covered 'auto'; or b. After it is moved from the covered 'auto' to the place where it is finally delivered by the 'insured'."

77.     Exclusion 10., Completed Operations, says the insurance does not apply to "'bodily injury'…arising out of your work after that work has been completed or abandoned. In this exclusion, your work means: (1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment furnished in connection with such work or operations." It provides that the "your work will be deemed completed at the earliest of the following times: (1) when all of the work called for in your contract has been completed; (2) when all of the work to be done at the site has been completed if the your contract calls for work at more than one site; and (3) when that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project…work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as

completed."

78.     Exclusion 11., Pollution, precludes coverage for "'bodily injury'…arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants': a. That are, or that are contained in any property that is: (1) being transported or towed by, handled, or handled for movement into, onto or from, the covered 'auto'; (2) otherwise in the course of transit by or on behalf of the 'insured'; or (3) being stored, disposed of, treated or processed in or upon the covered 'auto'; b. Before  the 'pollutants' or any property in which the 'pollutants' are contained are moved from the place where they are accepted by the 'insured' for movement into or onto the covered 'auto'; or c. After the 'pollutants' or any property in which the 'pollutants are contained are moved from the covered 'auto' to the place where they are finally delivered, disposed of or abandoned by the 'insured'."

79.     Exclusion 11 also states that "Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar 'pollutants' that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered 'auto' or its parts if: (1) The 'pollutants' escape, seep, migrate, or are discharged, dispersed or released directly from an 'auto' part designed by its manufacturer to hold, store, receive or dispose of such 'pollutants'; and (2) The 'bodily injury'…does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of 'mobile equipment.'" It goes on to say "Paragraphs b. and c. above of this exclusion do not apply to 'accidents' that occur away from premises owned by or rented to an 'insured' with respect to 'pollutants' not in or upon a covered 'auto' if: (1) The 'pollutants' or any property in which the 'pollutants' are contained are upset, overturned or damaged as a result of the maintenance or use of a covered 'auto'; and (2) The discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused directly by such upset, overturn or damage."

80.     The Pollution exclusion is modified by an endorsement written on form CA 99 48 03 06, entitled "Pollution Liability – Broadened Coverage for Covered Autos – Business Auto, Motor Carrier, and Trucker's Coverage Forms." The endorsement states that Paragraph a. in the Pollution exclusion "applies only to liability assumed under a contract or agreement." It also states that for purposes of the coverage provided under Paragraph a. in the Pollution exclusion, the "Care, Custody or Control" exclusion does not apply.

81.     The 2008 Auto Policy includes an endorsement entitled, "Occupant Hazard Exclusion Endorsement" stating the coverage does not apply to "'bodily injury' sustained by any person while in or upon, entering or alighting from the 'auto.'"

**D.     Other Relevant Provisions**

82.     Section IV. in the 2003-2007 Auto Policies identifies the "Limits of Liability." This provision states that "Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, (3) claims made or suits brought on account of bodily injury or property damage or (4) automobiles to which this policy applies, the company's liability is limited as follows…Coverage A – The limit of bodily injury liability stated in the schedule of the policy as applicable to 'each occurrence' is the total limit of the company's liability for all damages because of bodily injury, including damages for care and loss of service, or property damage as a result of any one occurrence, provided that with respect to any one occurrence for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility under the provisions of the Motor Vehicle Financial Responsibility Law of any state or province such limit of liability shall be applied to provide the separate limits required by such law for bodily injury liability … to the extent of the coverage required by such law, but the separate application of such limit shall not increase the total limit of the company's liability."

