EXHIBIT A



---

## MASTER MOTOR CARRIER SERVICES AGREEMENT

**by and between**

### CONOCOPHILLIPS COMPANY

**and**

### COASTAL TRANSPORTS COMPANY, INC.

---

PSXCAN00001308

# TABLE OF CONTENTS

**Article**                                                                   **Page**

I.      Defined Terms ..................................................................................................1
     1.01    Defined Terms ........................................................................................1
             "Affiliate" .............................................................................................1
             "Agreement" .........................................................................................1
             "Business Day" ......................................................................................2
             "CHEMTREC" ......................................................................................2
             "Claim" .................................................................................................2
             "Commodities" .....................................................................................2
             "Company"............................................................................................2
             "Company Representative".....................................................................2
             "Complaint Notice" ...............................................................................2
             "Confidential Information".....................................................................2
             "Contractor"..........................................................................................2
             "Contractor Representative" ..................................................................2
             "CPR" ..................................................................................................2
             "Day" ...................................................................................................2
             "Dispute Resolution Procedures" ..........................................................2
             "DOT"..................................................................................................2
             "Effective Date".....................................................................................2
             "Event of Force Majeure".......................................................................2
             "Fuel Surcharge"...................................................................................2
             "Governmental Authority"......................................................................3
             "Governmental Authorizations" .............................................................3
             "Hazardous Materials"...........................................................................3
             "Law"...................................................................................................3
             "Material Default"..................................................................................3
             "Month" ................................................................................................3
             "Motor Vehicle".....................................................................................3
             "Normal Business Hours".......................................................................3
             "Notice" ...............................................................................................3
             "Notifying Party" ..................................................................................3
             "Parties" ...............................................................................................3
             "Party"..................................................................................................3
             "Person" ...............................................................................................4
             "Rider" .................................................................................................4
             "Services" .............................................................................................4
             "Taxes" ................................................................................................4
             "Territory"............................................................................................4
             "Year" ..................................................................................................4
     1.02    Other Defined Terms ..............................................................................4

CLTT/COP/MMCSA/09-2005

PSXCAN00001309

|  | 1.03 | Terms Generally | 4 |

| II. | | Nature of Agreement | 4 |
| | 2.01 | Nature of Agreement | 4 |

| III. | | Services | 4 |
| | 3.01 | Performance of Services | 4 |
| | 3.02 | Manner of Performance | 5 |
| | 3.03 | Equipment | 5 |
| | 3.04 | Personnel | 5 |
| | 3.05 | Governmental Authorizations | 5 |

| IV. | | Contracts | 5 |
| | 4.01 | Contracts | 5 |
| | 4.02 | Application of Agreement to Contracts | 6 |

| V. | | Designated Representatives | 6 |
| | 5.01 | Designated Representatives | 6 |
| | 5.02 | Additional Representatives | 6 |

| VI. | | Compensation; Invoicing; Payment | 6 |
| | 6.01 | Compensation | 6 |
| | 6.02 | Invoicing | 7 |
| | 6.03 | Payment | 7 |
| | 6.04 | Billing Disputes | 7 |
| | 6.05 | Electronic Commerce | 7 |

| VII. | | Loss and Damage… | 7 |
| | 7.01 | Loss, Damage or Injury | 7 |
| | 7.02 | Processing of Loss, Damage and Delay Claims | 7 |
| | 7.03 | Limitations | 7 |

| VIII. | | Term and Termination | 8 |
| | 8.01 | Term and Termination of Agreement | 8 |
| | 8.02 | Termination of Agreement | 8 |
| | 8.03 | Termination of Riders | 8 |
| | 8.04 | Survival | 8 |

| IX. | | Independent Contractor Relationship | 8 |
| | 9.01 | Independent Contractor Relationship | 8 |

| X. | | Risk Structure and Indemnity… | 9 |
| | 10.01 | Personnel and Property of Company | 9 |
| | 10.02 | Personnel and Property of Contractor | 9 |
| | 10.03 | Consequential Damages | 9 |

CLTT/COP/MMCSA/09-2005

PSXCAN00001310

    10.04  Pollution........................................................................................................9

    10.05  Application of Indemnities.............................................................................9

    10.06  Extension of Indemnities ..............................................................................9

    10.07  Limitation on Indemnities Relating to Employees or Invitees................................10

XI.    Insurance ...........................................................................................................10

    11.01  Insurance .....................................................................................................10

    11.02  Endorsements ...............................................................................................10

    11.03  Certificates of Insurance .............................................................................10

    11.04  Non-Compliance ..........................................................................................11

    11.05  Subcontracts.................................................................................................11

XII.    Force Majeure ...................................................................................................11

    12.01  Event of Force Majeure................................................................................11

    12.02  Strikes or Lockouts .....................................................................................11

    12.03  Termination of Rider Due to Event of Force Majeure..........................................11

XIII.    Notices ..............................................................................................................11

    13.01  Notices .........................................................................................................11

    13.02  Effectiveness ...............................................................................................12

    13.03  Change of Address Notice ...........................................................................12

XIV.    Taxes…..............................................................................................................12

    14.01  Taxes............................................................................................................12

XV.    Liens…..............................................................................................................12

    15.01  Liens.............................................................................................................12

    15.02  Waiver..........................................................................................................12

XVI.    Substance Abuse… ............................................................................................12

    16.01  Substance Abuse ..........................................................................................12

XVII.    Emergency Response… .....................................................................................13

    17.01  Emergency Response Guidebook .................................................................13

    17.02  Hazardous Materials ....................................................................................13

    17.03  Shipping Description ....................................................................................13

    17.04  Right to Refuse Acceptance.........................................................................13

    17.05  CHEMTREC................................................................................................14

XVIII.  Access to Company Property… .........................................................................14

    18.01  Access to Company Property........................................................................14

XIX.    Confidentiality… ...............................................................................................14

    19.01  Confidential Information..............................................................................14

    19.02  Exclusions....................................................................................................14

                    CLTT/COP/MMCSA/09-2005

PSXCAN00001311

19.03 Employees ........................................................................................................ 14

XX.    Governing Law… ......................................................................................................... 15
    20.01 Governing Law ..................................................................................................... 15

XXI.    Miscellaneous ............................................................................................................ 15
    21.01 Records and Audit ................................................................................................ 15
    21.02 Ethics and Conflicts of Interest ........................................................................... 15
    21.03 Disputes Between the Parties ............................................................................... 16
    21.04 Assignment; Subcontracts .................................................................................... 16
    21.05 Non-Exclusivity ................................................................................................... 16
    21.06 Compliance with Laws ......................................................................................... 16
    21.07 Severability .......................................................................................................... 16
    21.08 Non-Waiver .......................................................................................................... 17
    21.09 Entire Agreement ................................................................................................. 17
    21.10 No Third-Party Beneficiaries ............................................................................... 17
    21.11 Other Conditions .................................................................................................. 17
    21.12 Amendments ......................................................................................................... 17
    21.13 Replacement of Prior Agreements ........................................................................ 17
    21.14 Counterparts; Multiple Originals .......................................................................... 17
    21.15 Headings ............................................................................................................... 17
    21.16 Exhibits ................................................................................................................ 18
    21.17 Construction .......................................................................................................... 18

**Exhibits**

A    Rider
B    Fuel Surcharge
C    Dispute Resolution Procedures

PSXCAN00001312

## MASTER MOTOR CARRIER SERVICES AGREEMENT

**THIS MASTER MOTOR CARRIER SERVICES AGREEMENT** is made and entered into this 15th day of September, 2005 (the "Effective Date"), by and between **CONOCOPHILLIPS COMPANY**, a Delaware corporation ("Company"), and COASTAL TRANSPORT COMPANY, INC., a Texas corporation ("Contractor").

