# EXHIBIT F



March 18, 2019

Phillips 66 Company
Attn: Matthew H. Oglesby, Sr. Counsel Litigation
P.O. Box 421959
Houston, TX 77242-1959

VIA CM-RRR#
& REGULAR MAIL
& EMAIL: matt.h.oglesby@p66.com

Re:  **DECLINATION OF COVERAGE**
      Canal Claim No.:        L514682
      Our Policy Nos.:        MULTIPLE
      Our Insured:        Coastal Transport Co., Inc.
      Date of Loss:        1985 to 2016
      Plaintiffs:        Mary Major, et al v. SFPP, LP, et al.
      Venue:        Superior Court of Arizona, Maricopa County
      Case No.:        CV 2018-003217
      Your Client:        ConocoPhillps Company and Phillips 66

Dear Mr. Oglesby:

This correspondence supplements our Acknowledgement of Tender dated 11/14/2018. Canal Indemnity Company ("Canal") is in receipt of the above-referenced Complaint ("Lawsuit") filed 03/06/2018. You have referred the matter to Canal under the terms of the above-referenced policies. At this time, it appears that coverage is not afforded under the Business Auto policies, because (1) the Occupant Hazard Exclusion and (2) the Completed Operations Exclusion are applicable to this lawsuit. Coverage is also precluded under the Commerical General Liability ("CGL") policies, because (1) miscellaneous exclusions under CGL coverage forms are triggered, (2) the Total Pollution Exclusion and (3) Punitive or Exemplary Damages Exclusion are applicable to this lawsuit. We discuss the plaintiff's factual allegations and the rationale for our coverage position below.

***FACTS ALLEGED***

The wrongful death lawsuit pending before the Superior Court of Arizona, Maricopa County, under case no. CV 2018-003217 states that from 1985 to 2016, Elwyn Webb ("Webb"), was a gasoline truck driver for Coastal Transport Co. Inc. Webb's job included loading "benzene-containing gasoline" . . . "manufactured, marketed and/or sold by each respective defendant" at terminals and loading racks owned by said defendants." It describes benzene-containing

1

gasoline as "toxic and/or carcinogenic" with "no known safe level of exposure." Further it alleges that Webb's exposure to benzene occurred via "inhalation and dermal absorption" at terminals and/or "premises" owned by defendants, which caused Webb to contract and/or be diagnosed with "Myelodysplastic Syndrome (MDS), a benzene-induced blood and bone marrow cancer" in January 2016, resulting in his death on 03/19/2016.

The Lawsuit contains only two cause of action asserted against your client: Negligence for Premises Liability and Negligence for Failure to Warn. In the Premises Liability count, the Lawsuit alleges that the defendants were negligent in, inter alia, "failing to take precautions or to warn [plaintiff] of the dangers and harm from benzene to which he was exposed while handling benzene-containing gasoline; ignoring or failing to learn that the benzene-containing gasoline they introduced into the stream of commerce was toxic and/or carcinogenic and failing to adequately warn of same; creating dangerous conditions on their premise; failing to keep their premises in a reasonably safe condition; failing to protect invitees, such as [plaintiff], from the hazards associated with exposure to benzene; failing to monitor benzene levels at their premises; failing to adopt and enforce a reasonable and safe industrial hygiene plan for benzene."

In the Failure to Warn count, the Lawsuit alleges that defendants were negligent in, inter alia, "failing to take precautions or to warn [plaintiff] of the dangers and harm from benzene to which he was exposed while handling benzene-containing gasoline; failing to provide [plaintiff] with sufficient knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances to protect him from being damaged by exposure to benzene; ignoring or failing to learn that the benzene-containing gasoline they introduced into the stream of commerce was toxic and/or carcinogenic and failing to adequately warn of same; failing to provide adequate safety equipment; failing to provide visible, understandable warning that were adequate to convey the severity of the risks associated with benzene." The prayer for relief includes general, special and wrongful death damages, as well as punitive or exemplary damages, and other costs and expenses.

## BUSINESS AUTO POLICIES

Canal issued policy nos. LH01508 (11/5/2001 – 7/1/2002), L031944 (6/1/2003 – 6/1/2004), L037588 (5/1/2004 – 3/15/2005), L037755 (3/15/2005 – 5/1/2006), L045542 (5/1/2006 – 5/1/2007), L060240 (5/1/2007 – 5/1/2008) and PDA00788501 (5/1/2008 – 5/1/2009) to Coastal Transport Co., Inc., each with a combined single policy limit of $1,000,000 per "accident" or occurrence, depending on the policy form.[1]

1.  <u>No Allegation of Operation, Maintenance or Use of a Covered Auto</u>

With respect to the Business Auto coverage in policies LH01508, L031944, L037588, L037755, L045542 and L060240 only, it provides, in relevant part, as follows:

**SECTION A – BASIC AUTOMOBILE LIABILITY INSURANCE**

---

[1] It appears Canal issued a policy bearing policy number LH01613 with a policy term of 07/01/02 to 07/01/03, but this policy was cancelled back to its inception date of 07/01/02. As such, it does not appear that Coastal Transport Company was insured with Canal between 07/01/02 and 06/01/03. If you have information regarding coverage during this time period, please let us know at your earliest opportunity.

