EXHIBIT M



**C D & S**

Christian Dichter & Sluga
A PROFESSIONAL CORPORATION

Alison R. Christian
*Admitted in AZ and NM*
Writer's Direct Line: (602) 792-1706
Writer's email: achristian@cdslawfirm.com

July 10, 2019

**VIA CERTIFIED U.S. MAIL AND EMAIL**

Matthew H. Oglesby
Senior Counsel, Litigation
Phillips 66
2331 CityWest Blvd.
Houston, Texas 77042
Matt.H.Oglesby@p66.com
Attorney for ConocoPhillips Company

|     |              |                                                                                      |
| --- | ------------ | ------------------------------------------------------------------------------------ |
| Re: | Our Client:  | Canal Insurance Company                                                              |
|     | Named Insured: | Coastal Transport Co., Inc.                                                          |
|     | Claim Number: | L515067                                                                              |
|     | Matter:      | *Major v. ConocoPhillips Company, et al.*; Maricopa County Superior Court Case No. CV2018-003217 |

Dear Mr. Oglesby:

Our firm has been retained to represent Canal Insurance Company ("Canal") in connection with the above lawsuit filed by Mary Major, Joshua Webb, and the Estate of Elwyn Webb. This letter is directed to ConocoPhillips Company (referred to as "Conoco") and is being sent to you in your capacity as in-house litigation counsel. If you are not authorized to accept this letter on Conoco's behalf, or if you would prefer that we send this letter to someone else, please let us know right away.

The purpose of this letter is to respond to the additional insured tender sent to Canal. We reviewed the information and documents provided with the tender, as well as the information in the March 6, 2018 complaint, in an effort to find coverage for Conoco under the commercial general and auto liability policies issued to Coastal Transport Co., Inc. ("Coastal") by Canal. Based upon the information provided to date, Canal agrees to defend Conoco pursuant to a complete reservation of all rights available under the policies and the applicable law. Canal has the right to select defense counsel of its choosing and stands ready to retain panel counsel to defend Conoco in this case. In the alternative, and as a showing of good faith, Canal will defend Conoco through attorney Brett Young and the law firm of Norton Rose Fulbright, up to Canal's panel counsel rates of $180 for partners, $165 for associates, and $100 for paralegals. Conoco would remain responsible for paying any difference in Mr. Young's rates. Please let us know what Conoco decides so we can communicate with panel counsel if necessary.

PSXCAN00000591



ConocoPhillips Company
July 10, 2019
Page 2

This letter outlines the coverage issues identified to date, and requests additional information needed in connection with Canal's ongoing investigation into this claim. Please understand that Canal makes no conclusion as to the truth or falsity of any allegations. No statement in this letter should be construed as an admission or determination as to the validity of any allegation or claim. This letter is based upon our present understanding of the facts. Please review this letter carefully with Conoco and communicate with us promptly about any facts as to which we are mistaken, or if there are any additional facts of which Canal should be made aware. By identifying potential coverage issues in this letter, Canal does not waive, and expressly reserves, its right to rely on any other provisions set forth in the Policies in the future and as more facts are revealed.

## FACTUAL BACKGROUND

This case relates to wrongful death claims asserted by Mary Major and Joshua Webb, the surviving spouse and son of Elwyn Webb (the "Plaintiffs"). Mr. Webb was a gasoline truck driver for Calzona Tankways, Inc. between 1985 and 1993, and Coastal Transport Co., Inc. between 1993 and 2015. The March 6, 2018 Complaint alleges that Mr. Webb loaded gasoline at terminals and loading racks owned by the defendants between 1985 and 2016. The Complaint specifically alleges that Mr. Webb worked at the Conoco terminals located at S. 51st Avenue and 134 N. 55th Avenue in Phoenix, Arizona. The Complaint is silent as to the period of time in which Conoco owned or operated the subject terminals or when Mr. Webb visited them; please provide that information at your first convenience.

The Complaint alleges that in the course of his work Mr. Webb was exposed to benzene-containing gasoline through inhalation and dermal absorption, and that as a direct result of his exposure to benzene Mr. Webb contracted Myelodysplastic Syndrome (MDS), a blood and bone marrow cancer. Mr. Webb was diagnosed with MDS in January 2016 and passed away on March 19, 2016.

In their March 6, 2018 Complaint, Plaintiffs asserted claims for premises liability and failure to warn against the following defendants: SFPP, LP; Kinder Morgan Energy Partners, LP; Kinder Morgan GP, LP; Kinder Morgan Operating, LP; Caljet of America, LLC; Caljet II, LLC; Shell Oil Company; Equilon Enterprises, LLC; ConocoPhillips Company[1]; Atlantic Richfield Company dba Arco Products Company; Circle K Terminal, LLC; BP Product North America; Exxon Mobil Corporation dba Mobil Oil Corp; Chevron Products Company; Chevron USA, Inc.; Pro-Petroleum, Inc.; and Valero Marketing and Supply Company.

The Complaint does not contain any allegations that Coastal or Mr. Webb was negligent, or that Coastal is in any way liable for Plaintiffs' damages. Instead, the first count for premises liability alleges that Conoco (1) owed a duty of care to individuals, like Mr. Webb, working on its premises, (2) knew

---

[1] Phillips 66 is not a defendant and there are no claims against Phillips 66. If that is incorrect, please let us know.

PSXCAN00000592


Christian Dichter & Sluga

ConocoPhillips Company
July 10, 2019
Page 3

or should have known of an unreasonably dangerous condition on its premises (i.e. benzene exposure), and (3) failed to use reasonable care to prevent harm to Mr. Webb. The examples Plaintiffs provide in their Complaint of Conoco's alleged negligence include: failing to take proper precautions, failing to warn Mr. Webb of the dangers of handling benzene, failing to provide Mr. Webb with knowledge about how to protect himself, failing to place adequate warnings on the property, failing to instruct Mr. Webb on how to handle benzene, ignoring or failing to learn the risks associated with benzene, creating a dangerous condition on its premises, failing to keep the premises reasonably safe, failing to perform industrial hygiene monitoring, and failing to monitor benzene levels at its premises. The count alleges that Plaintiffs' damages were "a direct and proximate result" of Conoco's negligence.

