IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CANAL INDEMNITY COMPANY, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.: 4:19-cv-02945 |
| COASTAL TRANSPORT CO., INC., et al. | § § § | |
| Defendants. | § § | |

**CANAL INDEMNITY COMPANY'S ("CANAL") RESPONSE TO
PHILLIPS 66 COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND CANAL'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TO THE HONORABLE JUDGE BENNETT:**

This Court should deny the Motion for Partial Summary Judgment ("Motion") filed by Phillips 66 Company ("Phillips") seeking a ruling on the duty to defend. Texas law on an insurer's duty to defend holds that the duty is determined by comparing the factual allegations contained in the pleadings with the terms and conditions of the insurance policy. Here, comparing the factual allegations contained in the underlying Plaintiffs' Complaint (the "Complaint") in the underlying suit with the terms and conditions of the Canal policies (the "Policies") at issue reveals that the underlying Plaintiffs' claims against Phillips are barred by application of the pollution exclusions in the respective Policies Canal issued to its named insured, Coastal Transport Co., Inc. ("Coastal").[1] Moreover, the factual allegations contained in the Complaint do not satisfy the insuring agreement in the commercial auto liability policies, as the Complaint does not allege that the underlying Plaintiff's injuries and death resulted from the use of a covered automobile. Finally,

---

[1] The underlying suit is styled as *Mary Major, Individually, and as Representative of the Estate of Elwyn Webb, et al. v. SFPP, L.P., et al.*; Case No. CV2018-003217 (In the Superior Court of Maricopa County, Arizona) (the "Underlying Suit").

Phillips is not entitled to a defense as an additional insured under the Canal Policies because the Complaint does not allege that Coastal committed any acts or omissions that caused the decedent's injuries.

## I.

## BACKGROUND AND ALLEGATIONS IN THE UNDERLYING SUIT

The Underlying Suit alleges generally that Elwyn Webb ("Webb") was a gasoline truck driver employed by Coastal and that he contracted cancer from exposure to benzene-containing gasoline while delivering fuel. Phillips settled its liability in the Underlying Suit, and the suit now proceeds only against parties not involved in this lawsuit.

The Complaint in the Underlying Suit contains limited factual allegations. However, those allegations are clearly stated and preclude coverage under the Policies. The relevant factual allegations from the Complaint state:

- "From approximately 1985 to 2016, [Webb] worked as a gasoline truck driver for Calzona Tankways and later [Coastal]." Doc. 63-5 at p. 11, ¶ 21;

- "As a gasoline truck driver, [Webb] loaded benzene-containing gasoline at the following terminals and loading racks owned and/or operated by each respective defendant," including the following terminals allegedly owned and/or operated by ConocoPhillips Company:

    | TERMINAL ADDRESS(ES) | OWNERS/OPERATORS |
    |---|---|
    | *    *    * | *    *    * |
    | S. 51st Ave., Phoenix, AZ 85043 and 134 N. 55th Ave., Phoenix, AZ 85005 | CONOCOPHILLIPS COMPANY |
    | *    *    * | *    *    * |

    Doc. 63-5 at p. 11, ¶ 22;

- "The benzene-containing gasoline was manufactured, marketed, and/or sold by each respective defendant." Doc. 63-5 at p. 12, ¶ 23;

- "In the course of his work at the defendants' premises, [Webb] was exposed to benzene through inhalation and dermal absorption of the defendant's gasoline." Doc. 63-5 at p. 12, ¶ 24;

- "As a direct and proximate result of his exposure to benzene, [Webb] contracted Myelodysplastic Syndrome (MDS), a benzene-induced blood and bone marrow cancer." Doc. 63-5 at p. 12, ¶ 25;

- "[Webb] was diagnosed with MDS in January 2016 and died on March 19, 2016." Doc. 63-5 at p. 12, ¶ 26.

