# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CANAL INDEMNITY COMPANY, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 4:19-cv-02945 |
| COASTAL TRANSPORT CO., INC., et al. | § § § | |
| Defendants. | § § | |

## PHILLIPS 66 COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO CANAL INDEMNITY COMPANY'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Phillips 66 Company ("Phillips 66"), as successor in interest to ConocoPhillips Company ("COP"), by its undersigned counsel, hereby submits its Opposition to Canal Indemnity Company's ("Canal") Cross-Motion for Partial Summary Judgment ("Cross-Motion") [Dkt. No. 67].

## I.     INTRODUCTION

Canal's Cross-Motion neither establishes any undisputed material fact nor presents any legal argument that demonstrates that it is entitled to summary judgment as a matter of law. As to the facts, for purposes of COP's Motion for Partial Summary Judgment and Canal's Cross-Motion, Canal's failure to address the facts presented in COP's Motion renders those facts undisputed. Fed. R. Civ. P. 56 (e)(2). As to the law, Canal's arguments as to policy exclusions, additional insured policy language and the policies' insuring agreement language are unavailing in light of the governing law in Arizona and Texas on these issues. Because the duty to defend is determined by the eight corners of the underlying pleadings and the insurance policy, this Court can, and respectfully should, deny Canal's Cross-Motion and grant COP's Motion as a matter of law. Fed. R. Civ. P. 56 (e)(3).

## II. LEGAL ARGUMENT

### A. Since Canal Admitted that It Breached the Duty to Defend, COP is Entitled to Summary Judgment As a Matter of Law.

The facts in this case, which are undisputed by Canal's Cross-Motion are:

- By email dated May 28, 2019, Canal informed COP's underlying defense counsel that it accepted COP's additional insured tender and agreed to defend pursuant to a reservation of rights (*see* Ex. I to the Affidavit of Matthew H. Oglesby dated Feb. 4, 2020 ("Oglesby Aff.") [Dkt. No. 63-11];

- By letter dated July 10, 2029, Canal reiterated its agreement that COP qualified as an additional insured under the 2005-2007 Auto Policies and 2005-2007 CGL Policies (*see* Ex. M to Oglesby Aff. [Dkt. No. 63-15]);

- In that letter, Canal also acknowledged and agreed that the allegations in the Underlying Suit fell within the insuring agreement of the CGL Policies (*see id.* at PSXCAN00000608-615);

- Canal further stated it was accepting the duty to defend COP under a reservation of rights (*see id.* at PSXCAN0000615); and

- Canal received defense bills from Phillips 66, but did not reimburse Phillips 66 for any defense costs (*see* Oglesby Aff., ¶ 22 [Dkt. No. 63-2]).

Thus, for purposes of summary judgment, this Court can deem Canal's acceptance of COP as an additional insured, Canal's acceptance of the duty to defend, and Canal's failure to pay defense costs as undisputed, and therefore, admitted. Fed. R. Civ. P. 56 (e)(2). *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2019 WL 7048773, at *35 (D. Ariz. Dec. 23, 2019), *reconsideration denied,* No. CV-17-04663-PHX-DWL, 2020 WL 85108 (D. Ariz. Jan. 7, 2020) (plaintiff was entitled to summary judgment on portion of counterclaim where defendants did not cite to any evidence in support); *Gutierrez v. City of Converse*, No. 5:17-cv-01233-JKP, 2020 WL 156707, at *2 (W.D. Tex. Jan. 10, 2020) ("Where the nonmovant fails to meet its duty to identify evidence in the record to support its assertions, a court may conclude it has failed to raise a genuine dispute of material fact on that particular issue."). These facts demonstrate the

existence of a contract between Canal and COP, and Canal's failure to perform under that contract. The breach of the duty to defend is a breach of contract, and since there are no facts in dispute concerning the existence of a contract and Canal's failure to perform, COP is entitled to summary judgment as to Count 2 of its Counterclaim as a matter of law. This necessarily requires denying Canal's Cross-Motion on the duty to defend and granting COP's Motion.

