**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CANAL INDEMNITY COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No.: 4:19-cv-02945 |
| COASTAL TRANSPORT CO., INC., et al. | § § § | |
| Defendants. | § § | |

**CANAL INDEMNITY COMPANY'S REPLY IN SUPPORT OF
ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Canal Indemnity Company submits this Reply in Support of its Cross Motion for Partial Summary Judgment. Doc. 67.

**A.    Canal Did Not Admit It Breached Any Contractual Duty**

Phillips' argument that Canal admitted it breached the duty to defend ignores the decisive fact that the e-mail and letter sent by Canal to Phillips both included an express reservation of rights. Doc. 63-11 at 2 ("Canal accepts [Conoco's] additional insured tender and agrees to defend it pursuant to a reservation of rights"); Doc. 63-15 at 2 ("Canal agrees to defend Conoco pursuant to a complete reservation of all rights available under the policies and the applicable law"). The Texas Supreme Court has recognized that an insurer's reservation of rights is notification to the insured that the insurer will defend the insured but the insurer is not waiving any defenses it may have under the policy and that a reservation of rights protects an insurer from a subsequent attack on its coverage position on waiver or estoppel grounds. *Tex. Assoc. of Counties County Government Risk Mgmt. Pool v. Matagorda County*, 52 S.W.3d 128, 133 (Tex. 2000).

An insurer who assumes the defense of an insured does not waive or lose the ability to challenge coverage under the policy. *See, e.g.*, *Ulico Casualty Co. v. Allen*, 262 S.W.3d 773 (Tex.

1

2008) ("Under some circumstances, insurers who take control of their insured's defense *without a valid reservation of rights* or non-waiver agreement can and should be prevented from denying benefits that would have been payable had the claim been covered" (emphasis added)); *Emscor Mfg., Inc. v. All. Ins. Grp.*, 879 S.W.2d 894, 904 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (loss of insurer's right to contest coverage may arise when a primary carrier fails to issue a timely reservation of rights); *Warren v. American Nat'l Ins. Co.*, 826 S.W.2d 185, 188–89 (Tex. App. - Fort Worth 1992, writ denied) (excess carrier, who offered to defend insured's employee subject to reservation of rights, did not waive, or was not estopped, from asserting policy defenses). Canal did not admit coverage or waive its right to contest coverage.

## B. The Underlying Petition Does Not Create a Duty to Defend

Phillips asserts that the pollution exclusion clauses ("PEC") in the respective policies do not preclude a duty to defend because (1) the clause is not enforceable under Arizona law, (2) gasoline is not a pollutant, and (3) the underlying petition does not specifically allege that the exposure claimed by Mr. Webb was one of the "specified mechanisms" listed in the PEC. Canal addressed the application of the eight corners rule to the underlying petition in this case and will not repeat that discussion. The coverage issues in this case are properly controlled by Texas law[1] but, even if Arizona law applied, the claims would be outside the scope of coverage.

---

[1] Phillips' belated reliance on Arizona law is contrary to its earlier representation to the Court that the laws of Texas and Arizona do not conflict on coverage issues. Doc. 63 at 10. Phillips acknowledges that Texas is the place of policy contracting and negotiation as well as the and the domicile of Coastal and Phillips. *Id*. Article 21.42 of the Texas Insurance Code requires that a policy issued to a citizen or inhabitant of Texas be construed under Texas law. Beyond the statute, Texas choice-of-law principles would apply Texas law to a policy issued in Texas to a company located in Texas and the insured has operations in multiple states, Texas law will control both contract and tort claims against the insurer. *See, e.g., Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 293-97 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

2

The Arizona Supreme Court has never addressed the scope of the PEC, but federal courts applying Arizona law have generally relied on *Keggi v. Northbrook Property & Casualty Insurance Company*, 199 Ariz. 43, 13 P.3d 785 (Ariz. App. 2000), to interpret the PEC as applying only in cases of a "traditional environmental pollution" event. *See Nat'l Fire Ins. Co. v. James River Ins.*, 162 F.Supp.3d 898, n.13 (D. Ariz. 2016). Under that interpretation, a single or limited release of a substance in a residential or commercial setting is outside of the PEC. *Id*. The present case, however, is significantly different: Mr. Webb has alleged a large number of exposures to a common harmful substance at multiple industrial locations over 31 years.

