United States District Court
Southern District of Texas
**ENTERED**
September 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| CANAL INDEMNITY COMPANY, | § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:19-CV-2945 |
| CALJET, II, LLC, *et al*, | § § § | |
| Defendants. | | |

## ORDER

Before the Court are Defendant Phillips 66 Company's Motion for Partial Summary Judgment ("Defendant's Motion") (Doc. #63), Plaintiff Canal Indemnity Company's Response and Cross Motion for Partial Summary Judgment ("Plaintiff's Motion") (Doc. #67), Defendant's Response (Doc. #70), and Plaintiff's Reply (Doc. #71). Having reviewed the parties' arguments and applicable legal authority, the Court grants Defendant's Motion and denies Plaintiff's Motion.

### I. Background

This is an insurance coverage dispute. In short, Defendant Phillips 66 Company ("Defendant" or "Phillips 66") argues that Plaintiff Canal Indemnity Company ("Plaintiff" or "Canal") as insurer has breached its duty to defend Defendant as an additional insured in an underlying lawsuit. Plaintiff contests Defendant's allegations and contends that any insurance policies issued by Plaintiff to a third party do not cover Defendant.

#### a. The Auto Policies

Over multiple years, Plaintiff Canal issued auto liability policies to Defendant Coastal Transport Company, Inc. ("Coastal"), a company in the business of transporting "GAS, DIESEL,

LUBE OILS, CHEMICALS, [and] ASPHALT." *See* Doc. #63, Ex. N-1, Ex. N-3, and Ex. N-4. Relevant to this Order are Policy No. L037755 for policy period March 15, 2005, to May 1, 2006; Policy No. L045542 for policy period May 1, 2006, to May 1, 2007; and Policy No. L060240 for policy period May 1, 2007, to May 1, 2008 (collectively, the "Auto Policies"). *Id.* In part, the Auto Policies provide the following:

> [Canal] will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of **bodily injury or property damage** to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or of a **temporary substitute automobile**, and [Canal] shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury or property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but [Canal] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

*Id.* § A.I (emphasis in original). Additionally, the Auto Policies each contain the following Additional Insured Endorsement:

> It is hereby understood and agreed, that not withstanding the contractual liability Exclusion A of the policy to which this endorsement is attached, such insurance as is afforded herein shall apply as additional insured coverage to any company with which the named insured has a contract in writing prior to an occurrence, agreeing to provide protection for liability claims arising out of the named insured's operation of vehicles insured hereunder. . . .

*Id.* at Form 2-1-E. Further, the Auto Policies each contain the following Pollution Exclusion:

> This insurance does not . . . apply to bodily injury or property damage arising or [sic] of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritant, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water[.] But this exclusions does not apply if such discharge, dispersal, release or escape is sudden and accidental.

*Id.*

     **b. The CGL Policies**

Plaintiff Canal also issued multiple commercial general liability policies to Coastal. Relevant to this Order are Policy No. CGL014511 for policy period March 15, 2005, to March 15, 2006; Policy No. CGL014515 for policy period May 1, 2006, to May 1, 2007; and Policy No. PDA00248901 for policy period May 1, 2007, to May 1, 2008 (collectively, the "CGL Policies"). Doc. #63, Ex. O-1, Ex. O-3, and Ex. O-4. In part, the CGL Policies provide the following:

> [Canal] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Canal] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Canal] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

*Id.* § I.1.a. Additionally, the CGL policies each contain the following Additional Insured Endorsement:

> **Who is an Insured** is amended to include as an insured any person or organization for whom [Coastal is] performing operations when [Coastal] and such person or organization have agreed in writing in a contract or agreement, prior to an occurrence, that such person or organization be added as an additional insured on [Coastal's] policy. Such person or organization is an insured only with respect to liability arising out of [Coastal's] ongoing operations performed for that insured, but excluding any negligent acts committed by such insured. . . .

*Id.* at Form GL 705 (emphasis in original). Further, CGL Policy No. CGL014511 and CGL Policy No. CGL014515 each contain the following Pollution Exclusion:

> It is agreed that this insurance does not apply to:
>
> 1. "Bodily injury," "property damage," "personal and advertising injury," or medical expenses which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, irritants, or hazardous substances at any time.
>
> . . .
>
> Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemical, and

3

> waste. In addition to pollutants to be disposed of, waste also includes materials to be recycled, reconditioned, or reclaimed.

Doc. #63, Ex. O-1 at Form GL 699(a) and Ex. O-3 at Form GL 699(a). CGL Policy No. PDA00248901 also contains a similar Pollution Exclusion:

> This insurance does not apply to:
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

Doc. #63, Ex. O-4 at CG 21 49 09 99 ("'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.").