83.     The 2003-2007 Auto Policies also contain provisions relating to "Other Insurance" in Section 6. of the Conditions. It states:

> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.
>
> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
>
> > (a) Contribution by equal shares. If all such other valid and collectible insurance provides for contribution by equal shares, the company (including any affiliated company) shall not be liable for a great proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limits in full or the full amount of the loss is paid.
> >
> > (b) Contribution by limits. If any of such other insurance does not provide for contribution by equal shares, the company (including any affiliated company) shall not be liable for a great proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

84.     The 2003-2007 Auto Policies also outline certain duties that insureds owe Canal. For example, Section 4.c. in the Conditions makes it clear that the "insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident."

85.     The 2008-2009 Auto Policy also contains certain additional relevant provisions. The Section II.C., Limits of Liability, states that "Regardless of the number of covered 'autos',

'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations. All 'bodily injury', 'property damage' and 'covered pollution cost or expense' to substantially the same conditions will be considered as resulting from one 'accident.'"

86.     Section IV.A.2., Loss Conditions, states that Canal has "no duty to provide coverage under this policy unless there has been full compliance with the following duties…b. Additionally, [Coastal] and any other involved 'insured' must: (1) Assume no obligation, make no payment or incur no expense without [Canal's] consent, except at the 'insured's' own cost…(3) Cooperate with [Canal] in the investigation or settlement of the claim or defense against the 'suit."

87.     Section IV.B.8. in the 2008-2009 Auto Policy is entitled "Two or More Coverage Forms Or Policies Issued By Us." It provides that "If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same 'accident', the aggregate maximum Limit of Insurance under all of the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form."

88.     Lastly, the 2008-2009 Auto Policy also contains an "Other Insurance" provision in Section IV.B.5.[1] It indicates as follows:

> a.  For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

---

[1] This provision is amended by the Motor Carrier Endorsement, form IA 11 CW 0907.

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

## THE CGL POLICIES

### A.      Defendants Do Not Qualify Additional Insureds Under the CGL Policies

89.      As with the Auto Policies, because Defendants seek coverage from Canal, they must demonstrate that they qualify as insureds under the CGL Policies.

90.      None of the Defendants is identified as a Named Insured on the CGL Policies' Declarations pages.

91.      Section II – Who Is An Insured in the CGL Policies state that "If you are designated in the Declarations as … An organization other a partnership, joint venture, or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your offices and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders." Section II.1.d. The CGL Policies state, "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy." Because Defendants are not named insureds, nor do they qualify as insureds pursuant to Section II, they only have coverage if they qualify as an additional insured under an additional insured ("AI") endorsement.

92.     The 2003 CGL Policy, 2004 CGL Policy, 2005 CGL Policy, 2006 CGL Policy, and 2007 CGL Policy, each contain an AI endorsement written on form GL 705 entitled "Additional Insured – vicarious liability coverage for Owners, Lessees, or Contractors – automatic status when required in construction agreement with you." It amends Section II – Who Is An Insured "to include as an insured any person or organization for whom [Coastal is] performing operations when [Coastal] and such person or organization have agreed in writing in a contract or agreement, prior to an occurrence, that such person or organization be added as an additional insured on [Coastal's] policy."

93.     The endorsement goes on to state "Such person or organization is an insured only with respect to liability arising out of [Coastal's] ongoing operations performed for that insured, but excluding any negligent acts committed by such insured. A person or organization's status as an insured under this endorsement ends when [Coastal's] operations for that insured are completed."

94.     There are certain exclusions that apply to this AI endorsement. For example, the AI coverage does not apply to "bodily injury" occurring after all "work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed" or after that portion of Coastal's work "out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."

95.     The 2004 CGL Policy also contains an AI endorsement written on form CG 20 10 10 01, entitled "Additional Insured – Owners, Lessees, or Contractors – scheduled person or organization." It amends Section II – Who Is An Insured "to include as an insured the person or

organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured." The Schedule is blank and the endorsement states "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." The Declarations indicates that additional named insureds are shown on Form 2-1-E. There are ten entities listed on the Form 2-1-E included in the policy; Defendants are not included among them.