### W I T N E S S E T H:

**WHEREAS**, Company desires to have Contractor furnish certain motor carrier services for the transportation of freight other than household goods; and

**WHEREAS**, Contractor has represented to Company that is possesses the expertise, qualified personnel, facilities and equipment to properly and lawfully transport such freight by motor vehicle for Company; and

**WHEREAS**, Contractor is aware of the distinct needs of Company and has designed its transportation offering, as reflected herein, specifically to satisfy such needs; and

**WHEREAS**, Company desires that Contractor provide such services to Company;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, Company and Contractor agree as follows:

## Article I. Defined Terms

**1.01** **Defined Terms.** The following definitions shall for all purposes, unless clearly indicated to the contrary, apply to the capitalized terms used in this Master Motor Carrier Services Agreement:

(a) **"Affiliate"** means a Person: (i) in which Company owns or acquires, directly or indirectly, fifty percent (50%) or more of the outstanding voting securities or other ownership interests thereof; (ii) which owns or acquires, directly or indirectly, more than fifty percent of the issued and outstanding voting securities of Company; (iii) in which a Person described in clause (ii) owns or acquires, directly or indirectly, fifty percent (50%) or more of the issued and outstanding voting securities or other ownership interests thereof' or (iv) which is specifically identified to Contractor as a Person for which Company has operating or management responsibilities.

(b) **"Agreement"** means this Master Motor Carrier Services Agreement, together with all exhibits attached hereto, as it may be extended, supplemented or restated from time to

CLTT/COP/MMCSA/09-2005

PSXCAN00001313

time in accordance with the provisions hereof.

(c) **"Business Day"** means any Day except for Saturday, Sunday or a legal holiday in the State of Texas.

(d) **"CHEMTREC"** means the Chemical Transportation Emergency Center.

(e) **"Claim"** means any and all judgments, claims, causes of action, demands, lawsuits, suits, proceedings, governmental investigations or audits, losses, assessments, fines, penalties, administrative orders, obligations, costs, expenses, liabilities and damages, including interest, penalties, reasonable attorney's fees, disbursements and costs of investigations, deficiencies, levies, duties and imposts.

(f) **"Commodities"** means freight, other than household goods.

(g) **"Company"** has the meaning set forth in the introductory paragraph hereof.

(h) **"Company Representative"** has the meaning set forth in Section 5.01 hereof.

(i) **"Complaint Notice"** has the meaning set forth in Exhibit B.

(j) **"Confidential Information"** has the meaning set forth in Section 19.01 hereof.

(k) **"Contractor"** has the meaning set forth in the introductory paragraph hereof.

(l) **"Contractor Representative"** has the meaning set forth in Section 5.01 hereof.

(m) **"CPR"** means the Center for Public Resources.

(n) **"Day"** means the period of time commencing at 0000 hours on one calendar day and running until 2400 hours on the same calendar day, according to Houston, Texas, local time.

(o) **"Dispute Resolution Procedures"** has the meaning set forth in Section 21.03 hereof.

(p) **"DOT"** means the United States Department of Transportation.

(q) **"Effective Date"** means the date set forth in the introductory paragraph hereof.

(r) **"Event of Force Majeure"** means any event or circumstance that directly or indirectly prevents a Party from performing an obligation under this Agreement and is beyond the reasonable control of, and occurs without the negligence of, the Party obligated to perform the relevant obligation.

(s) **"Fuel Surcharge"** has the meaning set forth in Section 6.01 (b) hereof.

CLTT/COP/MMCSA/09-2005

PSXCAN00001314

**(t)** **"Governmental Authority"** means any government, any governmental administration, agency, instrumentality or other instrumentality or other political subdivision thereof or any court, commission or other governmental authority of competent jurisdiction.

**(u)** **"Hazardous Materials"** has the meaning set forth in 49 U.S.C. § 5102 (2).

**(v)** **"Law"** means all constitutions, laws (including common law), treaties, statutes, orders, decrees, rules, injunctions, licenses, permits, approvals, agreements, regulations, codes, and ordinances issued by any Governmental Authority, and including judicial or administrative orders, consents, decrees, and judgments, and all published directives, guidelines, governmental authorizations, requirements or other governmental restrictions which have the force of law, and determinations by, or interpretations of any of the foregoing by any Governmental Authority having jurisdiction over the matter in question and binding on a given Person, whether in effect as of the date hereof or thereafter and, in each case, as amended.

**(w)** **"Material Default"** means: (i) the failure of a Party to pay the other Party any material amount of money payable by that Party, except a failure related to a bona fide business dispute about the amount of such payment or the liability for such payment, not accompanied by a general failure by that Party to pay the amounts it owes under this Agreement, or (ii) the general, continuing failure of a Party to perform its material obligations under this Agreement, except when excused by an Event of Force Majeure or by some other provision of this Agreement, and except a failure related to a bona fide dispute about any obligation.

**(x)** **"Month"** or **"Monthly"** means a calendar month commencing at 0000 hours on the first Day thereof and running until 2400 hours on the last Day thereof, according to Houston, Texas, local time.

**(y)** **"Motor Vehicle"** means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation.

**(z)** **"Normal Business Hours"** means the period of time commencing at 0800 hours on one Day and running until 1700 hours on the same Day, according to Houston, Texas, local time.

**(aa)** **"Notice"** means any notice, request, instruction, correspondence or other communication permitted or required to be given under this Agreement in accordance with Article XIII. hereof, or received from a Person who is not a Party.

**(bb)** **"Notifying Party"** has the meaning set forth in Section 10.07 hereof.

**(cc)** **"Parties"** means Company and Contractor, collectively.

**(dd)** **"Party"** means Company or Contractor, individually.

3                                        CLTT/COP/MMCSA/09-2005

PSXCAN00001315

(ee) **"Person"** means, without limitation, an individual, corporation (including a non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, or other entity or governmental body, and shall include any successor (by merger or otherwise) of such entity.

(ff) **"Rider"** has the meaning set forth in Section 4.01 (a) hereof.

(gg) **"Services"** has the meaning set forth in Section 3.01 hereof.