PSXCAN00000482

I.  COVERAGE A – BODILY INJURY LIABILITY – COVERAGE B – PROPERTY DAMAGE LIABILITY:

The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

**bodily injury or property damage**

to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including the loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile**, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Policy PDA00788501 (5/1/2008 – 5/1/2009) used **BUSINESS AUTO COVERAGE FORM**, **IA 02 CW 0906**, which states in pertinent parts:

SECTION II – LIABILITY COVERAGE
A. **Coverage**
We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

We will also pay all sums an "insured" must legally pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos".  However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident."

We have the right and duty to defend any "insured" against a "suit" asking for such damages for a "covered pollution cost or expense".  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

In order for coverage to apply under the business auto policies, the damage asserted must be caused by an "occurrence" or "accident" resulting from the operation, maintenance or use of a covered auto.  As can be plainly seen by a review of the Lawsuit, there is no allegation of bodily injury resulting from the use of any auto, much less a covered auto.  Rather, the allegations are of bodily injury resulting from your client's negligent maintenance of its premises and negligent failure to warn of dangers on its premises.  Because there is no allegation of damage resulting from the operation, maintenance or use of a covered auto, no coverage is afforded to your client under the Business Auto Policies.

3

2. <u>Occupant Hazard Exclusion</u>

Policies LH01508, L031944, L037588, L037755, L045542 and L060240 only, include an endorsement titled **OCCUPANT HAZARD EXCLUDED**, which states:

> It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person, while in or upon, entering or alighting from the automobile.
>
> It is further agreed that, in the event the company shall, because of provision of the Federal or State statutes become obligated to pay any sum or sums of money because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the company for any and all loss, costs and expenses paid or incurred by the company.

Policy PDA00788501 contains a similar exclusion entitled **Occupant Hazard Exclusion Endorsement**, which provides as follows:

> **Section II. B. Exclusions**
>
> The following exclusion is added:
>
> 14. "Bodily Injury" sustained by any person while in or upon, entering or alighting from an "auto".

To the extent the Lawsuit can be read to imply that the plaintiff sustained injury from exposure to benzenes on your client's premises while in, upon, entering or alighting from an auto, coverage is excluded under the Occupant Hazard Excluded endorsement and the Occupant Hazard Exclusion Endorsement.

3. <u>Pollution Exclusion</u>

Policies L031944, L037588, L037755, L045542 and L060240 only, contain the following pollution exclusion:

> **Exclusions:** This insurance does not apply:
>
> * * * *
>
> (g) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Policy LH01508 contains a Broad Form Absolute Pollution Exclusion Endorsement, which provides in relevant part as follows:

4

In consideration of the premium charged for the policy to which this endorsement is attached, it is hereby understood and agreed Exclusion (g) and its exceptions are replaced with the following:

Exclusion: this insurance does not apply to the following:

POLLUTION
"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:
   (1) Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";
   (2) Otherwise in the course of transit by or on behalf of the "insured"; or
   (3) Being stored, disposed of, treated or processed in or upon the covered "auto";
b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or
c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the covered "auto" or its parts, if:

> The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed to hold, store, receive or dispose of such "pollutants".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

> 1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and
> 2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn, or damage.

* * * *

DEFINITIONS

"Pollutants" means any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5

It is further understood and agreed the exclusions and terms included herein shall also apply to exclude such coverage as required under the Federal Motor Carrier Endorsement Forms MCS-90 and BMC-90. Specific coverage for which has been obtained elsewhere and is afforded under policy # PL56192183 of *SEE BELOW. Pursuant to terms of said endorsement forms, it is understood and agreed the insured will indemnify and hold harmless Canal Indemnity Company from any and all claims, loss and/or expenses incurred as a result of the *SEE BELOW or any other carrier failing to accept responsibility for the pollution, "Environmental Restoration" protection of the public required by said endorsements.

*AMERICAN INTERNATIONAL SPECIALTY LINES INC. CO.