The second count for negligent failure to warn alleges that Conoco manufactured, distributed and/or sold benzene-containing gasoline and therefore had a duty to warn Mr. Webb about the risks associated with their product. The examples Plaintiffs provide in their Complaint of Conoco's alleged negligence include: failing to warn Mr. Webb of the dangers of benzene and carcinogens, failure to provide Mr. Webb with knowledge regarding safe and sufficient apparel and protective wear, failing to place adequate warnings on the property, supplying products with manufacturing defects, failing to provide safety equipment, and failure to warn Mr. Webb about the dangers of developing cancer. The count alleges that Plaintiffs' damages were "a direct and proximate result" of Conoco's negligence.

The Complaint seeks general damages, special damages, wrongful death damages, medical expenses, funeral and burial expenses, punitive damages, and Plaintiffs' costs.

## THE CANAL INSURANCE POLICIES

Canal Insurance Company issued numerous auto liability and commercial general liability policies to named insured Coastal Transport Co., Inc., located at 1603 Ackerman Road in San Antonio, Texas. The policies were countersigned by Canal's general agent, Delta General Agency Corporation, in Houston, Texas. Coastal's agents for these policies included J. Howse, Inc. and The Transportation Group—both located in Houston, Texas. The policies also contain numerous endorsements that are specific to Texas law. The automobile liability policies each contain a combined single limit of $1,000,000. The commercial general liability policies each contain per occurrence limits of $1,000,000 with aggregate limits of $2,000,000. The policy numbers and effective dates for the policies are as follows:

Automobile Liability Policies (collectively "the Auto Policies")
- Policy No. LH01508 with effective dates from November 15, 2001 to July 1, 2002 (the "2001 Auto Policy")[2]

---

[2] A Cancellation Request/Policy Release was signed by the insured on July 8, 2002 and submitted to Canal, releasing the policy effective July 1, 2002.



ConocoPhillips Company
July 10, 2019
Page 4

- Policy No. L031944 with effective dates from June 1, 2003 to May 1, 2004 (the "2003 Auto Policy")[3]
- Policy No. L037588 with effective dates from May 1, 2004 to March 15, 2005 (the "2004 Auto Policy") [4]
- Policy No. L037755 with effective dates from March 15, 2005 to May 1, 2006 (the "2005 Auto Policy")[5]
- Policy No. L045542 with effective dates from May 1, 2006 to May 1, 2007 (the "2006 Auto Policy")
- Policy No. L060240 with effective dates from May 1, 2007 to May 1, 2008 (the "2007 Auto Policy")
- Policy No. PDA00788501 with effective dates from May 1, 2008 to May 1, 2009 (the "2008 Auto Policy")

<u>Commercial General Liability Policies (collectively "the CGL Policies")</u>

- CGL014504 with effective dates from June 7, 2003 to May 15, 2004 (the "2003 CGL Policy")
- CGL014507 with effective dates from May 15, 2004 to March 15, 2005 (the "2004 CGL Policy")
- CGL014511 with effective dates from March 15, 2005 to May 1, 2006 (the "2005 CGL Policy")[6]
- CGL014515 with effective dates from May 1, 2006 to May 1, 2007 (the "2006 CGL Policy")
- PDA00248901 with effective dates from May 1, 2007 to May 1, 2008 (the "2007 CGL Policy")
- PDA00788701 with effective dates from May 1, 2008 to May 1, 2009 (the "2008 CGL Policy")

The above policies are collectively referred to as the "Policies" in this letter. Due to the fact that the Polices were written over ten years ago, Canal does not currently have access to certified copies. Several of the policies were released by the insured after being lost. Efforts to obtain complete copies

---

[3] A Cancellation Request/Policy Release was signed by the insured's CFO, Tom Braaton on April 22, 2004 acknowledging that no claims will be made under this policy for losses that occur after May 1, 2004.
[4] The insured, through Tammy Traynham, signed a Notice of Cancellation on March 18, 2005 requesting to cancel the policy effective April 23, 2005. The policy was canceled because it was lost, and new coverage was written under Policy L037755. The date of cancelation was subsequently amended to March 15, 2005 to conform with the newly written policy.
[5] Declarations page identifies the policy period as March 15, 2005 "until cancelled". The policy was cancelled at the insured's request, due a lost policy release, effective May 1, 2006. This was also confirmed via a "GENERAL CHANGE" endorsement that amended the policy effective dates to March 15, 2005 to May 1, 2006.
[6] This policy period extended by a "GENERAL CHANGE" endorsement from March 15, 2006 to May 1, 2006.



ConocoPhillips Company
July 10, 2019
Page 5

of these policies are ongoing, however. A flash drive containing the most complete versions of the Policies in Canal's possession is provided with this letter.

## COVERAGE ANALYSIS

Canal looked for coverage for Conoco under the Policies and its analysis is set forth below. Please review this letter carefully.  If Conoco disputes any portion of Canal's position, please provide us with any documentation supporting its position at your first convenience.

1.  *The Auto Policies*

    a.  *Is Conoco an insured under the Auto Policies?*

As the entity seeking coverage, your client must demonstrate that it qualifies as an insured under the Auto Policies. The Auto Policies define "**insured**" to mean "any person or organization qualifying as an **insured** in the 'Persons Insured' provision of the applicable insurance coverage. The insurance afforded applies separately to each **insured** against whom claim is made or suit is brought, except with respect to the limits of the company's liability." ConocoPhillips Company is not identified as a Named Insured on the Auto Policies on the Declarations. SECTION III – PERSONS INSURED in the Auto Policies says that "Each of the following is an **insured** under this insurance to the extent set forth below…(a) the **named insured**…(d) any other person or organization but only with respect to his or its liability because of acts or omissions of an **insured** under (a), (b) or (c) above."

Section III also states "None of the following is an **insured**…(iii) any person or organization, other than the **named insured**, with respect to: (1) a motor vehicle while used with any trailer owned or hired by such person or organization and not covered by like insurance in the company (except a **trailer** designed for use with a four wheel **private passenger automobile** and not being used for business purposes with another type motor vehicle), or (2) a **trailer** while used with any motor vehicle owned or hired by such person or organization and not covered by like insurance in the company."