## II.

## THE POLICIES

While Canal issued commercial general liability policies to Coastal between 2003 and 2009, the only policies raised in the Motion are for the years 2005–2007 (the "CGL Policies"):[2]

- Policy No. CGL014511 for the policy period from March 15, 2005 to May 1, 2006 (the "2005 CGL Policy"). Doc. 63-20; Doc. 63-21;

- Policy No. CGL014515 for the policy period from May 1, 2006 to May 1, 2007 (the "2006 CGL Policy"). Doc. 63-22; and

- Policy No. PDA00248901 for the policy period from May 1, 2007 to May 1, 2008 (the "2007 CGL Policy"). Doc. 63-23.

Likewise, Canal also issued commercial auto liability policies to Coastal between 2001 and 2009, but the only policies subject to the Motion are for the years 2005–2007 (the "Auto Policies"):[3]

---

[2] In Counts II and IV of its Counterclaim against Canal, Phillips seeks defense against the Underlying Suit under all of the commercial general liability policies issued to Coastal. Doc. 17 at pp. 24, 33–35. Although Phillips moves for summary judgment specifically on those counts, the Motion cites only to the three CGL Policies. Doc. 63 at pp. 4–5. To the extent Phillips seeks summary judgment regarding Canal's defense obligations under any of the other commercial general liability policies, there is no additional insured coverage for Phillips under any policies predating the 2005 CGL Policy because those policies incepted before the September 15, 2005 Master Motor Carrier Services Agreement (the "2005 MMCSA") requiring additional insured coverage became effective. *See* Doc. 63-3. Moreover, the policy issued after the 2007 CGL Policy does not contain any endorsements potentially extending additional insured coverage to Phillips.

[3] In Counts II and IV of its Counterclaim against Canal, Phillips seeks defense against the Underlying Suit under all of the commercial auto liability policies issued to Coastal. Doc. 17 at

- Policy No. L037755 for the policy period from March 15, 2005 to May 1, 2006 (the "2005 Auto Policy"). Doc. 63-16; Doc. 63-17;

- Policy No. L045542 for the policy period from May 1, 2006 to May 1, 2007 (the "2006 Auto Policy"). Doc. 63-18; and

- Policy No. L060240 for the policy period from May 1, 2007 to May 1, 2008 (the "2007 Auto Policy"). Doc. 63-19.

## III.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, discovery, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Williamson v. Am. Nat'l Ins.*, 695 F. Supp. 2d 431, 441 (S.D. Tex. 2010). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## IV.

## DETERMINING THE INSURER'S DUTY TO DEFEND

Under Texas law, courts follow the "eight corners" rule to determine whether an insurer has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations

---

pp. 25–26, 33–35. Although Phillips moves for summary judgment specifically on those counts, Phillips' Motion cites only the three Auto Policies. Doc. 63 at p. 3. To the extent Phillips seeks summary judgment regarding Canal's defense obligations under any of the other auto policies, there is no additional insured coverage for Phillips under any policies predating the 2005 Auto Policy because those policies incepted before the 2005 MMCSA became effective. Moreover, the policy issued after the 2007 Auto Policy does not contain any endorsements potentially extending additional insured coverage to Phillips.

of the plaintiff's complaint to determine whether any claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the eight corners of the pleadings and the policy. *Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 491 (Tex. 2008). All doubts with regard to the duty to defend are resolved in favor of the duty. *Id.* Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation." *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines*, *Inc.,* 939 S.W.2d 139, 141 (Tex. 1997). Courts must not, however, "read facts into the pleadings, . . . . look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Id*. at 142 (internal citations omitted). The insured has the burden of showing that a claim is potentially within the coverage of the policy. *Federated Mut.*, 197 F.3d at 723.

## V.

## THE POLICIES' POLLUTION EXCLUSIONS PRECLUDE A DEFENSE FOR THE UNDERLYING SUIT

All of the Policies contain pollution exclusions that preclude coverage for any "bodily injury" that would not have occurred but for the discharge of a "pollutant." The Complaint alleges that Webb would not have contracted terminal cancer but for his exposure to benzene, a "pollutant," that was discharged from Phillips' terminal. Canal therefore has no duty to defend Phillips in the Underlying Suit.