> **B.  The CGL Policies' and Auto Policies' Pollution Exclusions Do Not Preclude a Defense for the Underlying Suit.**

Canal argues that the CGL Policies and Auto Policies contain pollution exclusions that relieve it of its duty to defend, but that is not correct. Canal bears the burden to prove the applicability of any exclusions to coverage. *Burlington Ins. Co. v. JC Instride, Inc.*, 30 F. Supp. 3d 587, 593 (S.D. Tex. 2014); *see also Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000) ("the insurer bears the burden to establish the applicability of any exclusion"). As an initial matter, the Underlying Suit is not about pollution or contamination of any kind so the pollutions exclusions are inapplicable. It alleges injury from exposure to gasoline, a product being used for its intended purpose at the time of the alleged exposures, during the course of the plaintiff's normal daily employment. In any event, under Texas and Arizona case law on pollution exclusions, and the standard for the duty to defend, Canal does not carry its burden to show that the exclusions completely bar any possibility of any coverage for any of the allegations in the Underlying Suit.

>> 1.  <u>The Underlying Suit Alleges Injury From Gasoline</u>.

Canal's Cross-Motion omits a critical element of the Underlying Suit — the exposure to gasoline — as the cause of injury. Mr. Webb alleges that in the course of his thirty-plus years as a gasoline truck driver, he loaded gasoline, was exposed to gasoline, and was injured from that

exposure. That the gasoline contained benzene does not change the facts as plead.[1] Notably, the Underlying Suit does **not** allege that the gasoline was spilled or escaped containment, and does **not** allege that the benzene contained in the gasoline somehow escaped the gasoline or was broken down from the gasoline. When used for its intended purpose, gasoline is not a pollutant. *See Starr Surplus Lines Ins. Co. v. Star Roofing, Inc.*, Nos. 1 CA-CV 18-0641; 1 CA-CV 18-0642 (Consolidated), 2019 WL 5617575, at * 3 (Ariz. Ct. App. Oct. 31, 2019) (evidence demonstrated that when roofing materials were commercially available and used for intended purposes, bodily injury claim from exposure was not excluded by pollution exclusion: "…the products were used as all parties had foreseen them being used. There was in fact no 'event' identified with [policyholder's] products or processes, other than [plaintiff's] claim that she was injured by the fumes from the [product] used."); *see also Federated Mut. Ins. Co. v. Abston Petroleum, Inc.* 967 So.2d 705, 713 (Ala. 2007) (holding that gasoline is not a pollutant when properly used for the purposes for which it is intended). Canal insured Coastal and COP specifically for the purpose of Coastal's business — gasoline trucking — so Canal knew that is was insuring against potential gasoline-related liability. This distinction is essential to understanding the inapplicability of the pollution exclusions.

2. The Pollution Exclusions Do Not Apply Under Arizona Law.

First, under Arizona law, neither the "Total Pollution Exclusion Endorsement" in the CGL Policies, nor the standard pollution exclusion in the Auto Policies exclude coverage for the Underlying Suit. Arizona courts narrowly interpret pollution exclusions to only encompass traditional environmental pollution claims. *Saba v. Occidental Fire & Cas. Co. of N.C.*, No. CV-14-00377-PHX-GMS, 2014 WL 7176776, at * 2-4 (D. Ariz. Dec. 16, 2014) (interpreting a "Total

---

[1] In fact, gasoline is composed of constituents other than benzene as well.

Pollution Exclusion Endorsement" to apply only to "traditional environmental pollution-related claims.") *citing Keggi*, 13 P.3d at 792 (under the language and history of the pollution exclusion, public policy and the transaction as a whole, the standard pollution exclusion does not apply to exclude damages other than traditional environmental pollution.).

Relying on the rationale by the *Keggi* court, the *Saba* court explained that the language of the clause at issue in the Total Pollution Exclusion — "discharge, dispersal, seepage, migration, release or escape of pollutants" — was not meaningfully distinct from the language of the standard pollution exclusion. *Saba*, 2014 WL 7176776, at *3-4. Accordingly, the *Saba* court ruled that the Total Pollution Exclusion, an exclusion which is broader than the standard pollution exclusion, applied only to traditional environmental pollution claims. *Id*.

It is beyond dispute that the Underlying Suit is not a "traditional environmental pollution claim." Accordingly, Canal cannot rely on the pollution exclusions in either the CGL Policies or the Auto Policies to avoid its obligation to defend COP under Arizona law.