The argument by Phillips that gasoline is not a pollutant is overly simplistic and incorrect. Gasoline stored in a tank or a gasoline pump or the gas tank of a car is not a pollutant as long as it remains in the sealed storage vessel but, once it gets into the environment, it contains substances that are capable of causing severe damage to the human body. That is why most federal courts and state supreme courts have found that gasoline that has escaped from a storage container is a pollutant under the standard PEC.[2] One Missouri intermediate court of appeals held that whether

---

[2] *See, e.g., Aetna Cas. & Sur. Co. v. Dow Chemical Co.*, 933 F. Supp. 675, 683 (E.D. Mich. 1996) ("the bulk of the case authority … holds that oil, gasoline, and other petroleum products are toxic by nature and therefore they constitute a contaminant when released into the environment"); *Performance Trans., Inc. v. General Star Indem. Co.*, 419 F.Supp.3d 199 (D. Mass. 2019); *Whittier Properties, Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008) ("the better-reasoned approach is the one . . . adopted by the majority of courts that have reviewed a pollution exclusion identical or markedly similar to the clause in the ANIC policies. We hold that there is no ambiguity because, even though gasoline that is in the UST is a "product" for purposes of other parts of the insurance policy, when the gasoline escapes or reaches a location where it is no longer a useful product it is fairly considered a pollutant"); *Federated Mut. Ins. Co. v. Abston Petroleum, Inc*., 967 So.2d 705, 712–13 (Ala. 2007) ("We conclude that the better-reasoned approach is that applied by the majority of courts . . . that gasoline, although not a pollutant when properly used for the purposes for which it is intended, is clearly a pollutant when it leaks into the soil from underground lines or tanks or when fumes from such a leak are so dangerous that a business must be closed, as was the case here. The simple fact that gasoline serves a vital purpose when released from a properly constructed tank into the confines of an internal combustion engine does not permit us to blink reality and overlook the deleterious consequences that occur when gasoline is introduced

3

gasoline was a pollutant created a question of ambiguity, but the Eighth Circuit has noted that the decision is not persuasive because it "has been almost uniformly rejected by appellate courts in other jurisdictions, and has not since been cited or referred to favorably by the Supreme Court of Missouri."[3]

Phillips argues that the PECs in the policies in this case would not apply under Texas law, relying on *Clarendon America Insurance Company v. Bay, Inc.*, 10 F.Supp.2d 736 (S.D. Tex. 1998) and *Burlington Insurance Company v. JC Instride, Inc.*, 30 F.Supp.3d 587 (S.D. Tex. 2014). The allegations in the underlying suit in *Clarendon* are completely different from this case, and in *Burlington* the plaintiff specifically alleged that he came in direct physical contact with pollutants because his job was to get inside and wade in toxic substances as part of his job. Neither decision provides any guidance here.

In his petition, Mr. Webb alleged that he "was exposed to benzene through inhalation and dermal absorption of the defendants' gasoline and that he contracted his fatal disease as a "direct and proximate result of his exposure to benzene." Doc. 63-5, p. 12. Unless the Court construes these allegations to mean that Mr. Webb's job required him to immerse himself in the gasoline in his vehicle or that he was drinking gasoline directly from his vehicle, the allegations mean that the benzene/gasoline was released into the environment and went on and into Mr. Webb's body. The only reasonable reading of the allegations is that there was necessarily some "discharge, dispersal, seepage, migration, release or escape" of benzene from the vehicle that injured Mr. Webb.

---

into the soil or when its fumes escape into the atmosphere"); *Montana Petroleum Tank Release Compensation Board v. Crumleys, Inc*., 174 P.3d 948, 958 (Mont. 2008) ("In sum, our survey of case law concerning the standard absolute pollution-exclusion clause reveals that a clear majority of states have held that motor fuels are included in the clause's definition of 'pollutant'").

[3] *Doe Run Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 875 (8th Cir. 2013), *criticizing Hocker Oil Co. v. Barker–Phillips–Jackson, Inc.*, 997 S.W.2d 510 (Mo. Ct. App. 1999).

Courts may "not read facts into the pleadings . . . or imagine factual scenarios that might trigger coverage." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 655 (Tex. 2009) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (per curiam)). There is only one reasonable reading of the allegations made by Mr. Webb: that there was transmission of benzene from the gasoline in his truck into his body through inhalation and dermal absorption. Once that happened, the benzene was no longer in its original location, and that is sufficient to invoke the pollution exclusion clauses in the policies and relieve Canal of any duty to defend Phillips.

For the foregoing reasons, Canal asks that its Cross Motion for Partial Summary Judgment [Doc. 67] be granted and Phillips' Motion for Summary Judgment [Doc. 63] be denied.

Respectfully submitted,

**THOMPSON, COE, COUSINS & IRONS, LLP**

By: */s/ Brian S. Martin*
BRIAN S. MARTIN, ATTORNEY-IN-CHARGE
BAR NO. 13055350
BMARTIN@THOMPSONCOE.COM
RODRIGO GARCIA, JR.
BAR NO. 00793778
DGARCIA@THOMPSONCOE.COM
CYRUS W. HARALSON
TEXAS STATE BAR NO. 24065371
FEDERAL BAR NO. 1542111
CHARALSON@THOMPSONCOE.COM
ONE RIVERWAY, SUITE 1400
HOUSTON, TEXAS 77056
TELEPHONE: (713) 403-8210
TELECOPY: (713) 403-8299

**COUNSEL FOR PLAINTIFF CANAL INDEMNITY COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record through the Court's electronic filing service on March 27, 2020.

           */s/ Brian S. Martin*
           Brian S. Martin