### c. The Master Motor Carrier Services Agreement

From 1997 to 2008, Coastal entered into several iterations of a Master Motor Carrier Services Agreement (the "MSA") with ConocoPhillips Company ("Conoco"). It is undisputed that Defendant Phillips 66 Company is the successor-in-interest to Conoco. Importantly, the 2005 MSA required Coastal "to procure and maintain at its expense" during the term of the MSA various types of insurances, including "General Public Liability Insurance" and "Automobile Liability Insurance." Doc. #63, Ex. A § 11.01. Additionally, pursuant to the MSA, the policies for those insurances were required to show Conoco "as an additional insured." *Id.* § 11.02.

### d. The Underlying Lawsuit

On March 6, 2018, Mary Major—in her individual capacity and as the representative of the Estate of Elwyn Webb—and Mr. Webb's son Joshua Webb initiated a lawsuit in the Superior Court of Arizona, Maricopa County, under Civil Action No. CV2018-003217 (the "Underlying Lawsuit"). Doc. #63, Ex. C. Conoco is among the defendants in that action.

The complaint in the Underlying Lawsuit alleges that, "[f]rom approximately 1985 to 2016, [Mr. Webb] worked as a gasoline truck driver for Calzona Tankways and later Coastal Transport Company, Inc." *Id.* ¶ 21. "As a gasoline truck driver, [Mr. Webb] loaded benzene-containing gasoline" at various "terminals and loading racks owned and/or operated by" the defendants, including Conoco. *Id.* ¶ 22. "In the course of his work at the defendants' premises, [Mr. Webb] was exposed to benzene through inhalation and dermal absorption of the defendants' gasoline. As a direct and proximate result of his exposure to benzene, [Mr. Webb] contracted Myelodysplastic Syndrome (MDS), a benzene-induced blood and bone marrow cancer." *Id.* ¶¶ 24–25. He was diagnosed with MDS in January 2016 and died on March 19, 2016. *Id.* ¶ 26. The plaintiffs in the Underlying Lawsuit assert two negligence claims arising from premises liability and a failure to warn. *Id.* ¶¶ 27–43.

### e. Procedural History

After being served with the Underlying Lawsuit, Phillips 66 as the successor-in-interest to Conoco tendered notice to Coastal pursuant to the MSA by letter dated August 23, 2018, seeking defense and indemnity. Doc. #63, Ex. D. In a letter dated November 14, 2018, Canal acknowledged receipt of a copy of Phillips 66's tender to Coastal. *Id.*, Ex. E.

Subsequently, Canal denied Phillips 66 coverage under both the Auto Policies and CGL Policies and initiated this action, seeking declarations that Plaintiff Canal does not owe a duty to Defendant Phillips 66 to defend the Underlying Lawsuit or indemnify under either the Auto Policies or CGL Policies. Doc. #1; Doc. #63, Ex. F. Now, both parties move for partial summary judgment on Plaintiff's duty to defend under the Auto Policies and CGL Policies. Doc. #63; Doc. #67. Additionally, Defendant Phillips 66 moves for partial summary judgment on its Texas Prompt Payment of Claims Act counterclaim.

## II. Legal Standards

### a. Motion for Summary Judgment, Federal Rule of Civil Procedure 56

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. [Courts must construe] all facts and inferences in the light most favorable to the nonmoving party. But summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (internal citations omitted).

### b. Duty to Defend and the Eight-Corners Rule[1]

In the Fifth Circuit, "courts routinely adjudicate the scope of insurers' duty to defend under Texas law. To this point, both Texas courts and federal courts have consistently applied the eight-corners rule. According to the eight corners rule, the scope of an insurer's duty to defend is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ*, 687 F.3d 676, 682–83 (5th Cir. 2012) (internal citation omitted). Furthermore, "[t]he scope of the duty to defend is interpreted broadly: Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612–13 (5th Cir. 2012) (internal

---

[1] Because Plaintiff's briefing applies Texas law and Defendant's briefing posits that the laws of Texas and Arizona do not conflict within this context, this Order applies Texas law.

citations omitted). "In assessing whether the allegations in a complaint fall within the scope of an exclusion, a reviewing court must interpret the complaint liberally and construe the exclusion narrowly, resolving any ambiguity in favor of the insured. If the insured proffers a reasonable interpretation of the exclusion favorable to coverage, a reviewing court *must* accept it, even if the insurer proffers an interpretation negating coverage that is more reasonable or a more accurate reflection of the parties' intent." *City of Coll. Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 337–38 (5th Cir. 2013) (emphasis in original) (internal citation omitted).