96.     The 2008 CGL Policy contains an AI endorsement written on form IG 39 CW 0106 entitled "ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION." It amends Section II – Who Is An Insured "to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for 'bodily injury'…caused, in whole or in part, by [Coastal's] acts or omissions or the acts or omissions of those acting on [Coastal's] behalf: 1. In the performance of [Coastal's] ongoing operations; or 2. In connection with [Coastal's] premises owned by or rented to [Coastal]." The Schedule identifies "Caljet of America, LLC 125 N. 53rd Ave Phoenix, AZ 85043". With respect to the insurance affording to Caljet of America, LLC the following additional exclusions apply: "This insurance does not apply to 'bodily injury' …occurring after: 1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance, or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or 2. That portion of [Coastal's work] out of which the injury or damages arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."

97.     As set forth above, Defendants have provided certain contracts to Canal but have not satisfied the conditions to coverage set forth in the AI endorsements. Therefore, they do not qualify

as additional insureds under the CGL Policies.

**B.    Defendants Cannot Bring the Claims Against Them Within the Insuring Agreement**

98.    Under Section I.A.1. in the CGL Policies, Canal will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." It also provides Canal with "the right and duty to defend the insured against any 'suit' seeking those damages. However, [Canal has] no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'' or 'property damage' to which this insurance does not apply." Canal may, at its discretion, investigate any "occurrence" and settle any claim or "suit" that may result. The CGL Policies only apply if the "'bodily injury'… is caused by an 'occurrence' that takes place in the 'coverage territory'" and the "'bodily injury'…occurs during the policy period." Section I.1.b.

99.    The CGL Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Section V.3.

100.    The CGL Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section V.13.

101.    Defendants have not demonstrated that "bodily injury" occurred while the CGL Policies were in effect and therefore cannot bring the claims within the insuring agreement of the CGL Policies.

**C.    Several Exclusions in the CGL Policies Preclude Coverage**

102.    The first is Exclusion b., Contractual Liability.  This exclusion states that the insurance does not apply to "property damage" for which "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." See Section I.A.2.b.  There are exceptions to this exclusion, such as when the insured would have been liable for the damages in the

absence of the contract or agreement, or when the contract qualifies as an "insured contract," so long as the "bodily injury" occurs after execution of the contract or agreement.  An "insured contract" includes "That part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for 'bodily injury' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."  Section V.9.

103.    They also include Exclusion g., Aircraft, Auto or Watercraft. Under this exclusion, the insurance does not apply to "bodily injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to <u>any insured</u>. Use includes operation and 'loading or unloading.'" (emphasis added) This exclusion does not apply to "(4) Liability assumed under any 'insured contract' for the ownership, maintenance or use of aircraft or watercraft…"

104.    The 2003 CGL Policy, 2004 CGL Policy, and 2005 CGL Policy, also contains an endorsement entitled, "Exclusion – Designated Ongoing Operations." It states this insurance "does not apply to 'bodily injury' or 'property damage' arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf of whether the operations are conducted for yourself or for others…." The Schedule describes the "Designated Ongoing Operation(s)" as "all operations other than those operations directly related to the business of 'for hire' trucking."

105.    The 2006 CGL Policy contains an endorsement entitled "Limitation of Coverage to Designated Business Activity" on form IG 36 CW 0105. It states this insurance "applies only to 'bodily injury' …and medical expenses arising out of your business activity described in the schedule of this endorsement." The Schedule includes the following Business Description:

"operations usual and customary to the business of 'for hire' trucking." The 2007 CGL Policy and 2008 CGL Policy contain a similar limitation, but the Schedule states "Transportation of property for others for compensation."

106.    The 2003-2006 CGL Policies contain a "Special Exclusion Endorsement." It includes a total pollution exclusion that replaces any existing terms or exclusions regarding pollution liability within the policies. Pursuant to the endorsement, the insurance does not apply to "'Bodily injury'…or medical expenses which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, irritants, or hazardous substances at any time…." It goes on to state that the coverage does not apply to "Any loss, cost, or expense arising out of any: a. Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants…." Under this endorsement, pollutants means "any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes acids, alkalis, chemicals, and waste…." This "Special Exclusion Endorsement" also precludes coverage for "punitive or exemplary damages."