(hh) **"Taxes"** means any income, sales, use, excise, transfer, and similar taxes, fees and charges (including ad valorem taxes), including any interest or penalties attributable thereto, imposed by any Governmental Authority.

(ii) **"Territory"** means the continental United States, Alaska, Canada and Mexico.

(jj) **"Year"** means a period of three hundred sixty-five (365) consecutive Days, commencing on the Effective Date, and it shall also include each successive three hundred sixty-five (365) Day period during the term hereof; provided, however, that any Year which contains a date of February 29 shall consist of three hundred sixty-six (366) Days.

**1.02 Other Defined Terms.** Other terms may be defined elsewhere in this Agreement, and, unless otherwise indicated, shall have such meanings throughout this Agreement.

**1.03 Terms Generally.** The definitions in this Agreement shall apply equally to both singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The word "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation." All references herein to Articles, Sections and exhibits shall be deemed references to Articles and Sections of, and exhibits to, this Agreement unless the context shall otherwise require.

### Article II. Nature of Agreement

**2.01 Nature of Agreement.** This Agreement is entered into pursuant to 49 U.S.C. § 14101 (b) for the purpose of providing specified motor carrier transportation services under specified rates and conditions. Except as otherwise expressly provided for herein, the Parties waive all rights and remedies under 49 U.S.C. § 13101, et seq. with respect to the transportation provided for hereunder; provided, however, the Parties do not waive the provisions governing registration, insurance, and safety fitness.

### Article II. Services

**3.01 Performance of Services.** The Parties may agree from time to time that Contractor shall accept for transportation such Commodities as are tendered to it by Company at such points of

PSXCAN00001316

origin in the Territory as are designated by Company, transport such Commodities to such delivery points in the Territory as are designated by Company, and provide such other related services as are designated by Company (the "Services"). Commodities shall be tendered to Contractor on a standard uniform bill of lading, which shall act as a title document only, and any terms and conditions appearing on it shall not apply to movements hereunder.

**3.02** **Manner of Performance.** All Services shall be performed and provided by Contractor hereunder in a timely, efficient and prudent manner, in conformity with usual and customary industry practices, and in all respects in accordance with all applicable Laws.

**3.03** **Equipment.** Except as otherwise specifically agreed, Contractor shall provide all Motor Vehicles, equipment, machinery, tools, materials, and supplies necessary for the performance of Services hereunder. Each Motor Vehicle shall be suitable for the particular transportation required, shall comply with all Laws applicable to trucks engaged in such transportation, and shall be maintained in good, safe and serviceable condition. Company may inspect any Motor Vehicle at any time during the term of this Agreement and may reject any Motor Vehicle which does not, in Company's sole judgment meet the requirements of this Section. Company's failure to inspect or reject any such Motor Vehicle shall not relieve Contractor of its obligations under this Agreement.

**3.04** **Personnel.** Contractor shall employ and have supervision over such Persons as Contractor deems necessary and appropriate in order to permit Contractor to perform its duties and responsibilities hereunder. Any such Persons employed by Contractor may be union or non-union employees, and Contractor have the right to negotiate the terms and provisions of any labor or other agreements with unions to which such employees belong.

**3.05** **Governmental Authorizations.** Contractor, at its sole cost and expense, and in its name, shall obtain and maintain all necessary Governmental Authorizations necessary to perform and provide Services hereunder. With respect to any interstate Services to be provided hereunder, Contractor represents and warrants that it is registered as a motor carrier with the Federal Motor Carrier Safety Administration pursuant to 49 U.S.C. Chapter 139, and that no part of its registration has been suspended or revoked. With respect to any intrastate Services to be provided hereunder, Contractor represents and warrants that it has all necessary and appropriate operating authority from all applicable state Governmental Agencies to provide such intrastate Services and that no part of such operating authority has been suspended or revoked. If requested by Company, Contractor shall provide evidence of its registration and/or operating authority to Company.

**Article IV.** **Contracts**

**4.01** **Contracts.**

(a) **Company Contracts.** Any contract whereby Contractor agrees to perform Services for Company shall be in the form of Exhibit A ("Rider") and shall be signed by both Parties.

PSXCAN00001317

**(b)** **Affiliate Contracts.** Any Affiliate of Company may agree from time to time that Contractor shall perform Services for such Affiliate under the terms of this Agreement. Any contract where Contractor agrees to perform Services for an Affiliate of Company shall be in the form of Exhibit A and shall be signed by such Affiliate and Contractor. In such event, the references to Company in this Agreement shall mean such Affiliate entering into such Rider solely with respect to Services performed for such Affiliate. By entering into such Rider, such Affiliate shall be deemed to ratify, and agrees to be bound by, the terms and conditions of this Agreement with respect to the Services covered by said oral contract or Rider.

**(c)** **Riders.** It is the intent of the Parties that a Rider may add, delete, revise, or otherwise adjust Commodities, volumes, points or origin, delivery points, related services, and transportation rates and charges, and that multiple Riders may be in effect at any one time.

**4.02** **Application of Agreement to Contracts.** Except as may be specifically stated otherwise herein, this Agreement shall apply to every Rider between the Parties during the term hereof with the same force and effect as if the terms and conditions hereof were fully set forth in any such contract. In the event of a conflict between the terms of this Agreement and the terms of a Rider, the terms of this Agreement shall control. This Agreement supercedes any and all previous Master Motor Carrier Service Agreements or their equivalents between Company and Contractor, to the extent they cover the scope of Services covered by this Agreement.

## Article V.     Designated Representatives

**5.01** **Designated Representatives.** Company and Contractor shall, by Notice to each other, designate a Company representative (the "Company Representative") and a Contractor representative (the "Contractor Representative"), respectively, who shall have complete authority to act on behalf of Company and Contractor, respectively, on all matters pertaining to this Agreement.

**5.02** **Additional Representatives.** The Company Representative or the Contractor Representative may, by Notice to each other, designate additional representatives who may act as liaison for certain aspects of the Services. Such Notice shall establish the authority of each additional representative. Company and Contractor acknowledge that these additional representatives shall have authority to act under the Agreement only insofar as their assigned responsibilities are concerned.

## Article VI.     Compensation; Invoicing; Payment

### 6.01     Compensation.

**(a)** **Freight Rates and Charges.** Company agrees to pay Contractor, for the Services

PSXCAN00001318

performed and provided by Contractor hereunder, and Contractor agrees to charge, the applicable freight rates and charges set forth in applicable Riders entered into by the Parties. Some mileage rates set forth in Riders may be determined by the Parties based on trip standards developed by Company and/or Contractor; however, unless otherwise stated in a Rider, or unless a rate is listed in a Rider as a "point-to-point" rate, all rate miles will be determined using Rand McNally HHG mileage.