Policy PDA00788501 contains the following pollution exclusion:

B. Exclusions
This insurance does not apply to any of the following:

* * * *

11. Pollution
"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    a. That are, or that are contained in any property that is:
        (1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";
        (2) Otherwise in the course of transit by or on behalf of the "insured"; or
        (3) Being stored, disposed of, treated or processed in or upon the covered "auto";
    b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or
    c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the covered "auto" or its parts, if:

    (1) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed to hold, store, receive or dispose of such "pollutants"; and
    (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

6

>Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:
>
>>(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and
>>(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn, or damage.

Policy PDA00788501 also contains a Pollution Liability – Broadened Coverage for Covered Autos – Business Auto, Motor Carrier and Truckers Coverage Forms, which provides in relevant part as follows:

>A. Liability Coverage is changed as follows:
>   1. Paragraph a. of the Pollution Exclusion applies only to liability assumed under a contract or agreement.
>   2. With respect to the coverage afforded by Paragraph A.1. above, Exclusion B.6. Care, Custody Or Control does not apply.

Policy PDA00788501 defines "pollutants" as "any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The Lawsuit in this matter does not allege the involvement of any covered "auto" insured under the Canal policies. To the extent, however, the Lawsuit could be interpreted to allege the Mr. Webb was exposed to benzenes in the course of operating or using a covered "auto", the Pollution Exclusions in the policies operate to exclude coverage. Specifically, the Pollution Exclusions in policies L031944, L037588, L037755, L045542 and L060240 exclude coverage for "bodily injury" caused by exposure to pollutants other than a sudden and accidental exposure. In this case, the Lawsuit does not allege a sudden and accidental exposure to pollutants. Rather, it alleges repetitive and routine exposure to benzenes throughout Mr. Webb's career. As such, the pollution exclusion in policies L031944, L037588, L037755, L045542 and L060240 excludes coverage for the claims made in the Lawsuit.

Additionally, the Pollution Exclusions in policies LH01508 and PDA00788501, which are substantially similar, exclude coverage for the allegations made in the Lawsuit. Specifically, the Pollution Exclusions in those policies exclude coverage for "bodily injury" caused by "pollutants" with two exceptions, neither of which are present in the allegations of the Lawsuit. The first exception is for "pollutants" that are fuels, lubricants, fluids and exhaust gases needed for or resulting from the normal electrical, hydraulic, or mechanical functioning of the covered "auto" or its parts. In this case, the Lawsuit alleges exposure to benzenes in gasoline being hauled as cargo by Mr. Webb, not which is used as fuel for whatever truck he might be operating. As such, the first exception does not apply. The second exception is for exposure to pollutants resulting from the damage, upset or overturn of a covered "auto". No such facts are alleged in the Lawsuit. Rather, the Lawsuit alleges routine exposure to benzenes resulting from Mr. Webb's presence at the defendants' terminals and facilities. As such, the second exception does not apply.

7

Finally, the Pollution Liability – Broadened Coverage for Covered Autos – Business Auto, Motor Carrier and Truckers Coverage Forms found in Policy PDA00788501 does not expand coverage to your client. While the endorsement restores coverage to the insured for direct liability for pollutants caused by the insured's use of a covered auto, it still excludes coverage for liability assumed under a written contract. In this case, there are no allegations that the pollutants were released from a covered auto and to the extent your client has asserted indemnification claims under the agreement between itself and Coastal Transport, no coverage is afforded for those assumed liability claims.

4.    <u>Completed Operations Exclusion</u>

The **AMENDATORY ENDORSEMENT** included in Canal business auto policies LH01508, L031944, L037588, L037755, L045542 and L060240 states:

> SECTION A – BASIC AUTOMOBILE LIABILITY INSURANCE
>
> PART I – COVERAGE A – BODILIY INJURY LIABILITY - - - COVERAGE B – PROPERTY DAMAGE LIABILITY
>
> **EXCLUSIONS**: The following are added:
> . . .
> (i)    to **bodily injury** or **property damage** arising out of the **named insured's** work after that work has been completed or abandoned. In this exclusion, the **named insured's** work means:
>
> > (1) work or operating performed by the **named insured** or on behalf of the **named insured**; and
> > (2) materials, parts or equipment furnished in connection with such work or operations.
>
> The **named insured's** work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraph **1.** or **2.** above.
>
> The **named insured's** work will be deemed completed at the earliest of the following times:
>
> > (1) when all of the work called for in the **named insured's** contract has been completed.
> > (2) when all of the work to be done at the site has been completed if the **named insured's** contract calls for work at more than one site.
> > (3) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed; . . . (As modified under policy PDA00788501 (5/1/2008 – 5/1/2009), **BUSINESS AUTO COVERAGE FORM, SECTION II – LIABILITY COVERAGE, B. Exclusions, 10. Completed Operations**).