Section II.A.1. "Who Is An Insured" in the 2008 Auto Policy, as well as the amendments to that policy through the Motor Carrier Endorsement written on form IA 11 CW 0907, contain language that differs from the earlier policies. The 2008 Auto Policy states that for operations Coastal engages in as a "motor carrier," the Liability Coverage portion of the policy is changed to include as "insureds": "b. Anyone else while using with [Coastal's] permission a covered 'auto' you own, hire, or borrow except…(4) Anyone other than [Coastal's] 'employees'…while moving property to or from a covered 'auto'…" It also includes as insureds "e. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

This "Who Is An Insured" provision is also amended by the Trucker's Endorsement, form IA 06 CW



ConocoPhillips Company
July 10, 2019
Page 6

0906 to state "6. No coverage is afforded to any person, firm or organization using the described 'auto' pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, expressed or implied." The Trucker's Endorsement also amends Section IV. – Business Auto Conditions to include this provision regarding other insurance: "e. Regardless of the provisions of paragraph a. above, in the event the 'auto' described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded you shall be excess insurance over any other insurance."

The 2008 Auto Policy also includes an endorsement entitled "HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN", written on form CA 99 16 12 93. This includes the following provision in the "Who Is An Insured" section for liability coverage: "While any covered 'auto' described in the Schedule is rented or leased to you and is being used by or for you, its owner and anyone else from whom you rent or lease it is an 'insured' but only for that covered auto." The Schedule states "PER MONTHLY REPORTING UNDER FLEET AUTOMATIC" 2008 "MONTHLY REPORTING."

As discussed above, the allegations against Conoco relate to its own independent negligence for premises liability and failure to warn. There are no allegations in the Complaint that Coastal is liable for Plaintiffs' damages, or in any way at fault for Plaintiffs' damages, nor are there allegations that Conoco is liable for Coastal's conduct. If Conoco has information suggesting otherwise, please provide it to us at your first convenience. Because Conoco is not a named insured, nor does it qualify as an insured pursuant to the "Who Is An Insured" provisions based upon the available information, it only has coverage if it qualifies as an additional insured under one of the Auto Policies' additional insured ("AI") endorsements.

The 2001 Auto Policy does not contain any AI endorsements. Therefore, there is no potential for coverage for Conoco under the 2001 Auto Policy.

The 2003 Auto Policy, the 2004 Auto Policy, the 2005 Auto Policy, the 2006 Auto Policy, and the 2007 Auto Policy, each contain a "GENERAL CHANGE" endorsement that states as follows:

> IT IS HEREBY UNDERSTOOD AND AGREED, THAT NOT WITHSTANDING THE CONTRACTUAL LIABILITY EXCLUSION A OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED, SUCH INSURANCE AS IS AFFORDED HEREIN SHALL APPLY AS ADDITIONAL INSURED COVERAGE TO ANY COMPANY WITH WHICH THE NAMED INSURED HAS A CONTRACT IN WRITING PRIOR TO AN OCCURRENCE, AGREEING TO PROVIDE PROTECTION FOR LIABILITY CLAIMS ARISING OUT OF THE NAMED INSURED'S OPERATION OF VEHICLES INSURED HEREUNDER. WHERE REQUIRED BY CONTRACT IN WRITING, IT IS AGREED SUBROGATION RIGHTS AGAINST THE ADDITIONAL INSURED ARE WAIVED UNLESS CAUSED SOLELY BY THE ADDITIONAL INSURED. IN THE EVENT OF CANCELLATION, NOTICE WILL BE SENT ONLY TO THE NAMED INSURED.



Christian Dichter & Sluga

ConocoPhillips Company
July 10, 2019
Page 7

The 2008 Auto Policy contains a "POLICY CHANGES" endorsement written on form IL 45fe CW 0107 that states as follows:

> ADDITIONAL INSURED ENDORSEMENT. This endorsement modifies insurance provided under the following BUSINESS AUTO COVERAGE FORM With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement This endorsement identifies person(s) or organization(s) who are "insured's" [sic] under the Who Is An Insured provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form. SCHEDULE Name of Person(s) or Organization(s): Any organization that has requested to be a Designated Insured and you are obligated through a written contract to provide insurance. Each person or organization shown in the Schedule is an "insured" for Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is Insured Provision contained in Section II of the Coverage Form. For the purposes of the coverage provided by this endorsement, Section II, Who Is An Insured is changed to include the owner of a non-owned trailer. If "you" or "we" cancel the policy, we will give notice of cancellation to the person(s) or organization(s) named in the Scheduled above as allowed by the Cancellation Common Policy Condition.

Lastly, the 2008 Auto Policy also contains an endorsement written on form IA 101 CW 0906 entitled "ADDITIONAL INSURED WITH WAIVER OF RIGHTS OF RECOVERY". It amends the BUSINESS AUTO COVERAGE FORM and states "The person or organization shown above is an 'insured' for Liability Coverage as indicated in Section II Liability Coverage under Who Is An Insured. We will waive our rights of recovery against the person or organization shown above." The Name of Person or Organization is identified as "PER LIST AT DELTA." Canal has not yet been able to access the list that would have existed at Delta for the 2008 Auto Policy.

Canal has been provided with a single contract dated September 15, 2005 in connection with the Conoco tender. If additional contracts exist, please provide them to us right away. The 2005 contract is between "Coastal Transport Company, Inc." and "ConocoPhillips Company". The contract requires Coastal to maintain auto and commercial general liability policies with $1,000,000 limits. It states that those policies "shall be endorsed to show [ConocoPhillips Company] as an additional insured and all insurance policies obtained by [Coastal Transport Company, Inc.] shall contain a waiver of subrogation in favor of Company." Upon information and belief, on March 21, 2012, ConocoPhillips Company named Phillips 66 as its successor-in-interest. Please provide us with a copy of the documentation substantiating the interest transfer at your first convenience.

Coverage through the AI endorsements to the 2003-2007 Auto Policies requires that the contract with Coastal exist prior to the occurrence at issue. The "occurrence" in this case involves Mr. Webb's



Christian Dichter & Sluga

ConocoPhillips Company
July 10, 2019
Page 8

alleged exposure to benzene that allegedly caused myelodysplastic syndrome to develop sometime between 1985 and 2016, and his death in 2016. Because the contract is dated September 15, 2005 there is no potential for coverage under the 2003 Auto Policy or the 2004 Auto Policy. ConocoPhillips Company will qualify as an additional insured under the 2005-2007 Auto Policies so long as it can establish the "occurrence" at issue took place after the September 15, 2005 contract. If these conditions cannot be met, however no potential for coverage exists for Conoco under the 2005-2007 Auto Policies. Please provide the information needed to complete this investigation at your first convenience.