### A.  The CGL Policies' Total Pollution Exclusions

The total pollution exclusions in the 2005 CGL Policy and the 2006 CGL Policy are within the following Special Exclusion Endorsement [GL 699(a)]:

**SPECIAL EXCLUSION ENDORSEMENT**

\*   \*   \*

**EXCLUSION – POLLUTION – TOTAL**

It is agreed that this insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury", or medical expense which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, irritants, or hazardous substances at any time.

   Paragraph 1 does not apply to "bodily injury" or "property damage" caused by smoke or fumes from a hostile fire. As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2. Any loss, cost, or expense arising out of any:

   a. Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemical, and waste. In addition to pollutants to be disposed of, waste also includes materials to be recycled, reconditioned, or reclaimed.

**This exclusion replaces any existing terms and/or exclusions regarding pollution liability within this policy.**

Doc. 63-20 at p. 28; Doc. 63-22 at p. 32.

The 2007 CGL Policy contains the following Total Pollution Exclusion Endorsement [CG 21 49 09 99]:

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

\*   \*   \*

Exclusion **f.** under Paragraph **2.**, **Exclusions** of **Section I Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Doc. 63-23 at p. 42. The 2007 CGL Policy also defines "pollutant" at Section V – Definitions:

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Doc. 63-23 at 34.

These endorsements (together, the "Total Pollution Exclusions") state, in relevant part, that the CGL Policies do not apply to any "bodily injury" that would not have occurred but for the dispersal, release, or escape of "pollutants." The Total Pollution Exclusions preclude coverage for the Underlying Suit because the Complaint alleges that (1) the benzene to which Webb was exposed was a "pollutant" as defined in the exclusions, (2) the benzene was discharged or otherwise emitted as a gas or liquid from its container so as to have contact with Webb, and (3) Webb's "bodily injury" would have not occurred but for his exposure to benzene.

Courts in Texas have routinely interpreted similar pollution exclusions to be unambiguous and preclude all coverage for any liability caused by pollutants. *See Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008) (holding that "Texas courts have consistently held similar pollution exclusions to be unambiguous"); *see also Clarendon Am. Ins.*

*Co. v. Bay, Inc.*, 10 F. Supp. 2d 736, 743 (S.D. Tex. 1998) (finding, consistent with most courts that have examined similar exclusions, that a functionally identical total pollution exclusion was unambiguous).

Texas courts also consistently recognize that pollution exclusions apply outside the scope of traditional environmental pollution. *See Columbia Cas. Co. v. Georgia & Florida RailNet, Inc.*, 542 F.3d 106, 107 (5th Cir. 2008) (holding that a pollution exclusion precluded coverage for a claim alleging "exposure to high-enough levels of exhaust fumes as to cause severe and irreversible respiratory damage"); *see United Nat. Ins. Co. v. Hydro Tank, Inc.*, 525 F.3d 400, 402–03 (5th Cir. 2008) (holding that a total pollution exclusion precluded coverage for allegations of "serious injuries and damages" resulting from exposure "to toxic levels of hydrogen sulfide and/or chemicals and vapors" within a storage tank and explicitly rejecting arguments concerning whether certain compounds are "pollutants" when the "argument cannot be squared with the plaintiffs' pleadings"); *see Hamm v. Allstate Ins. Co.*, 286 F. Supp. 2d 790, 791 (N.D. Tex. 2003) (holding that a total pollution exclusion precluded coverage for allegations of physical injury due to exposure to chemical fumes containing volatile, organic compounds and finding that plaintiffs' alleged exposure to those fumes in one part of a building necessarily required a discharge, dispersal, release, seepage, or migration from another part of the building).

In fact, at least one Texas court has found that the alleged discharge of benzene fell within a substantively similar absolute pollution exclusion. *See Northbrook Indem. Ins. Co. v. Water Dist. Mgmt. Co., Inc.*, 892 F. Supp. 170, 174–75, n.5. (S.D. Tex. 1995) (holding that the pollution exclusion barred coverage for claims alleging that "Defendants caused repeated trespasses onto Plaintiffs property when hazardous and/or toxic substances, including inter alia, benzene were delivered into their water supply.").