3. The Pollution Exclusions Also Do Not Apply Under Texas Law.

Although courts in Texas have not limited the applicability of pollution exclusions to traditional environmental claims only, they have, as Canal admits, limited the applicability to instances where the "'pollutant' is emitted through one of the enumerated mechanisms and causes bodily injury…." Canal Br. at 9 [Dkt. No. 67] *citing Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 456 (5th Cir. 2009). The determination of whether the Total Pollution Exclusion applies necessarily involves an examination of "the allegations of the underlying petition." *Nautilus*, 566 F.3d at 456. As noted above, gasoline that is being used as intended, as alleged in the Underlying Suit, is not a "pollutant."

In *Nautilus,* the underlying pleadings alleged that carbon monoxide **accumulated** in the plaintiff's apartment, causing bodily injury. *Id.* at 456-57. The *Nautilus* court determined that the

only way the carbon monoxide "could **accumulate** … is if it was first emitted from her furnace." *Id*. (emphasis added). The court also explained "the **requisite movement** clearly occurred because the carbon monoxide at issue accumulated only after being **discharged** from [plaintiff's] furnace." *Id*. (emphasis added).

In other circumstances, however, Texas courts have found that where the requisite movement is not alleged in the underlying pleadings, the Total Pollution Exclusion does not apply. For example, in *Clarendon America Insurance Co. v. Bay, Inc.*, 10 F. Supp. 2d 736, 744 (S.D. Tex. 1998), a case cited by Canal, the court determined first, that there was a latent ambiguity in the exclusion where the court was unable to discern from the pleadings whether the exposure was a result of "discharge, dispersal, seepage, migration, release or escape" of the pollutants. *Id*. Because the court could not determine from the underlying pleadings whether the bodily injury was caused while the pollutants were in their intended container or location, the pollution exclusion did not apply. The court noted that if the pollutants were "in the cement's intended container or location," the "resulting injuries did not stem from the 'discharge, dispersal, seepage, migration, release or escape of pollutants.'" *Id*. It is undisputed that there are no allegations in the Underlying Suit that the gasoline was not in its intended container or location, so Canal cannot argue that the Underlying Suit alleges an emission by an enumerated mechanism.

Similarly, in *Burlington Insurance Co. v. JC Instride, Inc*., 30 F. Supp. 3d 587 (S.D. Tex. 2014), the court ruled that the insurance company was obligated to defend the policyholder where the underlying pleadings did not allege that the pollutant had been dispersed or emitted.[2]

---

[2] Like the Underlying Suit, the plaintiff in *Burlington* brought premises liability and failure to warn claims for bodily injury caused by the exposure.

In *Burlington*, the underlying plaintiff entered into a mud tank filled with "caustic materials" without proper safety equipment resulting in bodily injury. *Id*. at 590. The underlying pleadings alleged that (1) the mud tanks contained caustic materials, (2) the plaintiff was wading in the mud tanks, and (3) the wading caused the plaintiff to be exposed to the caustic materials. *Id*. The court stated that "[t]o disperse a pollutant means to break it up and scatter it about." *Id*. at 596. The pleadings, however, did not "allege that the caustic component of or in the mud was dispersed or emitted." *Id.* Nor did the pleadings allege how the caustic materials ended up in the mud tank. According to the court, the underlying pleadings:

> cannot be read to allege that [plaintiff's] injury necessarily resulted from "dispersal" of caustic materials (*i.e.*, a "pollutant"). [The insurance company's] argument that [plaintiff's] allegations make clear that the caustic materials would not have injured [plaintiff] unless they were dispersed throughout the mud in which he was wading is a gloss on the Petition not rooted in [plaintiff's] actual allegations and are rejected.

*Id.* The court then ruled that the insurance company did not meet its burden to show the applicability of the pollution exclusion because there was no indication in the underlying complaint that the "caustic materials broke up and scattered" onto the plaintiff's clothing or person prior to his injuries. The court also distinguished cases cited by Canal such as *Nautilus* and *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 647 (5th Cir. 2008) because unlike those cases, the plaintiff in *Burlington* did not allege an emission through one of the policies' enumerated mechanisms. *Id.* at 597-98. Since the plaintiff's allegations potentially supported a covered claim, the insurance company was obligated to defend. *Id*. at 598.