Under Texas law, courts are to "construe insurance contracts under the same rules applicable to contracts generally. [The] primary goal, therefore, is to give effect to the written expression of the parties' intent." *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)) (cleaned up). "Under Texas rules of contractual interpretation, if an insurance contract is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written. If, however, a contract is susceptible to more than one reasonable interpretation, a court will resolve any ambiguity in favor of coverage." *Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co., Inc.*, 112 F.3d 184, 186 (5th Cir. 1997) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984)) (cleaned up).

### c. Texas Prompt Payment of Claims Act (the "Act")

"Under the [Act], an insurer that is liable for a claim under an insurance policy and fails to promptly respond to, or pay, the claim in accordance with the statute becomes liable to the policy holder or beneficiary for the amount of the claim, as well as an 18 percent per annum statutory penalty and reasonable attorney's fees." *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 450 (5th Cir. 2018) (citing Tex. Ins. Code §§ 542.051–.061) (cleaned up). "To recover

under the [Act], an insured must establish that: (1) a claim was made under an insurance policy, (2) the insurer is liable for the claim, and (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim. Defense costs incurred by an insured as a result of an insurer's breach of its duty to defend are a 'claim' within the meaning of the [Act]." *Id.* (internal citations omitted).

### III. Analysis

#### a. The Underlying Lawsuit triggers the Auto Policies and the CGL Policies.

The complaint in the Underlying Lawsuit seeks to recover damages on behalf of Mr. Webb concerning "benzene-induced blood and bone marrow cancer" allegedly caused by "expos[ure] to benzene through inhalation and dermal absorption of . . . gasoline" during the course of his employment for Coastal as a gasoline truck driver. Doc. #63, Ex. C ¶¶ 21–25. As a truck driver, Mr. Webb "loaded benzene-containing gasoline" at various terminals owned by parties such as Defendant Phillips 66. *Id.* ¶ 22.

In the 2005 to 2008 Auto Policies, Plaintiff Canal agrees to defend any insured in a suit seeking damages for bodily injury caused by an occurrence and arising out of the ownership, maintenance, or use—including loading and unloading—of an owned automobile. *See* Auto Policies § A.I ("bodily injury" is defined to include "sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom"). Therefore, giving full effect to the written language, the Court finds that the Auto Policies cover "loading and unloading." Here, in the Underlying Lawsuit against Phillips 66 and others, the plaintiffs seek to recover damages for bodily injury suffered by Mr. Webb, caused in part by the loading of gasoline during his employment as a gasoline truck driver. Though the complaint does not specify which years Mr. Webb worked for Coastal, it alleges that he worked as a truck driver

8

from 1985 to 2016—a period that captures the terms of the 2005 to 2008 Auto Policies. *Id.* ¶ 21. Accordingly, because the allegations in the complaint "potentially" fall within the coverage of the insurance policies, the Court finds that the Underlying Lawsuit triggers the Auto Policies. *Nat'l Cas. Co.*, 669 F.3d at 612–13.

Similarly, in the 2005 to 2008 CGL Policies, Plaintiff Canal agrees to defend any insured in a suit seeking damages for bodily injury caused by an occurrence during the policy period. *See* CGL Policies § I.1.a ("bodily injury" is defined to include "sickness or disease sustained by a person, including death resulting from any of these at any time"). Here, the Underlying Lawsuit seeks to recover damages for bodily injury suffered by Mr. Webb during the course of his employment within the policy periods. Doc. #63, Ex. C ¶¶ 21–25. Accordingly, because the allegations in the complaint "potentially" fall within the coverage of the insurance policies, the Court finds that the Underlying Lawsuit triggers the CGL Policies. *Nat'l Cas. Co.*, 669 F.3d at 612–13.

   **b. Defendant Phillips 66 qualifies as an Additional Insured under the Auto Policies and CGL Policies.**

The Auto Policies and the CGL Policies provide additional insured coverage to any company that has a contract with Coastal in writing prior to an occurrence and where the contract requires liability protection. Though Plaintiff Canal acknowledges that the MSA between Coastal and Defendant Phillips 66 constitutes such a contract, Plaintiff nonetheless argues that none of the policies cover Defendant as an Additional Insured for two reasons.

First, Plaintiff contends that Defendant does not qualify as an Additional Insured under the Auto Policies because they limit additional insured coverage to claims arising out of Coastal's "operation of vehicles." Doc. #67 at 16–17. To better understand what the parties intended by the term "operation," analyzing other portions of the Auto Policies that discuss liability coverage in

9

relation to automobiles is helpful.  Particularly, when discussing the circumstances covered by the Auto Policies when bodily injury results, the Policies include occurrences "arising out of the ownership, maintenance or use, including loading and unloading . . . of an owned automobile or of a temporary substitute automobile."  Auto Policies § A.I.  In other words, the Auto Policies contemplate that Coastal's operation of vehicles could include loading and unloading Coastal's automobiles.  In the Underlying Lawsuit against Phillips 66 and others, the complaint alleges that Mr. Webb suffered bodily injury caused in part by loading gasoline.  Accordingly, because the alleged liability of Phillips 66 arises out of Coastal's operation of vehicles, the Court finds that Phillips 66 qualifies as an Additional Insured under the Auto Policies.