107.    The 2007 CGL Policy and 2008 CGL Policy contain a "Total Pollution Exclusion Endorsement" written on form CG 21 49 09 99. It says the insurance does not apply to: "(1) 'Bodily injury'… which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time…." The coverage also does not apply to "(2) Any loss, cost, or expense arising out of any: a. Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of 'pollutants'…." The 2007 CGL Policy and 2008 CGL Policy contain a "Punitive or

Exemplary Damages Exclusion" written on form IG 35 CW 0106 that precludes coverage for punitive or exemplary damages.

### D.     Other Relevant Provisions

108.     Section III in the CGL Policies, entitled Limits of Insurance, states that "The Limit of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: a. Insureds; b. Claims made or 'suits' brought; or c. Persons or organizations making claims or brining 'suits'." It also states, "…the Each Occurrence Limit is the most we will pay for the sum of: a. Damages under Coverage A; and b. Medical Expenses under Coverage C because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.'" It also says "The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance."

109.     Section IV.2., Commercial General Liability Conditions, sets forth certain duties that insureds owe Canal. For example, Coastal and any other involved insured must: "(3) Cooperate with [Canal] in the investigation or settlement of the claim or defense against the 'suit'; (4) Assist [Canal] upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." Section IV.2.d. also states that "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

110.     The CGL Policies also contain an "Other Insurance" provision in Section IV.4. It indicates as follows:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.   Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below:

b.   Excess Insurance

This insurance is excess over:

(1)   Any other insurance, whether primary, excess, contingent or on any other basis…(d) If the loss arises out of maintenance or use of aircraft, 'auto' or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

(2)   Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'. If no other insurer defends, we will undertake to do so, but will be entitled to the insured's rights against all those other insurers.

When this insurance is over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)   The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.   Method of Sharing

If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it

has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## **FIRST COUNT FOR RELIEF**

### **(DECLARATORY JUDGMENT –**

### **NO DUTY TO DEFEND UNDER AUTO POLICIES)**

111.    Canal reasserts and incorporates by reference each and every allegation contained in paragraphs 1-110 above, as if fully set forth herein.

112.    An actual controversy has arisen and exists between Canal and Defendants regarding whether Canal is obligated to provide a defense to Defendants with respect to the Underlying Lawsuit under the Auto Policies.

113.    Canal named Coastal in this Complaint because it has an interest in whether defense payments are made under its policies.

114.    Canal desires judicial determination and declaration of its rights and duties with respect to the Auto Policies.

115.    Canal maintains that it does not owe Defendants a duty to defend because the allegations in the Underlying Lawsuit against Defendants are not covered under the Auto Polices. Without the potential for covered damages, Canal does not owe Defendants a duty to defend.

116.    Canal is entitled to a judicial declaration that it has no obligation under the Canal Policies to defend Defendants in the Underlying Lawsuit under the Auto Policies.

**SECOND COUNT FOR RELIEF**

**(DECLARATORY JUDGMENT –**

**NO DUTY TO DEFEND UNDER CGL POLICIES)**

117.    Canal reasserts and incorporates by reference each and every allegation contained in paragraphs 1-110above, as if fully set forth herein.

118.    An actual controversy has arisen and exists between Canal and Defendants regarding whether Canal is obligated to provide a defense to Defendants with respect to the Underlying Lawsuit under the CGL Policies.

119.    Canal named Coastal in this Complaint because it has an interest in whether defense payments are made under its policies.

120.    Canal desires judicial determination and declaration of its rights and duties with respect to the CGL Policies.

121.    Canal maintains that it does not owe Defendants a duty to defend because the allegations in the Underlying Lawsuit against Defendants are not covered under the CGL. Without the potential for covered damages, Canal does not owe Defendants a duty to defend.