**(b)** **Fuel Surcharge.** The freight rates and charges in Section 6.01 (a) shall be subject to a fuel surcharge ("Fuel Surcharge"), if applicable, in the amounts as determined by Exhibit B, for linehaul charges and portal-to-portal hourly charges only. Such Fuel Surcharge shall not apply to accessorial charges. Such Fuel Surcharge shall be billed as a separate charge on invoices.

**6.02** **Invoicing.** Contractor shall prepare and submit invoices to Company for the Services performed hereunder. Each invoice shall be accompanied by applicable freight bills and bills of lading.

**6.03** **Payment.** Company shall pay each such invoice within thirty (30) Days of its receipt thereof.

**6.04** **Billing Disputes.** Overcharge, duplicate payment, overcollection, and unidentified payment Claims hereunder shall be processed, investigated and disposed of in the manner set forth in 49 C.F.R. Part 378, which is hereby incorporated herein and by this reference made a part hereof.

**6.05** **Electronic Commerce.** Contractor will implement such forms of electronic data interchange as may be reasonably requested by Company for electronically exchanging purchase orders, invoices, payments, etc., and any such other forms of electronic commerce as Company may reasonably request to enable or facilitate the migration from traditional paper methods of conducting business and exchanging information to electronic methods.

**Article VII.   Loss and Damage**

**7.01** **Loss, Damage or Injury.** Contractor shall be liable to Company for the full actual loss, damage or injury to Commodities tendered to Contractor by Company hereunder while such Commodities are in Contractor's possession. Contractor's liability shall be governed by 49 U.S.C. § 14706, which is hereby incorporated herein and by this reference made a part hereof.

**7.02** **Processing of Loss, Damage and Delay Claims.** Claims for loss, damage, injury or delay to Commodities transported or accepted for transportation by Contractor hereunder shall be filed, acknowledged, investigated, disposed of and processed using the procedures set forth in 49 CFR Part 370, which is hereby incorporated herein and by this reference made a part hereof.

**7.03** **Limitations.** Claims for loss, damage or delay must be filed with Contractor within nine

PSXCAN00001319

(9) Months after delivery of the Commodities, except that Claims for failure to make delivery must be filed within nine (9) Months after a reasonable time for delivery has elapsed. Suits for loss, damage, or delay shall be instituted against Contractor no later than two (2) Years from the date Contractor gives Notice to Company that Contractor has disallowed the Claim or any part of the Claim specified in the Notice.

## Article VIII.  Term and Termination

**8.01    Term and Termination of Agreement.**  This Agreement shall have a one (1) Year primary term, commencing on the Effective Date, and this Agreement shall continue in full force and effect thereafter unless and until it is terminated by either Party as provided for in Section 8.02 hereof.

**8.02    Termination of Agreement.**  If no Riders are then in effect, either Party may terminate this Agreement at the end of the primary term or on any subsequent date by giving to the other Party Notice of such termination not less than thirty (30) Days prior to the end of the primary term or of such subsequent date, as the case may be.  If any Riders are then in effect, either Party may terminate this Agreement on such date after the end of the primary term as all such Riders have expired by giving Notice to the other Party of such termination not less than thirty (30) Days prior to the expiration date of the last Rider.

**8.03    Termination of Riders.**  Either Party shall have the right to terminate any Rider entered into under this Agreement at any time on Notice to the other Party if: (i) the other Party is in Material Default of any of its obligations under such Rider and the injured Party gives Notice of such Material Default to the defaulting Party, which Notice shall set forth in reasonable detail the facts and circumstances of such Material Default, and (ii) the defaulting Party fails to cure such Material Default within thirty (30) Days.  The termination of any Rider under this Agreement shall not relieve either Party of its obligations to pay amounts of money due hereunder which accrued prior to such termination.

**8.04    Survival.**  The releases and indemnities contained in this Agreement shall survive the termination of this Agreement and any Rider hereunder.

## Article IX.    Independent Contractor Relationship

**9.01    Independent Contractor Relationship.**  Company shall have the right to monitor, consult with and make suggestions to Contractor in connection with Contractor's performance of its responsibilities under this Agreement; provided, however, in no event shall Company direct or control Contractor or its employees or subcontractors in connection therewith.  The Parties agree that Contractor shall be an independent contractor with respect to its relationship to Company under this Agreement.  By virtue of entering into this Agreement or performing Services hereunder, Contractor shall not be deemed to be a partner, agent, or attorney-in-fact of Company based on partnership, agency or other principles.

PSXCAN00001320

**Article X.      Risk Structure and Indemnity**

**10.01** <u>Personnel and Property of Company</u>.

(a)      <u>Personnel</u>.  Contractor shall have no responsibility toward Company in respect of injury or death of Company's employees or invitees.  COMPANY SHALL DEFEND, INDEMNIFY, AND HOLD CONTRACTOR HARMLESS from any and all Claims by any Person for injury to or death of Company's employees or invitees.

(b)      <u>Property</u>.  Contractor shall be liable for damage to or loss of Company's property (including, but not limited to, court costs and attorneys' fees) up to One Million Dollars ($1,000,000.00) per occurrence to the extent such loss or damage results from Contractor's negligence.  Company shall release Contractor from any Claim for such damage to or loss of Company's property above One Million Dollars ($1,000,000.00) per occurrence. Notwithstanding the foregoing, Contractor's liability for loss, damage, or injury to Commodities shall be governed by Article VII. hereof.

**10.02** <u>Personnel and Property of Contractor</u>.  Company shall have no responsibility toward Contractor in respect of damage to or loss of Contractor's property or for injury to or death of Contractor's employees or invitees.  CONTRACTOR SHALL DEFEND, INDEMNIFY, AND HOLD COMPANY HARMLESS from any and all Claims by any Person for damage to or loss of Contractor's property or for or on account of injury to or death of Contractor's employees or invitees.

**10.03** <u>Consequential Damages</u>.  Neither Party shall be liable to the other for special, indirect, or consequential damages resulting from or arising out of this Agreement, including, without limitation, loss of profits or business interruptions, however they may be caused.

**10.04** <u>Pollution</u>.  CONTRACTOR SHALL DEFEND, INDEMNIFY AND HOLD COMPANY HARMLESS from any Claim for loss or damage due to pollution, contamination, or damage to the environment, including, without limitation, cleanup and containment, caused by Commodities or substances in Contractor's possession or control.

**10.05** <u>Application of Indemnities</u>.  THE PARTIES HEREBY EXPRESS THEIR INTENT THAT THE ABOVE EXCLUSIONS OF LIABILITY AND INDEMNITIES SHALL BE LIBERALLY CONSTRUED, BUT SHALL NOT APPLY TO ANY CLAIM COVERED BY GROSS NEGLIGENCE, MALICE, OR WILFUL MISCONDUCT, AND FURTHER SHALL NOT IN ANY EVENT APPLY TO AWARDS OR ASSESSMENTS OF PUNITIVE DAMAGES.