Policy PDA00788501 contains a similar exclusion in the Business Auto Coverage form that provides, in relevant part, as follows:

> SECTION II – LIABILITY COVERAGE
>
> * * * *
>
> B. Exclusions
>
> * * * *
>
> 10. Completed Operations
>
>     "Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.
>
>     In this exclusion, your work means:
>
>     a. Work or operations performed by you or on your behalf; and
>     b. Materials, parts, or equipment furnished in connection with such work or operations.
>
>     Your work will be deemed completed at the earliest of the following times:
>
>     (1) When all of the work called for in your contract has been completed.
>     (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
>     (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
>
>     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as complete.

The Lawsuit in this case alleges that Mr. Webb contracted Myelodysplastic Syndrome as a result of his exposure to benzenes in your client's gasoline. Based on the aforementioned endorsement, Webb's bodily injury claim is excluded, because your work was deemed completed once the "benzene-containing gasoline" Webb delivered at various terminals was put to its intended use.

5. <u>Handling Of Property Exclusion</u>

Policy PDA00788501 contains an exclusion for damages arising out of the insured's handling of property that provides as follows:

9

SECTION II – LIABILITY COVERAGE

\* \* \* \*

C. Exclusions

\* \* \* \*

      7. Handling Of Property

      "Bodily injury" or "property damage" resulting from the handling of property:

      a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or
      b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

To the extent that the Lawsuit alleges that Mr. Webb was exposed to benzenes either before or after gasoline was loaded into a covered auto, which is not, in fact, alleged, coverage is excluded.

## COMMERICAL GENERAL LIABILITY POLICIES

Canal issued policy nos. CGL014504 (6/7/2003 – 5/15/2004), CGL014507 (5/15/2004 – 3/15/2005), CGL014511 (3/15/2005 – 5/1/2006), CGL014515 (5/1/2006 – 5/1/2007), PDA00248901 (5/1/2007 – 5/1/2008) and PDA00788701 (5/1/2008 – 5/1/2009) to Coastal Transport Co., Inc. with a per occurrence limit of $1,000,000 or general aggregate limit of $2,000,000.[2] The Commercial General Liability ("CGL") policies we issued on forms CGL Coverage Forms: CG 00 01 07 98 for policies CGL014504 and CGL014507; form CG 00 01 12 04 for policies CGL014511, CGL014515 and PDA00248901; and, CG 00 01 12 07 for policy PDA00788701.

All policies have the following Insuring Agreement under **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

    \* \* \* \*

---

[2] Coastal's agent advised Canal when the claim was tendered that Canal issued CGL policies for the policy years 2001-2002 and 2002-2003 under policy numbers 0151598 and 2495028 respectively. Canal did not, in fact, issue the referenced policies. Rather, it appears the policies were issued by Lexington Insurance Company.

PSXCAN00000490

> b.  This insurance applies to "bodily injury" or "property damage" only if:
>
>    * * * *
>    (2) The "bodily injury" or "property damage" occurs during the policy period.

1. <u>No Allegation of Damages Within the Policy Periods</u>

As an initial matter, the Lawsuit alleges that Mr. Webb was exposed to benzenes between 1985 and 2016, culminating with a diagnosis of Myelodysplastic Syndrome in January of 2016. While the Lawsuit clearly alleges exposure to benzenes during the Canal policy periods, coverage is predicated upon Mr. Webb sustaining "bodily injury" during the Canal policy periods. The Lawsuit is silent on when Mr. Webb actually sustained alleged injury from the exposure to benzenes. As such, it appears that there is no coverage under the Canal CGL policies because there is no allegation that Mr. Webb sustained bodily injuries during the Canal policy periods.

2. <u>Auto Exclusion</u>

All the Canal CGL policies contain exclusions for "bodily injury" arising out of the ownership, maintenance, use or entrustment to others of any "auto" owned or operated by or rented or loaned to any insured. The Canal CGL Policies include "loading and unloading" in the definition of "use".

> Specifically, the Canal CGL Policies provide, in relevant part, as follows:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> SECTION I – COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
>    2. Exclusions:
>
>       This insurance does not apply to:
>       . . .
>
>       (g)   Aircraft, Auto or Watercraft
>             "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> * * * *
>
> SECTION V – DEFINITIONS:
>
> * * * *
>
> 11.   "Loading or unloading" means the handling of property:
>       . . .