The 2008 Auto Policy's AI endorsement does not require a written contract with Coastal to have existed prior to the occurrence, but it does require that the entity with the contract also qualify as an insured under Section II. As set forth above, Conoco does not qualify as an insured under Section II based upon the information available at this time. Therefore, the AI endorsement will not afford it coverage either.

Canal is exercising its right to defend Conoco under a complete reservation while its investigation into your client's status as an additional insured continues.

### b. Do the claims fall within the Auto Policies' insuring agreement?

As the entity seeking coverage, your client also has the responsibility to bring these claims within the purview of the insuring agreements. Section A.I.A. in the insuring agreement in the 2003-2007 Auto Policies states that Canal "will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of bodily injury and property damage to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile** and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such **bodily injury** or **property damage** …."

The 2003-2007 Auto Policies define "**bodily injury**" to mean "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." They define "**occurrence**" to mean "an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured." They define "**owned automobile**" to include "an automobile which is owned by the **named insured** and described in the declarations" and "a **trailer** not described in this policy, if designated for use with a four wheel private passenger automobile and if not being used for business purposes with another type of automobile." These policies define "trailer" to include a "semi-trailer but does not include mobile equipment."

PSXCAN00000598


Christian Dichter & Sluga

ConocoPhillips Company
July 10, 2019
Page 9


The 2008 Auto Policy's insuring agreement states that Canal will pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Section II entitled "Liability Coverage" also provides that Canal "will also pay all sums an 'insured' legally must pay as a 'covered pollution cost or expense' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos'. However, [Canal] will only pay for the 'covered pollution cost or expense' if there is either 'bodily injury' or 'property damage' to which this insurance applies that is caused by the same 'accident'."

The 2008 Auto Policy defines "auto" as "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." However, the definition of "'auto' does not include 'mobile equipment'." This policy further defines "accident" as including "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." In addition, the 2008 Auto Policy defines "pollutant" to include "any solid, liquid, gaseous or thermal irritant or contaminate, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." "Covered pollution cost or expense" is defined as:

any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants";

   a. That are, or that are contained in any property that is:
      1. Being transported or towed by, handled or handled for movement into, onto, or from the covered "auto";
      2. Otherwise in the course of transit by or on behalf of the "insured"; or
      3. Being stored, disposed of, treated or processed in or upon the covered "auto";



ConocoPhillips Company
July 10, 2019
Page 10

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** "does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed, or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from the premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**a.** The "pollutants" or any property in which the "pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**b.** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is cased directly by such upset, overturn or damage.

The 2008 Auto Policy's liability coverage provides coverage for any "auto," as indicated by the "11" symbol under the "Covered Auto" section of the Schedule of Coverages and Covered Autos. This symbol is defined as "any 'auto' 10,000 GVW or greater." Section IV.B.7. of the 2008 Auto Policy states that "Under this Coverage Form, we cover 'accidents' and 'losses' occurring: a. During the policy period shown in the Declarations; and b. Within the coverage territory. The coverage territory is: a. The United States of America…." The 2008 Auto Policy contains an endorsement entitled "HIRED AUTOS SPECIFIED AS COVERED AUTOS YOU OWN". This endorsement provides "Any 'auto' described in the Schedule will be considered a covered 'auto' you own and not a covered 'auto' you hire, borrow, or lease under the coverage for which it is a covered 'auto.'" The schedule states "PER MONTHLY REPORTING UNDER FLEET AUTOMATIC" 2008 "MONTHLY REPORTING."



ConocoPhillips Company
July 10, 2019
Page 11

For coverage to exist under the Auto Policies, the injuries must arise out of the ownership, maintenance or use of a covered auto. The Complaint alleges that Mr. Webb was a gasoline truck driver who suffered injuries and "loaded benzene-containing gasoline at…terminals and loading racks owned and/or operated by each respective defendant." Jurisdictions have come to different conclusions regarding whether a failure to properly maintain a loading terminal constitutes the "use" of a covered vehicle, even in the context of policies that provide coverage for "loading and unloading" like the 2003-2007 Auto Policies. Jurisdictions tend to distinguish between liability based upon the mere failure to maintain a safe place to load and negligence in the actual loading of a motor vehicle. The only two counts alleged in the Complaint are for premises liability and negligent failure to warn. Additionally, only autos owned by the named insured (Coastal) qualify as covered autos under the 2003-2007 Auto Policies. In order to qualify as a covered auto under the 2008 Auto Policy, the auto must have been "10,000 GVW or greater."

To assist Canal in its ongoing investigation into coverage under the Auto Policies, please provide us with information regarding whether the auto(s) Mr. Webb operated during the relevant time period were owned by Coastal and had a gross vehicle weight of at least 10,000 pounds. Please also provide us with information regarding what portion of Plaintiffs' claims against Conoco specifically fall within the insuring agreement of the Auto Policies.

Canal is exercising its right to defend Conoco under a complete reservation of rights while it awaits this information.

### c. Do any exclusions in the Auto Policies preclude coverage?

In the event that Conoco provides information demonstrating its status as an insured and bringing these claims within the insuring agreement, there are several exclusions Canal wants to bring to Conoco's attention because they may impact coverage.

The 2003-2007 Auto Policies contains several relevant exclusions. The first is Exclusion (g), which states the insurance does not apply to "bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

The next is written on an endorsement entitled "Occupant Hazard Excluded". This states "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile. It is further agreed that, in the event the company shall, because of provision of Federal or State statutes become obligated to pay any sum or sums of money



ConocoPhillips Company
July 10, 2019
Page 12

because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the company for any and all loss, costs and expenses paid or incurred by the company."

The 2003-2007 Auto Policies also contain an exclusion entitled "Truckman's Endorsement" that provides "In consideration of the premium charged for the policy to which this endorsement is attached, it is understood and agreed that no coverage is extended to any person, firm or organization using the described automobile pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement either written or oral, expressed or implied, the terms and provisions of the Insuring Agreement III of Section A, entitled "Persons Insured" notwithstanding." It further provides that "In the event the automobile described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded the named insured shall be excess insurance over any other insurance."