The United States Court of Appeals for the Fifth Circuit comprehensively addressed the application of pollution exclusions in the context of common, potentially harmful, organic compounds in *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452 (5th Cir. 2009). In *Nautilus*, an insured apartment company was sued for personal injury resulting from carbon monoxide exposure, but the insurer refused to defend the claim on grounds that the policy's pollution exclusion precluded coverage. 566 F.3d at 453–54.

In subsequent coverage litigation, the insured argued that carbon monoxide, a naturally occurring and ubiquitous organic compound, is not a "pollutant," even at toxic levels, because it is not generally an irritant or contaminant. *Id*. at 455. The *Nautilus* court rejected this argument, concluding that the plain meaning of an "irritant" is a "substance that produces a *particular* effect, not one that generally or probably causes such effects." *Id*. at 455–56 (citations omitted) (emphasis in original). The *Nautilus* court also recognized that the allegations against the insured necessarily involved a "pollutant" because the plaintiff's complaint alleged that she "encountered a strong enough concentration of carbon monoxide to cause severe and permanent injuries." *Id*. at 456.

Second, the insured argued that no "pollutant" was actually discharged because the discharge or release of a "pollutant" requires a "more robust event" than the ordinary emission of carbon monoxide from a home appliance. *Id*. However, the *Nautilus* court rejected this argument outright, reasoning that "to discharge" means merely "to emit" and holding that the exclusion applies as long as the "pollutant" is emitted through one of the enumerated mechanisms and causes bodily injury. *Id*.

The Complaint's allegations establish that benzene is a "pollutant," thereby satisfying the Total Pollution Exclusions' first requirement. In this case, like in *Nautilus*, the Complaint alleges that Webb contracted cancer and died as a result of exposure to benzene—a naturally occurring, organic compound that, in high enough concentrations, can cause significant personal injury. The

Complaint specifically alleges that, "[a]s a direct and proximate result of his exposure to benzene, [Webb] contracted . . . a benzene-induced blood and bone marrow cancer." Doc. 63-5 at p. 12, ¶ 24. The allegations leave no question as to causation.

The second requirement has also been satisfied because the Complaint alleges that the benzene was released from Phillips' terminal. The Complaint alleges that Webb loaded benzene-containing gasoline in connection with his work as a gasoline truck driver and was exposed to benzene through inhalation and dermal absorption while working at the terminals. *See* Doc. 63-5 at pp. 4–5, ¶¶ 22, 24. Phillips may argue that Webb's alleged regular interaction with benzene is insufficient to constitute a "discharge" or other satisfactory release of a "pollutant," but Texas law does not require a "more robust event" as long as the benzene was alleged to have been released or emitted, as is plainly the case here. *See Nautilus*, 566 F.3d at 456.

Finally, the third element—that no "bodily injury" would have occurred but for a "pollutant"—has plainly been satisfied because the Complaint specifically alleges that Webb contracted cancer and died as a result of benzene exposure.

Because the Complaint alleges that Webb's "bodily injury" would not have occurred but for the discharge, dispersal, seepage, migration, release, or escape of benzene, a "pollutant," the Total Pollution Exclusions preclude coverage under the CGL Policies for the Underlying Suit.

**B.     The Auto Policies' Pollution Exclusion**

The Auto Policies contain their "Pollution Exclusion" within the following General Change (2-1-E) endorsement:

**GENERAL CHANGE**

\*     \*     \*

**\*EXCLUSIONS: THIS INSURANCE DOES NOT APPLY:**

**G.**  TO BODILY INJURY OR PROPERTY DAMAGE ARISING OR [sic] OF THE DISCHARGE, DISPERSAL, RELEASE OR ESCAPE OF SMOKE,

> VAPORS, SOOT, FUMES, ACIDS, ALKALIS, TOXIC CHEMICALS, LIQUIDS OR GASES, WASTE MATERIALS OR OTHER IRRITANT, CONTAMINANTS OR POLLUTANTS INTO OR UPON LAND, THE ATMOSPHERE OR ANY WATERCOURSE OR BODY OF WATER: BUT THIS EXCLUSION DOES NOT APPLY IF SUCH DISCHARGE, DISPERSAL, RELEASE OR ESCAPE IS SUDDEN AND ACCIDENTAL.