Like the plaintiff in *Burlington*, the Underlying Suit alleges that COP's gasoline contained benzene, that Mr. Webb loaded gasoline while working as a gasoline truck driver, and Mr. Webb was exposed to benzene contained in the gasoline while working as a gasoline truck driver. (*See* Ex. C to Oglesby Aff. at PSXCAN00000133 [Dkt. No. 63-5].) The Underlying Suit does not

allege that either the gasoline or the benzene in the gasoline was ever broken up or scattered, *i.e.*, that the gasoline or benzene within the gasoline was emitted through one of the policies' enumerated mechanisms. *Burlington* is directly on point here and is dispositive as to the Total Pollution Exclusion in the CGL Policies.

Indeed, it is also dispositive as to the standard pollution exclusion in the Auto Policies since that pollution exclusion also requires a "discharge, dispersal, release or escape" in order to apply, and Canal does not offer any, much less reasonable, interpretation negating coverage under the standard pollution exclusion. *Burlington*, 30 F. Supp. 3d at 590 ("If the insured proffers a reasonable interpretation of the exclusion favorable to coverage, a reviewing court *must* accept it, even if the insurer proffers an interpretation negating coverage that is more reasonable or a more accurate reflections of the parties intent.") (internal citations and quotations omitted). Since there are absolutely no allegations in the Underlying Suit of "discharge, dispersal, release or escape" of a pollutant, and since the court must construe the allegations of the Underlying Suit liberally while construing the exclusions narrowly, COP is entitled to a defense despite the existence of the pollutions exclusions in the CGL Policies and Auto Policies. *Id.* ("In assessing whether the allegations in a complaint fall within the scope of the exclusion, a reviewing court must interpret the complaint liberally and construe the exclusion narrowly, resolving any ambiguity in favor of the insured.").

    **C.    COP Has Demonstrated That It is Entitled to Coverage Under the Canal Policies.[3]**

Canal does not dispute that the Underlying Suit is a "suit" alleging "bodily injury" during policy periods of the CGL Policies and the Auto Policies. Contrary to its earlier agreements, it

---

[3] In addition to the arguments set forth below, *see* COP Brief in Support of Motion for Partial Summary Judgment at 13-16 [Dkt. No. 63].

disputes COP's status as an additional insured under the CGL Policies and Auto Policies, and asserts that the Underlying Suit does not fall within the insuring agreement of the Auto Policies. While the Court does not even need to address these points since Canal admitted before and during this litigation that COP is entitled to a defense as an additional insured, COP hereby addresses these points out of an abundance of caution. In short, Canal's arguments simply miss the point.

> 1. The Allegations in the Underlying Suit Fall Within the Insuring Agreement of the CGL Policies and COP is an Additional Insured Based on Those Allegations.

Canal has admitted (in its July 10, 2019 reservation of rights letter and by failing to present any contrary facts or law in its Cross-Motion) that the allegations in the Underlying Suit fall within the CGL Policies' insuring agreement. It only argues that COP is not an additional insured under those policies (something it also previously conceded). However, the eight corners of the CGL Policies and Underlying Suit demonstrate that for purposes of the duty to defend, COP is an additional insured entitled to a defense for the Underlying Suit.

The CGL Policies "arising out of" language should be broadly construed under the allegations in the Underlying Suit. Specifically, the additional insured endorsement in the CGL Policies requires that "such person or organization is an insured only with respect to liability arising out of your ongoing operations performed for that insured, but excluding any negligent acts committed by such insured." (*See* Ex. O to Oglesby Aff. at PSXCAN00010442, PSXCAN00010560, PSXCAN00011040 [Dkt. Nos. 63-1, 63-3, and 63-4].) This endorsement has three prongs: (1) actual or alleged liability, (2) arising out of the Coastal's on-going operations performed for the additional insured, but (3) excluding negligent acts of the additional insured. The Underlying Suit alleges that as a gasoline truck driver responsible for loading gasoline at terminals owned by COP and other defendants, Mr. Webb was exposed to gasoline containing benzene, and exposure through the course of his work was the cause of bodily injury. (*See* Ex. C

to Oglesby Aff. at PSXCAN00000133 [Dkt. No. 63-5].) "Arising out of" is broadly construed to require only a causal connection between injury and performance of work. *See McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 729 (Tex. App. 1999) (injury to subcontractor's employee while performing subcontractors' work for general contractor "arose out of" subcontractor's operation); *see also*, COP Motion for Summary Judgment at 14 [Dkt. No. 63]. Based on these allegations, the first two prongs are satisfied and Canal does not dispute otherwise.