Next, Plaintiff Canal argues that Defendant Phillips 66 does not qualify as an Additional Insured under the CGL Policies because the complaint in the Underlying Lawsuit "does not allege that Coastal did anything to cause Webb's injury or that Phillips' liability is based upon its vicarious liability for Coastal's acts or omissions." Doc. #67 at 16.  Therefore, Plaintiff argues, the exclusion in the CGL Policies concerning the negligent acts of Phillips 66 applies.  However, a closer look at the policy language yields a different analysis.  The CGL Policies provide that an Additional Insured "is an insured only with respect to liability arising out of [Coastal's] ongoing operations performed for that insured, but excluding any negligent acts committed by such insured. . . ."  CGL Policies at Form GL 705.  First, the Underlying Lawsuit's complaint alleges that Mr. Webb suffered bodily injury as result of exposure to benzene in the gasoline he loaded for Coastal's ongoing transportation operations.  Second, the application of the exclusion relies on a finding that Defendant Phillips 66 was in fact negligent.  Because such a finding would be woefully premature and the Court must interpret the exclusion narrowly in favor of coverage, the Court finds that Phillips 66 qualifies as an Additional Insured under the CGL Policies.  *See City of Coll.*

*Station, Tex.*, 735 F.3d at 337–38.

### c. The Pollution Exclusions are inapplicable.

The Auto Policies and CGL Policies both contain Pollution Exclusions that in some form exclude coverage of bodily injury caused by pollutants. *See* Auto Policies (excluding bodily injury arising out of the "discharge, dispersal, release or escape" of pollutants); CGL Policies (excluding bodily injury "which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants"). Plaintiff Canal argues in favor of the application of these exclusions because the complaint in the Underlying Lawsuit alleges that Mr. Webb suffered bodily injury through exposure to benzene, a pollutant. Doc. #67 at 5–12; Doc. #71 at 2–5.

However, every Fifth Circuit case Plaintiff cites in support of its argument involves the alleged movement of a pollutant—a requirement under the exclusions in each case. *See Nautilus Ins. Co.*, 566 F.3d at 453 (underlying complaint alleged that carbon monoxide gas dispersed into an apartment, causing injury); *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 644 (5th Cir. 2008) (underlying complaint alleged that combustible vapors emanating from transported waste material caused diesel engines to race, leading to an explosion and fire); *Columbia Cas. Co. v. Georgia & Florida RailNet, Inc.*, 542 F.3d 106, 107 (5th Cir. 2008) (underlying complaint alleged that high levels of diesel exhaust fumes and hazardous dust accumulated, causing injury); *United Nat. Ins. Co. v. Hydro Tank, Inc.*, 525 F.3d 400, 401 (5th Cir. 2008) (underlying complaint alleged that toxic levels of hydrogen sulfide gas or other chemicals and vapors spread throughout a tank, causing injury after direct exposure); *Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 93 (5th Cir. 1996) (underlying complaint alleged that pollutants were released during demolition of buildings and as contents were graded into ditches).

Unlike those cases, here, the complaint in the Underlying Lawsuit alleges that Mr. Webb was "exposed to benzene through inhalation and dermal absorption of . . . gasoline." In other words, even if the Court were to assume that benzene is a pollutant in this situation, the bodily injury was allegedly caused by direct exposure to gasoline, not by the discharge, dispersal, seepage, migration, release, or escape of benzene—as required by the Pollution Exclusions. Therefore, the Pollution Exclusions are inapplicable.

Accordingly, because the Auto and CGL Policies cover Defendant Phillips 66 as an Additional Insured in the Underlying Lawsuit with regards to Plaintiff Canal's duty to defend, the Court holds that Plaintiff has a duty to defend Defendant in the Underlying Lawsuit and has breached that duty by denying coverage.

### d. Defendant Phillips 66 prevails on its Texas Prompt Payment of Claims Act counterclaim.

Plaintiff Canal concedes that Defendant Phillips 66 is entitled to relief under the Act if the Court holds that Plaintiff has a duty to defend. Doc. #67 at 18. Now that the Court has held that Plaintiff has this duty, the Court grants summary judgment in favor of Defendant's counterclaim brought under the Act.

### IV. Conclusion

For the foregoing reasons, Defendant Phillips 66's Motion is hereby GRANTED, and Plaintiff Canal's Motion is hereby DENIED.

It is so ORDERED.

September 8, 2020  
Date

_____  
The Honorable Alfred H. Bennett  
United States District Judge