122.    Canal is entitled to a judicial declaration that it has no obligation under the Canal Policies to defend Defendants in the Underlying Lawsuit under the CGL Policies.

**THIRD CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT –**

**NO DUTY TO INDEMNIFY UNDER AUTO POLICIES)**

123.    Canal incorporates by reference each and every allegation contained in paragraphs 1-110 above, as though fully set forth herein.

124.    An actual controversy has arisen and exists between Canal and Defendants regarding

whether Canal is obligated to indemnify Defendants with respect to the Underlying Lawsuit under the Auto Policies.

125.    Canal named Coastal in this Complaint because it has an interest in whether indemnity payments are made under its policies.

126.    Canal desires judicial determination and declaration of its rights and duties with respect to the Auto Policies.

127.    Canal maintains that it is not obligated to indemnify Defendants because the claims alleged against them in the Underlying Lawsuit are not covered under the Auto Policies. Without covered damages, Canal does not owe Defendants indemnity.

128.    Canal is entitled to a judicial declaration that it has no obligation under the Canal Policies to indemnify Defendants in connection with the Underlying Lawsuit under the Auto Policies.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(DECLARATORY JUDGMENT –**

**NO DUTY TO INDEMNIFY UNDER CGL POLICIES)**

129.    Canal incorporates by reference each and every allegation contained in paragraphs 1-110 above, as though fully set forth herein.

130.    An actual controversy has arisen and exists between Canal and Defendants regarding whether Canal is obligated to indemnify Defendants with respect to the Underlying Lawsuit under the CGL Policies.

131.    Canal named Coastal in this Complaint because it has an interest in whether indemnity payments are made under its policies.

132.    Canal desires judicial determination and declaration of its rights and duties with respect to the CGL Policies.

133.    Canal maintains that it is not obligated to indemnify Defendants because the claims alleged against them in the Underlying Lawsuit are not covered under the CGL Policies. Without covered damages, Canal does not owe Defendants indemnity.

134.    Canal is entitled to a judicial declaration that it has no obligation under the Canal Policies to indemnify Defendants in connection with the Underlying Lawsuit under the CGL Policies.

## **PRAYER FOR RELIEF**

WHEREFORE, Canal prays for judgment against Defendants named herein as follows:

A.      For a judicial determination declaring that the Auto Polices do not provide coverage for any claims in the Underlying Lawsuit and that Canal is not obligated to defend Defendants against such claims under the Auto Policies;

B.      For a judicial determination declaring that the Auto Policies do not provide coverage for any claims in the Underlying Lawsuit and that Canal is not obligated to indemnify Defendants against such claims under the Auto Policies;

C.      For a judicial determination declaring that the CGL Polices do not provide coverage for any claims in the Underlying Lawsuit and that Canal is not obligated to defend Defendants against such claims under the CGL Policies;

D.      For a judicial determination declaring that the CGL Policies do not provide coverage for any claims in the Underlying Lawsuit and that Canal is not obligated to indemnify Defendants against such claims under the CGL Policies;

E.      For a judicial determination declaring that Coastal is bound by this Court's determination on coverage and that it cannot take action inconsistent with this Court's ruling.

F.      For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.

By:   ___/s/  Brian S. Martin_____
        BRIAN S. MARTIN, Attorney-In-Charge
        State Bar No.  13055350
        E-Mail: bmartin@thompsoncoe.com
        RODRIGO GARCIA, JR.,
        State Bar No.  00793778
        Email: dgarcia@thompsoncoe.com
        One Riverway, Suite 1400
        Houston, Texas 77056
        Telephone:  (713) 403-8282
        Telecopy:  (713) 403-8299

**COUNSEL FOR PLAINTIFF CANAL
INDEMNITY COMPANY**