**10.06.** <u>Extension of Indemnities</u>.  To the maximum extent permitted by applicable Law, the exclusions of liability and indemnities contained in this Article X. and elsewhere in this Agreement shall extend to the directors, officers, and employees of each Party and to their

PSXCAN00001321

respective Affiliates, and the directors, officers, and employees of such Affiliates.

**10.07 Limitation on Indemnities Relating to Employees or Invitees.** Liability under the indemnities contained in Sections 10.01 (a) and 10.02 hereof for the aggregate total of personal injuries and/or deaths arising from any single occurrence shall be limited to Five Million Dollars ($5,000,000.00). If in the course of defense by either Party of any Claims subject to this Section 10.07 either Party (the "Notifying Party") believes its potential liability under the indemnity is likely to exceed the Five Million Dollars ($5,000,000.00) limitation, said Party shall have the option of notifying the other Party that it will unconditionally agree to pay the other Party the first Five Million Dollars ($5,000,000.00) of judgments, losses, expenses and costs (including, but not limited to, court costs and attorneys' fees). Such Notifying Party shall transfer the defense of all pending Claims subject to this Section 10.07 to the other Party, and will cooperate in arranging for the orderly transition in the responsibility for handling such Claims. The other Party may, at its option, require that the Notifying Party provide security in a form satisfactory to the other Party to guarantee payment of Five Million Dollars ($5,000,000.00) less any amount of judgments, expenses, and costs already incurred by the Notifying Party (all of which will be credited to the Five Million Dollars ($5,000,000.00) maximum liability).

### Article XI. Insurance

**11.01 Insurance.** Contractor agrees to procure and maintain at its expense during the term of this Agreement insurance of the types and with limits of liability not less than the following: (i) insurance that Contractor is obliged to carry under all applicable social, Worker's Compensation and Occupational Disease Laws covering all of Contractor's employees performing services under this Agreement; (ii) Employer's Liability Insurance with a limit of not less than One Million Dollars ($1,000,000.00) per accident; (iii) General Public Liability Insurance, including contractual liability coverage, with a combined bodily injury and property damage limit of not less than One Million Dollars ($1,000,000.00) per occurrence; (iv) Automobile Liability Insurance with a combined bodily injury and property damage limit of not less than One Million Dollars ($1,000,000.00) per accident; and (v) such other insurance in the types and amounts as Contractor deems necessary or as is required by applicable Law. If Hazardous Materials are to be hauled, then the policy shall contain an MCS-90 endorsement that evidences a policy limit of Five Million Dollars ($5,000,000.00). The above-stated minimum requirements are not intended to indicate the amounts and types of insurance that Contractor needs or may ultimately need.

**11.02 Endorsements.** The policies under Sections 11.01 (ii) through 11.01 (iv) hereof shall be endorsed to show Company as an additional insured and all insurance policies obtained by Contractor shall contain a waiver of subrogation in favor of Company.

**11.03 Certificates of Insurance.** Upon Company's request, Contractor shall furnish to Company certificates of insurance demonstrating that Contractor has obtained the insurance coverage set out above and containing a statement that the said insurance will not be materially changed or cancelled without at least thirty (30) Days prior written notice to Company. All

PSXCAN00001322

coverages must be written on forms reasonably acceptable to Company.

**11.04 Non-Compliance.** Neither failure to comply nor full compliance with the insurance provisions of this Agreement shall limit or relieve Contractor from its liability and indemnity obligations as provided for in this Agreement.

**11.05 Subcontractors.** Contractor shall be responsible for ensuring that each subcontractor used by it in the performance of this Agreement shall carry Worker's Compensation, Occupational Disease and such other insurance of the types and in the amounts required by Law, together with such insurance as Contractor may deem necessary.

## Article XII. Force Majeure

**12.01 Event of Force Majeure.** In the event either Party is rendered unable, wholly or in part, by an Event of Force Majeure, to carry out its obligations under this Agreement, other than to make money payments when due, such Party shall give Notice and full particulars of such Event of Force Majeure to the other Party within a reasonable time after the occurrence of the cause relied on, and the obligations of the Party giving such Notice, so far as they are affected by such Event of Force Majeure, shall be suspended during the continuance of any inability so caused but for no longer period, and such cause shall as far as possible be remedied with all reasonable dispatch.

**12.02 Strikes or Lockouts.** It is understood and agreed that the settlement of strikes or lockouts shall be entirely within the discretion of the Party having the difficulty and that the requirement in Section 12.01 that any Event of Force Majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes or lockouts by acceding to the demands of an opposing party when such course is inadvisable in the discretion of the Party having the difficulty.

**12.03 Termination of Rider Due to Event of Force Majeure.** When any Services contracted for are halted for more than thirty (30) Days by reason of an Event of Force Majeure, Company may at any time thereafter terminate the given Rider immediately upon Notice. In such case, Company shall owe Contractor only the compensation earned to time of Notice.

## Article XIII. Notices

**13.01 Notices.** Unless otherwise specifically provided herein, all Notices between the Parties given under or in relation to this Agreement or any Rider entered into hereunder shall be made in writing and shall be deemed to have been properly given if: (i) personally delivered to an authorized representative of the Party to whom directed; (ii) delivered and confirmed by facsimile; (iii) delivered by a reputable overnight courier delivery service; or (iv) sent by certified United States mail (postage prepaid, return receipt requested), addressed as follows:

CLTT/COP/MMCSA/09-2005

PSXCAN00001323

| If to Company: | If to Contractor: |
|---|---|
| ConocoPhillips Company | Coastal Transport Company, Inc. |
| 600 N. Dairy Ashford, TA 2090A | 1503 Ackerman Rd. |
| Houston, TX 77079-1175 | San Antonio, TX 78219 |
| Attn: Contract Coordinator | Attn: Malory McDonald |
| Facsimile: 832.201.7077 | Facsimile: 713.784.1302 |

**13.02 Effectiveness.** Any Notice given in the manner set forth in Section 13.01 shall be effective upon actual receipt if received during the recipient's Normal Business Hours, or at the beginning of the recipient's next Business Day if not received during the recipient's Normal Business Hours.

**13.03 Change of Address Notice.** Either Party may change its Notice address, facsimile number or attention recipient by giving Notice to the other Party in the manner set forth in Section 13.01; provided, however, that no such change of address, facsimile number or attention recipient Notice shall be effective until actually received by the other Party. No address shall be a post office box.

## Article XIV. Taxes

**14.01 Taxes.** Company agrees either to pay directly all Taxes properly levied by any Governmental Authority upon Company-owned material, equipment, and Commodities hereunder, or to reimburse Contractor therefor if paid by Contractor at Company's direction. Contractor assumes full responsibility for and shall pay all Taxes of whatever sort, including social security, unemployment compensation, withholding, and all other Taxes or charges applicable to Contractor's actions, employees, facilities and materials for performing Services hereunder or applicable to Contractor's income hereunder.