PSXCAN00000491

> c.   While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered; . . .
>
> but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

While there is no allegation in the Lawsuit that your client negligently owned, maintained, used or entrusted to others an "auto", it alleges that Mr. Webb loaded your client's products, which contained benzene, at your client's terminal.  Because the Canal CGL Policies specifically exclude coverage for "bodily injury" sustained through the use of an "auto", which includes "loading or unloading", coverage for the claims made in the Lawsuit are excluded.

3.   Total Pollution Exclusion

All of the Canal CGL Policies contain a Total Pollution Exclusion.  Policies CGL014504, CGL014507, CGL014511 and CGL014515 contain a Special Exclusion Endorsement, which provides in relevant part as follows:

> **EXCLUSION – POLLUTION – TOTAL**
> It is agreed that this insurance does not apply to:
>
> 1.   "Bodily injury", "property damage", "personal and advertising injury", or medical expenses which would have not occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, irritants, or hazardous substances at any time.
>
> . . .
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemical, and waste. In addition to pollutants to be disposed of, waste also includes materials to be recycled, reconditioned, or reclaimed.
>
> **This endorsement replaces any existing terms and/or exclusions regarding pollution liability within this policy.**

Policies PDA00248901 and PDA00788701 contain a Total Pollution Exclusion Endorsement, which provides as follows:

> Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
>
> This insurance does not apply to:
>
> f.   **Pollution**
>   (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge,

12

> dispersal, seepage, migration, release or escape of "pollutants" at any time.
>
> **(2)** Any loss, cost or expense arising out of any:
> **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
> **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of, "pollutants".

In Policies PDA00248901 and PDA00788701, "Pollutants" is defined in **Section V – Definitions** of the Commercial General Liability Coverage Form as follows:

> **15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Under either Total Pollution Exclusion, no coverage is afforded under the Commercial General Liability policies issued by Canal to Coastal Transport for the claim in this matter. Specifically, the Lawsuit alleges that Mr. Webb contracted Myelodysplastic Syndrome as a result of his exposure to benzenes in your client's gasoline. In paragraph 24 of the Lawsuit, the plaintiff alleges that Mr. Webb was "exposed to benzene through inhalation and dermal absorption of the defendants' gasoline." Thus, the Lawsuit alleges that Mr. Webb inhaled the fumes from gasoline and absorbed through his skin the liquid gasoline. As such, the Total Pollution Exclusions in the Canal Policies exclude "bodily injury" that would not have occurred but for the release of these gaseous and liquid forms of benzene-containing gasoline, and no coverage is afforded under these policies.

4.   <u>Punitive Damage Exclusion</u>

All of the Canal CGL Policies contain a Punitive Damage Exclusion. Policies CGL014504, CGL014507, CGL014511 and CGL014515 contain a Special Exclusion Endorsement, which provides in relevant part as follows:

> **EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES**
>
> This insurance does not apply to punitive or exemplary damages.

Policies PDA00248901 and PDA00788701 include endorsement, **IG 35 CW 0106, PUNITIVE OR EXEMPLARY DAMAGES EXCLUSION**:

> This endorsement modifies insurance provided under the following:
>
> COMMERICAL GENERAL LIABILITY COVERAGE PART
>
> This insurance does not apply to punitive or exemplary damages.

13

      All other terms and conditions of the insurance remain unchanged.

Coverage is precluded under all CGL policies, because the Lawsuit alleges that Mr. is entitled to punitive or exemplary damages in its prayer for relief. As such, coverage is excluded for any punitive damages that may be awarded against your clients in this litigation.

## *CONCLUSION*

For the reasons stated above, there is no coverage for your client under the Canal policies and Canal will not be providing either defense or indemnification for the above-referenced Lawsuit. If you believe there is any additional information that we should review, please provide it to us so that we can revisit our coverage position. You are reminded of your rights to retain counsel, of your choice and at your own expense, to review our coverage position.

If you have any other available coverage, specifically Business Auto and/or Commercial General Liability Coverage, it is suggested that you notify that insurance company of the Lawsuit immediately.

Sincerely,

Linda Samuels, MPA, JD
Complex Case Unit
P: 800-452-6911, Ext. 5250
E: Linda.Samuels@canal-ins.com

cc:    Coastal Transport Co., Inc.    -    Via Mail
        1603 Ackerman Rd.
        San Antonio, TX 78219

        HUB Int'l Transportation Ins. Svcs.    -    Via Email: Jodi.neal@hubinternational.com
        Attn: Jodi Neal, Account Executive
        10701 Corporate Drive, Ste. 380
        Stafford, TX 77477

        Delta General Agency Corp.    -    Via Mail
        4828 Loop Central Dr., Ste. 1000
        Houston, TX 77081