There is also an endorsement to the 2003-2007 Auto Policies that amends the exclusion section to preclude coverage for "bodily injury or property damage arising out of the named insured's work after that work has been completed or abandoned. In this exclusion, the named insured's work means: (1) work or operations performed by the named insured or on behalf of the named insured; and (2) materials, parts or equipment furnished in connection with such work or operations." It provides that the "named insured's work will be deemed completed at the earliest of the following times: (1) when all of the work called for in the named insured's contract has been completed; (2) when all of the work to be done at the site has been completed if the named insured's contract calls for work at more than one site; and (3) when that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project…work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." This same endorsement includes an exclusion for bodily injury "arising out of the operation of the following…pumps…well servicing equipment."

The 2008 Auto Policy contains other relevant exclusions. For example, Exclusion 7., Handling of Property, precludes coverage for "'bodily injury'…resulting from the handling of property: a. Before it is moved from the place where it is accepted by the 'insured' for movement into or onto the covered 'auto'; or b. After it is moved from the covered 'auto' to the place where it is finally delivered by the 'insured'." Here, the Complaint alleges that "bodily injury" occurred while Mr. Webb was transferring gasoline to Conoco's property, potentially triggering application of this exclusion. Canal reserves the right to deny coverage to Conoco for the claims in the Complaint based upon Exclusion 7.

Exclusion 10., Completed Operations, says the insurance does not apply to "'bodily injury'…arising out of your work after that work has been completed or abandoned. In this exclusion, your work means: (1) work or operations performed by you or on your behalf; and (2) materials, parts or equipment



ConocoPhillips Company
July 10, 2019
Page 13

furnished in connection with such work or operations." It provides that the "your work will be deemed completed at the earliest of the following times: (1) when all of the work called for in your contract has been completed; (2) when all of the work to be done at the site has been completed if the your contract calls for work at more than one site; and (3) when that part of the work done at the site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project…work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed."

Exclusion 11., Pollution, precludes coverage for "'bodily injury'…arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants': a. That are, or that are contained in any property that is: (1) being transported or towed by, handled, or handled for movement into, onto or from, the covered 'auto'; (2) otherwise in the course of transit by or on behalf of the 'insured'; or (3) being stored, disposed of, treated or processed in or upon the covered 'auto'; b. Before the 'pollutants' or any property in which the 'pollutants' are contained are moved from the place where they are accepted by the 'insured' for movement into or onto the covered 'auto'; or c. After the 'pollutants' or any property in which the 'pollutants are contained are moved from the covered 'auto' to the place where they are finally delivered, disposed of or abandoned by the 'insured'."

Exclusion 11 also states that "Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar 'pollutants' that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered 'auto' or its parts if: (1) The 'pollutants' escape, seep, migrate, or are discharged, dispersed or released directly from an 'auto' part designed by its manufacturer to hold, store, receive or dispose of such 'pollutants'; and (2) The 'bodily injury'…does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of 'mobile equipment.'" It goes on to say "Paragraphs b. and c. above of this exclusion do not apply to 'accidents' that occur away from premises owned by or rented to an 'insured' with respect to 'pollutants' not in or upon a covered 'auto' if: (1) The 'pollutants' or any property in which the 'pollutants' are contained are upset, overturned or damaged as a result of the maintenance or use of a covered 'auto'; and (2) The discharge, dispersal, seepage, migration, release or escape of the 'pollutants' is caused directly by such upset, overturn or damage."

The Pollution exclusion is modified by an endorsement written on form CA 99 48 03 06, entitled "POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO, MOTOR CARRIER, AND TRUCKER'S COVERAGE FORMS." The endorsement states that Paragraph a. in the Pollution exclusion "applies only to liability assumed under a contract or agreement." It also states that for purposes of the coverage provided under Paragraph a. in the Pollution exclusion, the "Care, Custody or Control" exclusion does not apply.



ConocoPhillips Company
July 10, 2019
Page 14

The 2008 Auto Policy includes an endorsement entitled, "OCCUPANT HAZARD EXCLUSION ENDORSEMENT" stating the coverage does not apply to "'bodily injury' sustained by any person while in or upon, entering or alighting from the 'auto.'"

Canal reserves its rights to deny coverage to Conoco under the Auto Policies based upon the above exclusions. If Conoco disputes that these exclusions apply, please provide us with documentation supporting its contentions.

### d. *Are there any other relevant provisions in the Auto Policies that impact coverage?*

There are other provisions in the Auto Policies that Canal wants to bring to Conoco's attention while the defense is ongoing. The 2003-2007 Auto Policies contain the MCS-90 (7/96) endorsement and the 2008 Auto Policy contains an MCS-90 (4/2000) endorsement. These endorsements state as follows:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits slated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the course of their employment or property transported by the Insured, designated as cargo.

> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a



ConocoPhillips Company
July 10, 2019
Page 15

> breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

> It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

> The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of any one accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

Although the MCS-90 states that Canal will pay "any final judgment recovered against the insured," it does not define "the insured" for purposes of the endorsement.  The Motor Carrier Act of 1980 (49 U.S.C. § 10101 *et seq.*) provides, however, that its insurance requirements (of which the MCS-90 Form is a part, *see* 49 C.F.R. § 387.15) apply "to *for-hire motor carriers* operating motor vehicles transporting property in interstate or foreign commerce." 49 C.F.R. § 387.3 (emphasis added). The Act further clarifies that it "prescribes the minimum levels of financial responsibility required to be maintained by *motor carriers* of property operating motor vehicles in interstate, foreign, or intrastate commerce."  49 C.F.R. § 387.1 (emphasis added).