Doc. 63-16 at p. 16; Doc. 63-18 at p. 19; Doc. 63-19 at p. 18.

The Pollution Exclusion states, in relevant part, that the Auto Policies do not apply to "bodily injury" arising out discharge, dispersal, or release of vapors, fumes, toxic chemicals, liquids, gases, or other irritants, contaminants, or pollutants into the atmosphere, except if the emission was sudden and accidental.[4] *See Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 91 (5th Cir. 1996) (holding that a nearly identical sudden and accidental pollution exclusion was unambiguous and precluded coverage for injury caused by a "pollutant," except to the extent the "sudden and accidental" exception applied). The Pollution Exclusion precludes coverage for the Underlying Suit because the Complaint alleges that (1) the benzene to which Webb was exposed caused severe and permanent injuries, and is therefore an irritant, contaminant, or pollutant in this context, (2) the benzene was discharged or otherwise emitted into the atmosphere and (3) Webb's "bodily injury" would have not occurred but for his exposure to benzene.

The Complaint alleges that Webb, in his employment as a gasoline truck driver for more than twenty years, "was exposed to benzene *through inhalation* and *dermal absorption*," and, "[a]s a direct and proximate result of his exposure to benzene, [Webb] contracted . . . a benzene-induced blood and bone marrow cancer." Doc. 63-5 at p. 12, ¶ 24–25 (emphasis added). For the same reasons discussed in the context of the CGL Policies' Total Pollution Exclusions, there should

---

[4] The Pollution Exclusion expressly does not apply to any "sudden and accidental" discharge. However, the Complaint specifically alleges that any "bodily injury" at issue was caused by Webb's exposure to benzene over a period of more than twenty years, not as a result of any sudden and accidental discharge. *See* Doc. 63-5 at pp. 11–12, ¶¶ 21–26.

therefore be no dispute that the Complaint alleges Webb's "bodily injury" would not have occurred but for his inhalation of benzene released into the air, which, by virtue of allegedly causing Webb's cancer and death, qualifies as an irritant, contaminant, or pollutant. The Complaint does not allege that Webb's exposure resulted from a sudden or abrupt release of benzene. Thus, the Pollution Exclusion precludes coverage under the Auto Policies for the Underlying Suit.

The CGL Policies' Total Pollution Exclusions and the Auto Policies' Pollution Exclusion preclude a defense obligation for the claims asserted in the Complaint.

## VI.

## THE COMPLAINT HAS NOT IMPLICATED THE AUTO POLICIES

Canal has no duty under the Auto Policies to defend Phillips against the Underlying Suit because the Complaint has not alleged "bodily injury" arising out of the ownership, maintenance, or use of an insured automobile. The Auto Policies contain the following insuring agreement:

**SECTION A – BASIC AUTOMOBILE LIABILITY INSURANCE**

**I. COVERAGE A – BODILY INJURY LIABILITY – COVERAGE B – PROPERTY DAMAGE LIABILITY:**

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

**bodily injury or property damage**

to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile**, and the company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Doc. 63-16 at p. 4; Doc. 63-18 at p. 4; Doc. 63-19 at p. 4.

Whether the insuring agreement applies to the Underlying Suit turns on whether Webb's "bodily injury" arose out of the ownership, maintenance, or use of an insured automobile. Under the three-part test adopted by the Texas Supreme Court, injury arises out of the use of an automobile if (1) the accident arose out of the inherent nature of the automobile, (2) the accident arose within the natural, territorial limits of an automobile, and the actual use had not terminated, and (3) the automobile itself produced the injury and did not merely contribute to cause the condition which produced the injury." *See Mid-Century Ins. Co. of Texas, a Div. of Farmers Ins. Group of Companies v. Lindsey*, 997 S.W.2d 153, 157 (Tex. 1999).