As to the third prong, Canal argues that the Underlying Suit's allegations about the Defendants' negligence prevents COP from qualifying as an additional insured. However, the allegations in the Underlying Suit must be liberally construed in COP's favor. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008). Canal also bears the burden to show this exclusion completely disqualifies COP as an additional insured. *Burlington Ins. Co.*, 30 F. Supp. 3d at 593 (S.D. Tex. 2014); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000).

The Underlying Suit alleges that the negligent acts occurred over a period of thirty-one years at seven different locations owned by at least eighteen different defendants. It does not allege with any specificity the time periods that Mr. Webb worked at any specific location or the time periods that the defendants may have owned or operated the locations. Additionally, there are no allegations of negligence directed exclusively at COP. Since the allegations are against all defendants over the entire time period at all the locations, the negligent acts may very well have been committed by parties other than COP. Because it is impossible to determine with certainty whether "any negligent acts were committed by [COP]," and because the complaint must be liberally construed to include negligent acts of parties other than COP, Canal has a duty to defend COP as an additional insured. *Millis Dev. & Constr., Inc. v. Am. First Lloyd's Ins. Co.*, 809 F.

Supp. 2d 616, 629 (S.D. Tex. 2011) (The court may "draw inferences from the petition that may lead to a finding of coverage.")

> 2. Likewise, the Allegations in the Underlying Suit Fall Within The Auto Policies' Insuring Agreement and COP is an Additional Insured Under Those Policies As Well.

COP's case is even more compelling under the Auto Policies since the plain language of the insuring agreement and the additional insured endorsement clearly provide coverage to COP.

> a) The Allegations in the Underlying Suit Fall Within the Auto Policies' Insuring Agreement.

Canal cites to *Mid-Century Insurance Co. of Texas v. Lindsey*, 997 S.W.2d 153 (Tex. 1999) for the purported test to determine if the injury in the Underlying Suit arises out of "ownership, maintenance or use" of Coastal's trucks. The *Mid-Century* court did not regard this test as dispositive and neither should this Court. *Mid-Century*, 997 S.W.2d at 157 (Discussing the test as set forth in treatises: "We agree the factors, though unavoidably abstract, are helpful in focusing the analysis, although we neither read the treatises as proposing an absolute test, nor do we regard the factors as such."). Instead, the *Mid-Century* court held that "[f]or liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle. The use required is of the vehicle *qua* vehicle, rather than simply as an article of property." *Id*. at 157. Thus, coverage is afforded "when the injury-producing act and its purposes are an integral part of the use of the vehicle…." *Id*. at 161.

The Auto Policies provide that "use" includes "loading and unloading" during Coastal's trucking operations. (*See* Ex. N to Oglesby Aff. at PSXCAN00010691, PSXCAN00010799, and PSXCAN00010860 [Dkt. Nos. 63-16, 63-18, and 63-19].) The Underlying Suit plainly alleges that Mr. Webb was injured through the course of his work loading gasoline as a gasoline truck

driver. Under the *Mid-Century* test, these allegations fall squarely within the insuring agreement of the Auto Policies.

                                b)        COP is an Additional Insured Under the Auto Policies' Additional Insured Endorsement.

The additional insured endorsement in the Auto Policies provides that the insurance applies as additional insured coverage "to any company with which the named insured has a contract in writing prior to an occurrence, agreeing to provide protection for *liability claims arising out of the named insured's operation of vehicles insured hereunder.*" *Id.* at PSXCAN00010702, PSXCAN00010815, and PSXCAN00010885. The three prongs of this endorsement are: (1) a contract in writing prior to an occurrence, (2) agreeing to provide protection for liability claims, (3) arising out of Coastal's operation of vehicles insured under the Auto Policies. Canal has admitted the facts pertaining to the first two prongs — COP and Coastal had a written contract in which Coastal agreed to provide COP protection for liability claims — so the first two prongs are satisfied. As to the third, Canal argues that the liability did not arise out of Coastal's operation of its insured vehicles.