## Article XV. Liens

**15.01 Liens.** Contractor shall indemnify and hold Company and its Affiliates harmless from all liens and other encumbrances against Company's and /or its Affiliates property on account or debts or Claims alleged to be due from Contractor or its subcontractors to any Person, including subcontractors, and on behalf of Company and/or its Affiliates and in Company's and/or its Affiliates names, shall defend at its own expense any Claim in connection therewith.

**15.02 Waiver.** Contractor hereby waives any common law lien on Commodities it may acquire during the term hereof by virtue of performing Services hereunder.

## Article XVI. Substance Abuse

**16.01 Substance Abuse.** Contractor shall prohibit the use, possession, distribution, sale or

PSXCAN00001324

storage of illegal or controlled substances, and substance-related paraphernalia, by its personnel while performing Services hereunder or while located on Company premises. Contractor shall perform or cause to be performed all actions necessary for compliance with any applicable Laws pertaining to illegal or controlled substances, specifically including, but not limited to, the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 701-707). Unless prohibited by Law, Contractor shall require all personnel who enter Company premises to consent to searches, whether performed by Company or appropriate law enforcement officials, of the vehicles and other personal effects of such personnel for monitoring the presence of any illegal or controlled substances or substance-related paraphernalia. Company reserves the right, exercisable in Company's sole discretion, to bar any of Contractor's personnel from performing Services hereunder, so long as such discretion is not exercised in violation of any governing Law. Such discretion shall apply with respect to, but not be limited to, any personnel whom Company reasonably suspects to be involved with illegal or controlled substances, and such discretion shall not be unreasonably exercised.

**Article XVII. Emergency Response**

**17.01  Emergency Response Guidebook.** Contractor shall at all times maintain a copy of the current edition of the DOT's Emergency Response Guidebook in the drivers compartment of each Motor Vehicle and at all storage locations employed by it or its agents in connection with the transport, loading, unloading, reloading, or storage of Commodities pursuant to the terms of this Agreement.

**17.02  Hazardous Materials.** Contractor shall ensure that, for all Hazardous Materials originating at Company's sites or transported under Company control, all bills of lading, hazardous waste manifests, and shipping papers generated by it or its agents (including interline or intermodal carriers) clearly identify Company as the knowledgeable Person who should be contacted in the event of a release or other emergency involving Hazardous Materials. Contractor shall accomplish this by placing the following language in a prominent place on all bills of lading, hazardous waste manifests, or shipping papers generated by it or its agents: "For an emergency, (spill, leak, fire, or accident), contact ConocoPhillips Company – day or night – by calling CHEMTREC 800.424.9300 (toll free) or outside continental U. S.A. call 703.527.3887(collect)."

**17.03  Shipping Description.** Contractor shall ensure that all bills of lading, hazardous waste manifests, and shipping papers generated by it or its agents for Hazardous Materials originating with or designated to move to a Company location pursuant to the terms of this Agreement include the full technical shipping description (see 49 C.F.R. Subpart C) for all Hazardous Materials covered by the shipping papers and are in all other respects in full compliance with 49 C.F.R., before such materials are loaded, unloaded, reloaded, transported, or stored in transit.

**17.04  Right to Refuse Acceptance.** Contractor need not accept for shipment to a Company location any Hazardous Materials unless accompanied by bills of lading, hazardous waste manifests, or other shipping papers that are in full compliance with 49 C.F.R., and which contain

CLTT/COP/MMCSA/09-2005

PSXCAN00001325

a telephone number, monitored at all times, by a Person who is knowledgeable of the hazards and characteristics of the Hazardous Materials being shipped.

**17.05** **CHEMTREC.** Contractor shall promptly notify Company through CHEMTREC, American Chemistry Council, 2502 M Street N.W., Washington, D.C. 20037, by telephone – day or night – if an emergency (spill, acute exposure, fire, or accident) involving one of Company's Commodities or other Hazardous Materials transported pursuant to the terms of this Agreement occurs. CHEMTREC can be reached at: 1.800.424.9300 (toll free) within the U.S.A., and at 1.703.527.3887 (collect) outside the U.S.A.

## Article XVIII.    Access to Company Property

**18.01** **Access to Company Property.** Contractor acknowledges awareness of Company's terminal access or equivalent agreements for entry onto Company property and facilities. As a condition to being granted access to Company property or a Company facility hereunder, Company may require Contractor to sign and comply with Company's applicable terminal access or equivalent agreement. Such terminal access or equivalent agreement must remain in effect during the term hereof.

## Article XIX.   Confidentiality

**19.01** **Confidential Information.** During the term of this Agreement and for a period of five (5) Years thereafter, each Party shall treat as confidential and shall not, without the other Party's prior written consent, disclose to any third Person, or, except to the extent necessary to achieve the purposes and objectives of this Agreement, make use of, any information that it receives from the other Party hereunder ("Confidential Information").

**19.02** **Exclusions.** The requirements of Section 19.01 shall not apply to any Confidential Information which: (i) the receiving Party already possessed prior to its receipt thereof from the disclosing Party, provided that receiving Party notifies the disclosing Party within a reasonable time after disclosure that is already possessed such information; (ii) is in the public domain or becomes generally available by means of public disclosure by the disclosing Party; (iii) is received by the receiving Party from a third Person which represents to the receiving Party that it is lawfully in possession of same and under no obligation to the disclosing Party with respect thereto; or (iv) the receiving Party is legally compelled to disclose pursuant to applicable Law or an order of a court of competent jurisdiction or Governmental Authority.

**19.03** **Employees.** Each Party shall communicate the contents of this Article to each of its employees who shall have access to any Confidential Information, and shall assure that they are obligated not to disclose, use or permit access to such Confidential Information except as authorized hereunder.

CLTT/COP/MMCSA/09-2005

PSXCAN00001326

**Article XX.    Governing Law**

**20.01    Governing Law. THE INTERPRETATION AND PERFORMANCE OF THIS AGREEMENT AND EACH RIDER HEREUNDER SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS EXCEPT FOR ANY RULE OF LAW OF THE STATE OF TEXAS WHICH WOULD MAKE THE LAW OF ANY OTHER JURISDICTION APPLICABLE.** The Parties specifically recognize that, if any provision of this Agreement is determined to be unenforceable or in contravention of any applicable Law, such provision shall be deemed modified to the minimum extent required to bring such provision into compliance with said statute or case law. By way of illustration and not limitation, if the obligation to indemnify for Claims of injury or death to one's own employees is ruled to be unenforceable to the extent that it requires the indemnitor to indemnify the indemnitee for the indemnitee's own negligence, the indemnitor shall still be required to indemnify the indemnitee to the extent that liability arises from the indemnitor's negligence, including the negligence of the indemnitor's employees. Likewise, if some provision of the insurance coverage requirements is legally unenforceable or exceeds the maximum amount permitted for an obligation under applicable Law, then Contractor and Company shall nevertheless obtain and maintain the insurance required under this Agreement to the extent that such requirements are permitted under applicable Law. **NOTHING CONTAINED HEREIN SHOULD BE CONSTRUED AS CONTRAVENING THE EXPRESS INTENTION OF THE PARTIES THAT THE LAWS OF THE STATE OF TEXAS SHALL APPLY IN ALL RESPECTS, UNLESS AND EXCEPT TO THE EXTENT THAT THE PARTIES MAY REFERENCE AND REQUEST APPLICATION OF A LAW, STATUTE, OR RULE OF ANOTHER JURISDICTION OR GOVERNMENTAL AUTHORITY IN A SPECIFIC PROVISION OF THIS AGREEMENT.**