The Fifth Circuit has specifically held that "[t]he federal regulation that requires the MCS–90 Endorsement clearly defines the 'insured' as 'the motor carrier *named* in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier.'" *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 477–78 (5th Cir. 2009) (Emphasis added). In *Ooida*, the Fifth Circuit further noted that the Federal Motor Carrier Safety Administration issued regulatory guidance clarifying that "Form MCS–90 ... [is] not intended, and do[es] not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary." *Id.* (citing Federal Motor Carrier Safety Administration, *Regulatory Guidance for Forms Used To Establish Minimum Levels of Financial Responsibility of Motor Carriers,* 70 FR 58065–01 (October 5, 2005)). Other courts have consistently reached the same result. *Lancer Ins. Co. v. VIP Limousine Serv., Ltd.*, No. 3:11-CV-111, 2013 WL 937735, at *11 (N.D.W. Va. Mar. 11, 2013), *aff'd sub nom. Lancer Ins. Co. v. Snyder*, 547 F. App'x 331 (4th Cir. 2013); *Sentry Select Ins. Co. v. Thompson,* 665 F.Supp.2d 561, 569 (E.D.Va.2009) (holding that "in light of the unambiguous regulations defining 'insured,' and its broader statutory and regulatory context, the MCS–90 requires payment for a judgment against the named insured only.").

PSXCAN00000605



ConocoPhillips Company
July 10, 2019
Page 16

This endorsement therefore does not provide coverage to additional insureds or entities that are not motor carriers.

Section IV. in the 2003-2007 Auto Policies identifies the "Limits of Liability." This provision states that "Regardless of the number of (1) **insureds** under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) automobiles to which this policy applies, the company's liability is limited as follows…Coverage A – The limit of bodily injury liability stated in the schedule of the policy as applicable to 'each occurrence' is the total limit of the company's liability for all damages because of **bodily injury**, including damages for care and loss of service, or **property damage** as a result of any one occurrence, provided that with respect to any one **occurrence** for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility under the provisions of the Motor Vehicle Financial Responsibility Law of any state or province such limit of liability shall be applied to provide the separate limits required by such law for **bodily injury** liability … to the extent of the coverage required by such law, but the separate application of such limit shall not increase the total limit of the company's liability."

The 2003-2007 Auto Policies also contain provisions relating to "Other Insurance" in Section 6. of the Conditions. It states:

> The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the **insured** has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

>> (a) Contribution by equal shares. If all such other valid and collectible insurance provides for contribution by equal shares, the company (including any affiliated company) shall not be liable for a great proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limits in full or the full amount of the loss is paid.

PSXCAN00000606



ConocoPhillips Company
July 10, 2019
Page 17

> (b) Contribution by limits. If any of such other insurance does not provide for contribution by equal shares, the company (including any affiliated company) shall not be liable for a great proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

The 2003-2007 Auto Policies also outline certain duties that Conoco owes Canal. For example, Section 4.c. in the Conditions states that Conoco "shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy." This section also makes it clear that the "insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident."

The 2003-2007 Auto Policies also contain a provision entitled "Settlement Notice Liability". This states that Canal "will notify the named insured in writing of any initial offer to settle a claim against the insured within ten days after the date on which the offer was made. The company will also notify the named insured in writing of any settlement of a claim against the insured within thirty days after the date of the settlement."

The 2008-2009 Auto Policy also contains certain additional relevant provisions we want to bring to Conoco's attention. The Section II.C., Limits of Liability, states that "Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations. All 'bodily injury', 'property damage' and 'covered pollution cost or expense' to substantially the same conditions will be considered as resulting from one 'accident.'" Section IV.A.2., Loss Conditions, states that Canal has "no duty to provide coverage under this policy unless there has been full compliance with the following duties…b. Additionally, [Conoco] and any other involved 'insured' must: (1) Assume no obligation, make no payment or incur no expense without [Canal's] consent, except at the 'insured's' own cost…(3) Cooperate with [Canal] in the investigation or settlement of the claim or defense against the 'suit."

Section IV.B.8. in the 2008-2009 Auto Policy is entitled "Two or More Coverage Forms Or Policies Issued By Us." It provides that "If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same 'accident', the aggregate maximum Limit of Insurance under all of the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any

PSXCAN00000607


Christian Dichter & Sluga

ConocoPhillips Company
July 10, 2019
Page 18

Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form."

Lastly, the 2008-2009 Auto Policy also contains an "Other Insurance" provision in Section IV.B.5.[7] It indicates as follows:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:
>
> > (1) Excess while it is connected to a motor vehicle you do not own.
> > (2) Primary while it is connected to a covered "auto" you own.
>
> b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".
>
> c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".
>
> d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

## 2. *The CGL Policies*

### a. *Is Conoco an additional insured under the CGL Policies?*

As with the Auto Policies, because Conoco seeks coverage from Canal, it must demonstrate that it qualifies as an insured under the CGL Policies. Conoco is not identified as a Named Insured on the CGL Policies' Declarations pages. SECTION II – WHO IS AN INSURED in the CGL Policies state that "If you are designated in the Declarations as … An organization other a partnership, joint venture, or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your offices and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders." Section II.1.d. The CGL Policies state, "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or

---

[7] This provision is amended by the Motor Carrier Endorsement, form IA 11 CW 0907.

PSXCAN00000608



organization qualifying as a Named Insured under this policy." Because Conoco is not a named insured, nor does it qualify as an insured pursuant to Section II, it only has coverage if it qualifies as an additional insured under an additional insured ("AI") endorsement.

The 2003 CGL Policy, 2004 CGL Policy, 2005 CGL Policy, 2006 CGL Policy, and 2007 CGL Policy, each contain an AI endorsement written on form GL 705 entitled "ADDITIONAL INSURED – VICARIOUS LIABILITY COVERAGE FOR OWNERS, LESSEES, OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU." It amends Section II – Who Is An Insured "to include as an insured any person or organization for whom [Coastal is] performing operations when [Coastal] and such person or organization have agreed in writing in a contract or agreement, prior to an occurrence, that such person or organization be added as an additional insured on [Coastal's] policy."

The endorsement goes on to state "Such person or organization is an insured only with respect to liability arising out of [Coastal's] ongoing operations performed for that insured, but excluding any negligent acts committed by such insured. A person or organization's status as an insured under this endorsement ends when [Coastal's] operations for that insured are completed." In order to help us assess application of this endorsement, please provide us the date(s) on which Coastal performed operations for Conoco.

There are certain exclusions that apply to this AI endorsement. For example, the AI coverage does not apply to "bodily injury" occurring after all "work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed" or after that portion of Coastal's work "out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."