Regarding the third element, a Texas Court of Appeals found that the injury at issue did not involve the use of an automobile where it was alleged that the injury resulted from gasoline overflow that ignited while being loaded into a gasoline truck. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Likewise, the third element is not met by the allegations here. The Complaint alleges that Webb worked as a gasoline truck driver for Coastal for some portion of the period from 1985 to 2016. Doc. 63-5 at p. 4, ¶ 21. The Complaint alleges that, as part of his work, Webb loaded benzene-containing gasoline at terminals and loading racks in Arizona. Doc. 63-5 at p. 4, ¶ 22. The Complaint also alleges that, in the course of his work at those premises, Webb was allegedly exposed to benzene through inhalation of and contact with the gasoline. Doc. 63-5 at p. 4, ¶¶ 23–24. The Complaint includes two counts of negligence against Phillips—on grounds of premises liability and failure to warn, respectively—essentially asserting that Phillips knew, or should have known, that the presence of benzene at its terminals created an unreasonably dangerous condition at the premises but failed, among other things, to adequately warn Webb of the condition, to protect its invitees, to properly exercise its right of control, to provide a safe place to work, to provide adequate safety equipment, and to monitor benzene levels. Doc. 63-5 at pp. 5–10.

None of the facts alleged or causes of action asserted in the Underlying Suit suggest that Phillips may be liable for damages alleged in the Complaint because of injuries produced by the use of an automobile under Texas law. On the contrary, the Complaint explicitly alleges that the claims against Phillips arise out of the release of benzene incidental to the use of an automobile and out of Phillips' own negligence in maintaining its premises and failing to warn Webb. Thus, the Auto Policies do not provide a defense obligation in this case.

## VII.

### PHILLIPS IS NOT ENTITLED TO A DEFENSE AS AN ADDITIONAL INSURED UNDER THE CANAL POLICIES

The terms and conditions of coverage under the Policies are pertinent only if Phillips establishes that it is an additional insured. However, because the Complaint alleges that Phillips' liability to Webb resulted from Phillips' own negligence, Phillips is not entitled to a defense as an additional insured under the CGL Policies. Additionally, because the Complaint does not allege that Phillips' liability arose out of Coastal's operation of vehicles insured under the Auto Policies, Phillips is not entitled to a defense as an additional insured under those policies either.

**A.     Phillips Is Not Entitled to a Defense as an Additional Insured Under the CGL Policies**

The additional insured endorsement in the CGL Policies states in relevant part as follows:[5]

**ADDITIONAL INSURED – VICARIOUS LIABILITY COVERAGE FOR OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

\*     \*     \*

**A. Section II – Who Is An Insured** is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement, prior to an occurrence, that such person or organization be added as an additional insured on your policy. Such person or organization is an insured only with respect to liability arising out of your ongoing operations performed for that insured, but excluding any negligent acts committed by such insured. A

---

[5]   The Additional Insured Endorsement also contains certain exclusions not pertinent here.

> person's or organization's status as an insured under this endorsement ends when your operations for that insured are completed.

> \* \* \*

Doc. 63-20 at p. 36; Doc. 63-22 at p. 34; Doc. 63-23 at p. 50.

In order to satisfy the requirements of the endorsement, (1) Coastal must be performing operations for Phillips, (2) Phillips and Coastal must have agreed, prior to the occurrence, to name Phillips as an additional insured, (3) Phillips' liability must arise out of Coastal's ongoing operations performed for Phillips, and (4) Phillips' liability did not result from negligent acts that it committed. This last requirement limits the scope of the additional insured coverage to Phillips' vicarious liability for Coastal's negligence. This last requirement also distinguishes this endorsement from the additional insured endorsements at issue in cases such as *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660 (Tex. 2008).