As noted above, Canal does not dispute that the "arising out of" language is broadly construed under Texas and Arizona law. Instead, Canal cites to *Coastal Transport Co. v. Crown Central Petroleum Corp.*, 20 S.W.3d 119, 125 (Tex. App. 2000) for the proposition that the negligent maintenance and operation of a terminal loading facility is not negligent use and operation of Coastal's truck. See Canal Br. at 17 [Dkt. No. 67]. The cited case is completely inapplicable because the policy language at issue in that case did not include the Auto Policies' language of "loading and unloading" of the vehicle within the definition of "use." The *Crown* Court explicitly distinguished from its holding cases in which the policy language included "loading and unloading" in the definition of use. *See Coastal Transp. Co. v. Crown Cent*

*Petroleum Corp.* 20 S.W.3d at 124-25 (distinguishing *Travelers Ins. Co. v. Employers Cas. Co.*, 380 S.W.2d 610 (Tex. 1964) "Neither case, however, is applicable here. The policies in those cases specifically define 'use' to include, 'loading and unloading.'").

Here, the Auto Policies provide coverage for bodily injury caused by an occurrence "and arising out of the ownership, maintenance or use, *including loading and unloading*" for the purposes stated in the declarations. (*See* Ex. N to Oglesby Aff. at PSXCAN00010691, PSXCAN00010799, and PSXCAN00010860 [Dkt. Nos. 63-16, 63-18, and 63-19].) The Underlying Suit alleges that Mr. Webb was loading gasoline in the course of his employment for Coastal. Canal's argument as to the third prong has to be rejected.

### D. Canal Admits That A Failure to Defend COP is a Violation of the Texas Prompt Payment of Claims Act.

Canal admits that COP is entitled to relief under the Texas Prompt Payment of Claims Act ("PPCA") if Canal actually has a duty to defend. Canal Br. at 18 [Dkt. No. 67]. Since COP established in its Motion for Partial Summary Judgment and in this Opposition that: (1) it made a claim under the CGL Policies and Auto Policies; (2) Canal was liable for the claim; and (3) Canal failed to follow one or more sections of the PPCA, COP is entitled to its defense costs in the Underlying Suit, interest and its attorneys' fees in this suit. *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 450 5th Cir. 2018); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 559 (5th Cir. 2004) ("[a] breach of the duty to defend entitles the insured to the expenses it incurred in defending the suit, including reasonable attorney's fees and court costs"); *see also Evanston Ins. Co. v. Gene by Gene, Ltd.*, 155 F. Supp. 3d 706, 713-714 (S.D. Tex. 2016).

### III. CONCLUSION

Because Canal owes COP a defense in the Underlying Suit and breached that duty, Canal's Cross-Motion should be denied, and Phillips 66's Motion for Partial Summary Judgment should

be granted.  Phillips 66 requests the Court enter partial summary judgment in its favor on Count 2 for breach of contract (the duty to defend) and Count 4 for violation of PPCA of its Counterclaim and enter judgment in Phillips 66's favor on Counts 1 and 2 of Canal's Complaint.

Respectfully submitted,

**REED SMITH LLP**

Dated:  March 20, 2020

*s/John N. Ellison*
John N. Ellison (admitted *pro hac vice*)
PA Bar No. 51098
Shruti D. Engstrom (admitted *pro hac vice*)
PA Bar No. 82937
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(T):  215-851-8100
(F):  215-851-1420
jellison@reedsmith.com
sengstrom@reedsmith.com

Michael H. Bernick
State Bar No:  24078227
811 Main Street, Suite 1700
Houston, TX 77002-6110
(T): 713-469-3834
(F): 713-469-3899
mbernick@reedsmith.com

ATTORNEYS FOR DEFENDANT/
COUNTER-PLAINTIFF/
PHILLIPS 66 COMPANY

## CERTIFICATE OF SERVICE

       I hereby certify that on this date, a true and copy of Phillips 66 Company's Opposition to Canal Indemnity Company's Cross-Motion for Partial Summary Judgment was electronically filed at my direction through the CM/ECF system, which will automatically serve a Notice of Electronic Filing on all counsel of record.

Dated: March 20, 2020                          *s/John N. Ellison*

                                                      ATTORNEYS FOR DEFENDANT/
                                                      COUNTER-PLAINTIFF/
                                                      PHILLIPS 66 COMPANY