**Article XXI.    Miscellaneous**

**21.01    Records and Audit.** Contractor shall, and shall ensure that its subcontractors shall, maintain a true and correct set of records pertaining to all activities relating to its performance of this Agreement and all transactions related thereto. Contractor further agrees, and shall ensure that its subcontractors agree, to retain all such records for a period of not less than two (2) Years after completion of performance under this Agreement. Any representative or representatives authorized by Company may audit, copy and inspect any and all such records of Contractor and its subcontractors at any reasonable time or times during the term of this Agreement and during the two (2) Year period after completion of performance of Services performed hereunder and all transactions related thereto.

**21.02    Ethics and Conflicts of Interest.** Contractor shall not, and shall ensure that its subcontractors shall not, directly or indirectly, pay salaries, commissions or fees or make payments or rebates to employees or officers of Company, nor favor employees or officers of Company with gifts or entertainment of significant cost or value or with services or goods sold at less than full market value, nor enter into business arrangements with employees or officers of

CLTT/COP/MMCSA/09-2005

PSXCAN00001327

Company unless such employees or officers are acting as representatives of Company.

**21.03 Disputes Between the Parties.** The Parties agree that if any dispute arises between them related to this Agreement or any Rider entered into under this Agreement they shall use the Dispute Resolution Procedures outlined in Exhibit C to attempt to resolve such dispute; provided, however, this Section and Exhibit C shall not apply to any dispute related in any manner to indemnity, insurance, or release obligations; and, provided, further, that either Party may, notwithstanding the provisions of Exhibit C, seek a restraining order, temporary injunction, or other provisional relief if such Party in its sole judgment believes that such action is necessary to avoid irreparable injury or to preserve the status quo, but the Parties shall continue to participate in good faith in the Dispute Resolution Procedures despite any such request for provisional relief.

**21.04 Assignment; Subcontracts.** This Agreement and each contract hereunder shall inure to the benefit of and be binding upon the Parties hereto and their respective successors and assigns; provided, however, Contractor shall not assign or subcontract the whole or any part of this Agreement or any Rider hereunder without Company's prior written consent, which consent shall not be unreasonably withheld. Company's consent to any such assignment or subcontract shall not relieve Contractor of any liability for full and complete performance of this Agreement or any contract hereunder, or be deemed to create a contractual relationship between Company and the subcontracting party or assignee.

**21.05 Non-exclusivity.** Neither this Agreement nor any Rider hereunder shall be considered to be an exclusive contract. Company shall have the right to hire others to perform the same or similar services or work.

**21.06 Compliance with Laws.** Contractor and its subcontractors shall at all times comply with all Laws applicable to Services performed under any contract hereunder. Notwithstanding the provisions of Section 10.01, Contractor shall indemnify Company and its Affiliates for any fine, penalty or liability, and for costs related thereto, including, without limitation, court costs and attorney's fees, arising out of any failure of Contractor and its subcontractors to comply with any Law. Without limiting the applicability of the foregoing, Contractor and all of its employees and subcontractors shall comply with: (i) the Occupational Safety and Health Act of 1970, as amended, and all Laws issued pursuant thereto, including any applicable Laws pertaining to occupational safety and health; (ii) Executive Order 11246, as amended, and all Laws issued pursuant thereto (including 41 C.F.R. §§ 60-1.4 (a) and 60-1.8, and 41 C.F.R. Part 60-2); (iii) Section 503 of the Rehabilitation Act of 1973, as amended, and all Laws issued pursuant thereto (including 41 C.F.R. § 60-741.5 (a)); (iv) Section 402 of the Vietnam Era Veterans Readjustment Assistance Act of 1974, and all Laws issued pursuant thereto (including 41 C.F.R. § 60-150.4); and (v) 40 C.F.R. Part 80.

**21.07 Severability.** If any provision of this Agreement or the application thereof is found by any Governmental Authority to be invalid, illegal or unenforceable, to any extent and for any reason, it shall be adjusted rather than voided, if possible, in order to achieve the intent of the Parties. In any event, the remainder of this Agreement and the application of such remainder

CLTT/COP/MMCSA/09-2005

PSXCAN00001328

shall not be affected thereby and shall be enforced to the greatest extent permitted by Law.

**21.08 Non-Waiver.** The failure of either Party to enforce any provision, condition, covenant or requirement of this Agreement for any occurrence shall not be construed to be a waiver of such provision, condition, covenant or requirement unless the Party failing to do the enforcing gives a Notice to the other Party that such failure to do the enforcing was intended to be a waiver. No waiver by either Party of any default in the performance of any provision, condition, covenant or requirement contained herein shall be deemed to be a waiver of, or in any manner release, such other Party from performance of any other provision, condition, covenant or requirement herein contained, nor be deemed to be a waiver of the same provision, condition, covenant or requirement.

**21.09 Entire Agreement.** This Agreement, together with all exhibits attached hereto, constitutes the entire agreement between the Parties relating to the subject matter hereof, and it supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, between the Parties relating to the subject matter hereof, and there are no warranties, representations, or other agreements between the Parties in connection with the subject matter hereof except as specifically set forth herein.

**21.10 No Third-Party Beneficiaries.** Except as otherwise expressly provided for herein, this Agreement is intended to be solely for the benefit of the Parties and their permitted successors and assigns, and is not intended to and shall not confer upon any other Person any other rights or benefits.

**21.11 Other Conditions.** General or special conditions in any of Contractor's price lists, invoices, tickets, receipts, or other documents presented to Company relating to Services hereunder are null and void, regardless of whether signed by an employee of Company.

**21.12 Amendments.** This Agreement shall not be modified or amended, in whole or in part, except by a supplemental agreement signed by both Parties.

**21.13 Replacement of Prior Agreements.** This Agreement shall take the place of and supercedes any and all previous service agreements or their equivalents between Company and Contractor to the extent they cover the scope of Services covered by this Agreement, except for any rights, obligations, and liabilities which by the terms of such previous services agreements or their equivalents, or Law, survive their expiration.

**21.14 Counterparts; Multiple Originals.** This Agreement may be executed in any number of counterparts, all of which together shall constitute one agreement binding on each of the Parties. Each of the Parties may sign any number of copies of this Agreement. Each signed copy shall be an original, but all of them together shall represent the same agreement.

**21.15 Headings.** The Article and Section headings used in this Agreement have been inserted only for convenience to facilitate reference and shall not be determinative in construing the meaning, effect or application of any Article, Section, or provision hereof.