The 2004 CGL Policy also contains an AI endorsement written on form CG 20 10 10 01, entitled "ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION." It amends Section II – Who Is An Insured "to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured." The Schedule is blank and the endorsement states "If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement." The Declarations indicates that additional named insureds are shown on Form 2-1-E. There are ten entities listed on the Form 2-1-E included in the policy; as you can see from that form, Conoco is not included among them.

For the 2005 CGL Policy, Canal is in possession of a "Certificate Holder List" that includes



ConocoPhillips Company
July 10, 2019
Page 20

"ConocoPhillips Company and its Affiliates" with an address of "P.O. Box 941906 Houston TX". This list says "Certificate holder is included as an additional insured as indicated. Alternate Employer Endorsement is added to the Workers' Compensation Policy. No Waiver status was requested with this certificate." It is unclear who created the certificate holder list, and what relevance it has for the Canal policy. Regardless, this certificate list does not entitle Conoco to coverage; only a policy endorsement would do that.

As discussed above, Canal has been provided with one contract in connection with the Conoco tender, dated September 15, 2005. If any other contracts exist, please provide them to us right away. The 2005 contract is between "Coastal Transport Company, Inc." and "ConocoPhillips Company". The contract requires Coastal to maintain auto and commercial general liability policies with $1,000,000 limits. It states that those policies "shall be endorsed to show Company [ConocoPhillips Company] as an additional insured and all insurance policies obtained by Contractor [Coastal Transport Company, Inc.] shall contain a waiver of subrogation in favor of Company." Upon information and belief, on March 21, 2012, ConocoPhillips Company named Phillips 66 as its successor-in-interest. Please provide us with a copy of the documentation substantiating the interest transfer at your first convenience.

Coverage under the AI endorsements to the 2003-2007 CGL Policies requires that the contract with Coastal exist prior to the occurrence. The "occurrence" at issue involves Mr. Webb's alleged exposure to benzene that allegedly caused myelodysplastic syndrome to develop sometime between 1985 and 2016, and his death in 2016. Because the contract is dated September 15, 2005 there is no potential for coverage under the 2003 CGL Policy or the 2004 CGL Policy. Conoco will qualify as an additional insured under the 2005-2007 CGL Policies so long as it can an establish the "occurrence" at issue took place after 2005.

Canal is exercising its right to defend Conoco under a complete reservation of rights while it awaits this information.

### b. Do the claims fall within the CGL Policies' insuring agreement?

Conoco also has the responsibility of demonstrating that the claims fall within the purview of the CGL Policies' insuring agreements. Under Section I.A.1.[8] in the CGL Policies, Canal will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." It also provides Canal with "the right and duty to defend the insured against any 'suit' seeking those damages. However, [Canal has] no duty to defend the insured against any 'suit' seeking damages for 'bodily injury'' or 'property damage' to which this insurance

---

[8] The insuring agreement is amended by endorsement CG 00 57 09 99 entitled "AMENDMENT OF INSURING AGREEMENT – KNOWN INJURY OR DAMAGE" in the 2003, 2004, 2005 CGL Policy.



Christian Dichter & Sluga

ConocoPhillips Company
July 10, 2019
Page 21

does not apply." Canal may, at its discretion, investigate any "occurrence" and settle any claim or "suit" that may result. The CGL Policies only apply if the "'bodily injury'… is caused by an 'occurrence' that takes place in the 'coverage territory'" and the "'bodily injury'…occurs during the policy period." Section I.1.b.

The CGL Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Section V.3. The CGL Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section V.13.

The Complaint alleges that Mr. Webb was allegedly exposed to benzene that allegedly caused myelodysplastic syndrome to develop sometime between 1985 and 2016, and his death in 2016. Because the CGL Policies were in effect during this window of time, the potential exists for coverage under the insuring agreement.

      *c. Do any exclusions in the CGL Policies preclude coverage?*

Canal wants to bring several exclusions to Conoco's attention because they may ultimately impact coverage.

The first is Exclusion b., Contractual Liability. This exclusion states that the insurance does not apply to "property damage" for which "the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." *See* Section I.A.2.b. There are exceptions to this exclusion, such as when the insured would have been liable for the damages in the absence of the contract or agreement, or when the contract qualifies as an "insured contract," so long as the "bodily injury" occurs after execution of the contract or agreement. An "insured contract" includes "That part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for 'bodily injury' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Section V.9.[9]

They also include Exclusion g., Aircraft, Auto or Watercraft. Under this exclusion, the insurance does not apply to "bodily injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'" This exclusion does not apply to "(4) Liability assumed under

---

[9] The 2004 CGL Policy limits the definition of "insured contract" through endorsement CG 21 39 10 93 to exclude reference to indemnity agreements. The 2005-2006 CGL Policies amends the definition of "insured contract" through endorsement CG 24 25 07 04. The 2007 CGL Policy and 2008 CGL Policy amend the definition through endorsement CG 24 26 07 04. The 2008 CGL Policy also amends the definition through endorsement CG 21 39 10 93.

PSXCAN00000611



ConocoPhillips Company
July 10, 2019
Page 22

any 'insured contract' for the ownership, maintenance or use of aircraft or watercraft…"

The 2003 CGL Policy, 2004 CGL Policy, and 2005 CGL Policy, also contains an endorsement entitled, "EXCLUSION – DESIGNATED ONGOING OPERATIONS." It states this insurance "does not apply to 'bodily injury' or 'property damage' arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others…." The Schedule describes the "Designated Ongoing Operation(s)" as "ALL OPERATIONS OTHER THAN THOSE OPERATIONS DIRECTLY RELATED TO THE BUSINESS OF 'FOR HIRE' TRUCKING."

The 2006 CGL Policy contains an endorsement entitled "LIMITATION OF COVERAGE TO DESIGNATED BUSINESS ACTIVITY" on form IG 36 CW 0105. It states this insurance "applies only to 'bodily injury' …and medical expenses arising out of your business activity described in the schedule of this endorsement." The Schedule includes the following Business Description: "OPERATIONS USUAL AND CUSTOMARY TO THE BUSINESS OF 'FOR HIRE' TRUCKING." The 2007 CGL Policy and 2008 CGL Policy contain a similar limitation, but the Schedule states "Transportation of property for others for compensation."