One published case discussed a similar additional insured endorsement. In *Burlington Northern and Santa Fe Railway Co. v. National Union Fire Ins. Co*., 394 S.W.3d 228 (Tex. App.—El Paso 2012, pet. denied), Burlington Northern entered into a contract with SSI Mobley to control vegetation growing along a railway. The contract between Burlington Northern and SSI Mobley required SSI Mobley to name Burlington Northern as an additional insured under its policies. SSI Mobley's policy with National Union contained the following additional insured language:

> BLANKET—AS REQUIRED BY WRITTEN CONTRACT, BUT ONLY WITH RESPECT TO LIABILITIES ARISING OUT OF THEIR OPERATIONS PERFORMED BY OR FOR THE NAMED INSURED, BUT EXCLUDING ANY NEGLIGENT ACTS COMMITTED BY SUCH ADDITIONAL INSURED.

*Burlington Northern*, 394 S.W.3d at 233–34. The court interpreted the language in the endorsement as follows:

> According to the plain meaning of the language used in the endorsement, BNSF is entitled to coverage for liability arising from bodily injury or property damage caused by SSI Mobley's operations, and is not covered for claims alleging the railroad's own negligence. Therefore, BNSF qualifies as an "additional insured" if the plaintiffs in the underlying

lawsuits sought recovery based on SSI Mobley's negligence and not the railroad's. For this inquiry, we must apply the "eight corners rule," and compare the policy provisions as stated above, to the allegations in the underlying petitions.

*Id.* at 234. In that case, the underlying plaintiffs alleged that the accident giving rise to the lawsuit was caused in part by SSI Mobley's negligence, and the court concluded that National Union had a duty to defend Burlington Northern as an additional insured. *Id*. at 236.

However, the Complaint at issue alleges that Phillips' liability to Webb was based upon Phillips' premises liability, based upon the presence of benzene on the premises, and Phillips' failure to warn Webb of the risks of working around benzene. *See* Doc. 63-5 at pp. 12–15, ¶¶ 27–36 (containing Count I, Negligence (Premises Liability); *see* Doc. 63-5 at pp. 15–17. ¶¶ 37–43 (containing Count II, Negligence (Failure to Warn). The Complaint does not allege that Coastal did anything to cause Webb's injury or that Phillips' liability is based upon its vicarious liability for Coastal's acts or omissions. Because Plaintiffs in the Underlying Suit sought to impose liability on Phillips based on Phillips' own alleged negligent acts, the exclusion in the additional insured endorsement in the CGL Policies applied, and Canal had no duty to defend Phillips as an additional insured under the CGL Policies.

**B.      Phillips Is Not Entitled to a Defense as an Additional Insured under Auto Policies**

The additional insured endorsement in the Auto Polices states in relevant part as follows:

**GENERAL CHANGE**

ADDITIONAL INSURED ENDORSEMENT

IT IS HEREBY UNDERSTOOD AND AGREED, THAT NOT WITHSTANDING THE CONTRACTUAL LIABILITY EXCLUSION A OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED, SUCH INSURANCE AS IS AFFORDED HEREIN SHALL APPLY AS ADDITIONAL INSURED COVERAGE TO ANY COMPANY WITH WHICH THE NAMED INSURED HAS A CONTRACT IN WRITING PRIOR TO AN OCCURRENCE, AGREEING TO PROVIDE PROTECTION FOR LIABILITY CLAIMS ARISING OUT OF THE NAMED INSURED'S OPERATION OF VEHICLES INSURED HEREUNDER. WHERE REQUIRED BY CONTRACT IN WRITING, IT IS AGREED

> SUBROGATION RIGHTS AGAINST THE ADDITIONAL INSURED ARE WAIVED UNLESS CAUSED SOLELY BY THE ADDITIONAL INSURED. IN THE EVENT OF CANCELLATION, NOTICE WILL BE SENT ONLY TO THE NAMED INSURED.

Doc. 63-16 at p. 15; Doc. 63-18 at p. 20; Doc. 63-19 at p. 29.

In order to satisfy the requirements of the endorsement, (1) Phillips and Coastal must have agreed, prior to the occurrence, to name Phillips as an additional insured and (2) the liability claim must arise out of Coastal's operation of vehicles insured under the Auto Policies.