PSXCAN00001329

**21.16** **Exhibits.** The exhibits referred to herein are attached hereto and by this reference is incorporated herein and made a part hereof. In the event there is any conflict between this Agreement and any exhibit, the provisions of this Agreement shall be controlling.

**21.17** **Construction.** The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring either Party by virtue of the authorship of any of the provisions of this Agreement.

**IN WITNESS WHEREOF**, the Parties have signed this Agreement as of the Effective Date.

**COASTAL TRANSPORT COMPANY, INC.**
("Contractor")

By: _____

Name: _____

Title: _____

**CONOCOPHILLIPS COMPANY**
("Company")

By: _____

Name: _Patrick M Walsh_

Title: _Regional Operations Director_

CLTT/COP/MMCSA/09-2005

PSXCAN00001330

## Exhibit B
## Fuel Surcharge

The diesel fuel price adjustment will be based on the Department of Energy (DOE) National Average price as reported each Monday at 4:00 P.M. (Tuesday when Monday is a legal holiday) by the Energy Information Administration. Weekly prices (National Averages) can be obtained by calling 1-202-586-6966 (Energy Information Administration Diesel Fuel Price HOTLINE) or by accessing the Internet at

http://www.eia.doe.gov/pub/oil_gas/petroleum/data_publications/weekly_on_highway_diesel_prices/current/html/diesel.html

The adjustment will be made each Tuesday, and will remain in effect for seven (7) Days.

### Fuel Surcharge Schedule

| | | Percent of Increase |
|---|---|---|
| **Diesel Fuel Price** | | **To Apply** |
| **Cents Per Gallon** | | |
| **Over** | **Not Over** | **Fuel Surcharge** |
| 0 | 1.249 | 0.0% |
| 1.25 | 1.299 | 1.0% |
| 1.30 | 1.349 | 1.5% |
| 1.35 | 1.399 | 2.0% |
| 1.40 | 1.449 | 2.5% |
| 1.45 | 1.499 | 3.0% |
| 1.50 | 1.549 | 3.5% |
| 1.55 | 1.599 | 4.0% |
| 1.60 | 1.649 | 4.5% |
| 1.65 | 1.699 | 5.0% |
| 1.70 | 1.749 | 5.5% |
| 1.75 | 1.799 | 6.0% |
| 1.80 | 1.849 | 6.5% |
| 1.85 | 1.899 | 7.0% |
| 1.90 | 1.949 | 7.5% |
| 1.95 | 1.999 | 8.0% |
| 2.00 | 2.049 | 8.5% |
| 2.05 | 2.099 | 9.0% |
| 2.10 | 2.149 | 9.5% |
| 2.15 | 2.199 | 10.0% |
| 2.20 | 2.249 | 10.5% |
| 2.25 | 2.299 | 11.0% |
| 2.30 | 2.349 | 11.5% |
| 2.35 | 2.399 | 12.0% |
| 2.40 | 2.449 | 12.5% |

CLTT/COP/MMCSA/09-2005

For fuel prices above $2.449 per gallon, the Fuel Surcharge will be adjusted .5% for each $0.05 increase in fuel price.

The Fuel Surcharge is intended to allow Carrier to recover its diesel fuel costs. In the event either Party determines that the Fuel Surcharge is inadequate or excessive, based on a significant upward or downward fluctuation in diesel fuel prices during the term of this Agreement, such Party shall notify the other Party in writing and the Parties shall promptly meet to review the matter; provided, however, any change in the Fuel Surcharge must be agreed to and approved by both Parties; and provided, further, that requested changes to the Fuel Surcharge shall not be subject to the Dispute Resolution Procedures.

CLTT/COP/MMCSA/09-2005

PSXCAN00001332

## Exhibit C
## Dispute Resolution Procedures

Either Party may initiate dispute resolution procedures by sending a Notice ("Complaint Notice") to the other Party specifically stating the complaining Party's claim and requesting dispute resolution in accordance with Section 21.03 of the Agreement. The Party receiving the Complaint Notice ("Receiving Party") shall reply with designation of a Person authorized to settle the dispute and shall list two (2) alternative dates (both of which must be within fourteen (14) Days after receipt of the Complaint Notice) for meeting at the Receiving Party's offices or at a mutually agreeable location.

The Parties' authorized representatives shall meet as they may mutually agree to be advantageous for resolution of the dispute and may, if they so agree, employ a neutral mediator to attempt to resolve the dispute in accordance with the CPR Model Procedures for Mediation of Business Disputes; provided, however, if the dispute has not been resolved within ninety (90) Days after the date when the Receiving Party received the Complaint Notice, the complaining Party may require that the dispute be settled by binding arbitration in accordance with the CPR Rules for Non-Administered Arbitration of Business Disputes, by three (3) arbitrators who shall be neutral, independent, and generally knowledgeable about the type of transaction which gave rise to the dispute. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16; provided, however, that the arbitrators shall include in their report/award a list of findings, with supporting evidentiary references, upon which they have relied in making their decision. Judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The place of arbitration shall be Houston, Texas.

Notwithstanding anything herein and regardless of any procedures or rules of the CPR, it is expressly agreed that the following shall apply and control over any other provision in this Exhibit or the Agreement:

(a)     All offers, conduct, views, opinions and statements made in the course of negotiation or mediation by any of the Parties, their employees, agents, experts, attorneys', and representatives, and by any mediator, are confidential, made for compromise and settlement, protected from disclosure under Federal and State Rules of Evidence and Procedure, and inadmissible and not discoverable for any purpose, including impeachment, in litigation or legal proceedings between the Parties, and shall not be disclosed to any Person who is not an agent, employee, expert or representative of the Parties; provided, however, that evidence otherwise discoverable or admissible is not excluded from discovery or admission as a result of presentation or use in mediation.

CLTT/COP/MMCSA/09-2005

(b)    Except to the extent that the Parties may agree upon selection of one (1) or more arbitrators, the CPR shall select arbitrators from a panel reviewed by the Parties. The Parties shall be entitled to exercise peremptory strikes against one-third (1/3) of the panel and may challenge other candidates for lack of neutrality or lack of qualifications. Challenges shall be resolved in accordance with CPR rules.

(c)    The Parties shall have at least twenty (20) Days following the close of hearing within which to submit a brief (not to exceed eighteen (18) pages in length) an ten (10) Days from date of receipt of the opponent's brief within which to respond thereto.

(d)    The Parties expressly agree that the arbitrators shall not award punitive damages, consequential damages, or attorneys' fees (except attorneys' fees specifically authorized by the Agreement).

(e)    The fees and expenses of any mediator or arbitrator shall be shared equally by the Parties.

(f)    The Parties may, by written agreement (signed by both Parties), alter any time deadline or location(s) for meetings.

(g)    Time is of the essence for purposes of the provisions of this Exhibit.

CLTT/COP/MMCSA/09-2005