The 2003-2006 CGL Policies contain a "Special Exclusion Endorsement." It includes a total pollution exclusion that replaces any existing terms or exclusions regarding pollution liability within the policies. Pursuant to the endorsement, the insurance does not apply to "'Bodily injury'…or medical expenses which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, irritants, or hazardous substances at any time…." It goes on to state that the coverage does not apply to "Any loss, cost, or expense arising out of any: a. Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of pollutants…." Under this endorsement, pollutants means "any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes acids, alkalis, chemicals, and waste…." This "Special Exclusion Endorsement" also precludes coverage for "punitive or exemplary damages."

The 2007 CGL Policy and 2008 CGL Policy contain a "TOTAL POLLUTION EXCLUSION ENDORSEMENT" written on form CG 21 49 09 99. It says the insurance does not apply to: "(1) 'Bodily injury'… which would not have occurred in whole or in part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time…." The coverage also does not apply to "(2) Any loss, cost, or expense arising out of any: a. Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of 'pollutants'…."

PSXCAN00000612



ConocoPhillips Company
July 10, 2019
Page 23

The 2007 CGL Policy and 2008 CGL Policy contain a "Punitive or Exemplary Damages Exclusion" written on form IG 35 CW 0106 that precludes coverage for punitive or exemplary damages.

Canal reserves its rights to deny coverage to Conoco under the CGL Policies based upon the above exclusions. If Conoco disputes that these exclusions apply, please provide us with documentation supporting its contentions.

### d. Are there any other relevant provisions in the CGL Policies that may impact coverage?

The CGL Policies contain several additional provisions Canal would like to bring to Conoco's attention.

Section III in the CGL Policies, entitled Limits of Insurance, states that "The Limit of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of: a. Insureds; b. Claims made or 'suits' brought; or c. Persons or organizations making claims or brining 'suits'." It also states, "…the Each Occurrence Limit is the most we will pay for the sum of: a. Damages under Coverage A; and b. Medical Expenses under Coverage C because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.'" It also says "The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance."

Section IV.2., Commercial General Liability Conditions, sets forth certain duties that insureds owe Canal. For example, Coastal and any other involved insured must: "(3) Cooperate with [Canal] in the investigation or settlement of the claim or defense against the 'suit'; (4) Assist [Canal] upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply." Section IV.2.d. also states that "No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

The CGL Policies also contain an "Other Insurance" provision in Section IV.4. It indicates as follows:

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

> a. Primary Insurance



ConocoPhillips Company
July 10, 2019
Page 24

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below:

b.  Excess Insurance

This insurance is excess over:

(1)  Any other insurance, whether primary, excess, contingent or on any other basis…(d) If the loss arises out of maintenance or use of aircraft, 'auto' or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability.

(2)  Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any 'suit' if any other insurer has a duty to defend the insured against that 'suit'. If no other insurer defends, we will undertake to do so, but will be entitled to the insured's rights against all those other insurers.

When this insurance is over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1)  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2)  The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.  Method of Sharing

If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.



ConocoPhillips Company
July 10, 2019
Page 25

> If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## **CONCLUSION**

Canal agrees to defend Conoco through Mr. Young pursuant to a reservation of all rights available under the law and the Policies. Please understand that there may be other reasons why coverage would be limited or precluded under the Policies and applicable law than those contained in this letter. By identifying potential coverage issues in this letter, Canal does not waive, and expressly reserves, its right to rely on any other provisions set forth in the Policies in the future and as more facts are revealed. Canal specifically reserves the following rights:

1. The right to continue to investigate the facts of the claims. Canal's investigation does not waive or change the terms of the Policies, nor does it waive Canal's right to dispute issues of coverage and supplement this position letter.

2. The right to participate in the defense. Participation in the defense does not waive or change the terms of the Policies. Participation in the defense does not waive Canal's right to dispute issues of coverage as set forth herein, nor does participation require Canal to make any settlement offers or satisfy any judgments for claims that are not covered.

3. The right to seek declaratory or other judicial relief. Canal reserves the right to have a court determine at any time whether it is obligated to indemnify or defend Conoco (or to otherwise establish the parties' respective rights).

4. The right to withdraw from Conoco's defense if it is determined that the claims are not covered; and

5. In the event of a judicial determination that there is no duty to defend or indemnify, Canal may seek reimbursement for all sums that paid on uncovered claims.

Canal does not waive its right to rely on additional policy provisions in the future should it become necessary. If Conoco disputes Canal's position, please provide us with documentation supporting its position. Please also provide us with all of the information requested in this letter at your first convenience. This includes:

- Dates on which Conoco owned or operated the subject terminals;
- Dates on which Mr. Webb visited the Conoco terminals;
- Whether there are allegations in this case that Coastal is liable for Plaintiffs' damages;

PSXCAN00000615



ConocoPhillips Company
July 10, 2019
Page 26

- Whether there are allegations in this case that Conoco is liable for Coastal's conduct;
- A copy of any additional contracts between Conoco and Coastal that are not referenced in this letter;
- A copy of the purchase agreement between ConocoPhillips Company and Phillips66;
- Any information Conoco has regarding when the "occurrence" at issue took place;
- Ownership and weight information for the vehicles Mr. Webb operated;
- Dates on which Coastal performed operations for Conoco;
- If Conoco seeks coverage under the Auto Policies, any documentation supporting Conoco's position that its liability allegedly arises out of the ownership, maintenance or use of an auto; and
- Any documentation supporting Conoco's position if it disputes that exclusions cited in the Auto Policies and the CGL Policies apply.

None of the acts of any of Canal's agents, attorneys, or employees should be construed as a waiver of any of Canal's rights, or as an estoppel to assert those rights. Similarly, no conduct by Canal is to be construed as a waiver of the Policies' limitations, exclusions, coverages or agreements.

If there are facts or issues not addressed in this letter, or which come to light in the future with respect to this claim, or anything which you believe may affect coverage, please bring them to our attention immediately. If you have any questions regarding this letter, please call me any time at 602-792-1706.

Very truly yours,

*Alison R. Christian*

Alison R. Christian

ARC/rt

cc: (via email only)
Jennifer Eubanks      jennifer.eubanks@canal-ins.com
Michael McTaggart    michael.mctaggart@nortonrosefulbright.com
Brett Young           brett.young@nortonrosefulbright.com

Enclosures:
Flash drive containing policies

PSXCAN00000616