In another case involving Coastal—*Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)—the court affirmed a trial court judgment that a terminal owner did not qualify as an additional insured under Coastal's commercial auto liability insurance policy issued by Transport Insurance Company ("Transport"). In that case, a Coastal employee was loading gasoline into a trailer owned and operated by Coastal at Crown's loading terminal. The gas overflowed from the trailer and caught fire. The accident resulted in the filing of personal injury lawsuits against Crown, Coastal and, others. *Coastal*, 20 S.W.3d at 122. Crown sought additional insured coverage under the Transport policy. However, Transport denied coverage. In the course of the litigation, Transport prevailed on summary judgment against Crown, and Crown appealed. The appeals court affirmed the judgment for Transport, noting that "[t]he plaintiffs in the Stewart lawsuits sued Crown for damages resulting from the negligent maintenance and operation of its terminal loading facility, not for the negligent use and operation of Coastal's truck. Therefore, the claims in the Stewart lawsuits against Crown are not covered by the policy." *Coastal*, 20 S.W.3d at 125.

Here, the Complaint at issue does not allege that Phillips' liability arose out of Coastal's operation of vehicles insured under the Auto Policies. Rather, it alleges that Phillips' liability is based upon premises liability and Phillips' failure to warn. Accordingly, the requirements of the

additional insured endorsement were not satisfied, and Canal had no duty to defend Phillips as an additional insured under the Auto Policies.

## VIII.

## THE TEXAS PROMPT PAYMENT OF CLAIMS ACT DOES NOT APPLY

Phillips asserts that, in addition to its costs to defend the Underlying Suit, Canal is liable for the costs to prosecute Phillips' Counterclaim plus 18% penalty interest under the Texas Prompt Payment of Claims Act, Tex. Ins. Code §§ 542.051, et seq. Doc. 63 at pp. 16–17. Phillips is entitled to relief under the Prompt Payment of Claims Act only if Canal actually has a duty to defend Phillips against the Underlying Suit and if Phillips has satisfied all statutory requirements, such as providing relevant invoices. For the reasons outlined above, the Policies do not provide a defense to Phillips. Phillips' Prompt Payment of Claims Act claim therefore fails.[6]

## IX.

## CANAL'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PHILLIPS ON THE DUTY TO DEFEND

Under Federal Rule of Civil Procedure 56, Canal moves for partial summary judgment against Phillips on its duty to defend Phillips against the claims asserted in the Underlying Suit. Canal incorporates by reference the arguments cited above in response to the Motion. The same facts and arguments that defeat the Motion also establish that Canal is entitled to partial summary judgment on the duty to defend Phillips.

---

[6] Phillips repeatedly asserts, without evidence or explaining its legal significance, that Canal admitted that it had an unconditional duty to defend Phillips in the Underlying Suit. Doc. 63 at pp. 2, 6–9. Canal did not admit coverage under the Policies or waive any of its coverage defenses by agreeing to defend Phillips under a reservation of rights; by agreeing, as a courtesy, to pay any portion of Phillips' defense costs; or by filing this declaratory judgment action. Phillips was also not prejudiced by Canal's purported admission, as Phillips was already represented by counsel, whose fees were paid, at least in part, by National Interstate Insurance Company. *See* Doc. 63 at p. 7.

Respectfully submitted,

**THOMPSON, COE, COUSINS & IRONS, LLP**

By: */s/ Brian S. Martin*
    BRIAN S. MARTIN, Attorney-In-Charge
    Southern District Bar No. 8823
    Texas State Bar No. 13055350
    bmartin@thompsoncoe.com
    RODRIGO "DIEGO" GARCIA, JR.
    Southern District Bar No. 782726
    Texas State Bar No. 00793778
    dgarcia@thompsoncoe.com
    CYRUS W. HARALSON
    Southern District Bar No. 1542111
    Texas State Bar No. 24065371
    charalson@thompsoncoe.com
    One Riverway, Suite 1400
    Houston, Texas 77056
    Telephone: (713) 403-8210
    Telecopy: (713) 403-8299

**COUNSEL FOR PLAINTIFF
CANAL INDEMNITY COMPANY**

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record, in accordance with the Federal Rules of Civil Procedure, on this 28th day of February, 2020.

    */s/ Brian S. Martin*
    Brian S. Martin