EXHIBIT A
to YOUNG DECL.

Michael B. McTaggart
Arizona Bar No. 030178
michael.mctaggart@nortonrosefulbright.com
Brett J. Young (pro hac vice)
Texas Bar No. 24042203
brett.young@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

COUNSEL FOR DEFENDANT

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

| | |
|---|---|
| MARY MAJOR, individually, and as the representative of THE ESTATE OF ELWYN WEBB; JOSHUA WEBB, <br><br> Plaintiff, <br><br> v. <br><br> SFPP, L.P.; KINDER MORGAN ENERGY PARTNERS, L.P.; KINDER MORGAN G.P., INC.; KINDER MORGAN OPERATING L.P. "D"; CALJET II LLC; SHELL OIL COMPANY; EQUILON ENTERPRISES LLC; CONOCOPHILLIPS COMPANY; ATLANTIC RICHFIELD COMPANY D/B/A ARCO PRODUCTS COMPANY; CIRCLE K TERMINAL LLC; BP PRODUCT NORTH AMERICA; EXXON MOBIL CORPORATION D/B/A MOBIL OIL CORP.; CHEVRON U.S.A. INC.; PRO-PETROLEUM INC.; VALERO MARKETING AND SUPPLY COMPANY; JOHN DOES I-V; AND BLACK CORPORATIONS I-V, <br><br> Defendants. | **No. CV2018-003217** <br><br><br> **DEFENDANT CONOCOPHILLIPS COMPANY'S FIRST SUPPLEMENTAL RULE 26.1 DISCLOSURE STATEMENT** <br><br> **(Assigned to the Honorable Margaret R. Mahoney)** |

EPSXMAJ0000000059

PSXCAN00003085

Pursuant to Rule 26.1 of the Arizona Rules of Civil Procedure, Defendant ConocoPhillips Company ("Defendant" or "ConocoPhillips") hereby submits its first supplemental disclosure statement.

## PRELIMINARY STATEMENT

Initial disclosures are designed "to ensure that all parties are fairly informed of the facts, legal theories, witnesses, documents, and other information relevant to the action." ARIZ. R. CIV. P. 26.1(c)(1). Parties must disclose the information in their possession, custody or control and that which they "can ascertain, learn, or acquire by reasonable inquiry and investigation." ARIZ. R. CIV. P. 26(c)(2). Defendant's understanding of Plaintiffs' claims is dictated by the information disclosed in Plaintiffs' pleadings, responses to written discovery, certain depositions, and its own document productions.

This is not a breach of contract dispute where it can be assumed that the plaintiff and defendant have similar access to discoverable information. This is a case involving alleged occupational exposure to motor fuels decades ago at locations that Defendant has not owned or operated for many years. Therefore, Defendant's disclosures are limited to what it can synthesize from the information provided by Plaintiffs, co-defendants, and third parties. Defendant understands its obligations and will at all times comply with its "continuing duty to supplement or amend these disclosures as new or additional information is discovered or revealed." ARIZ. R. CIV. P. 26.1(d)(2).

Plaintiffs allege that Mr. Elwyn Webb ("Webb") worked as a gasoline truck driver from 1985 to 2016 while employed by "Calzona Tankways and Coastal Transport Company, Inc." Comp. at ¶ 21. As a result of that work, Plaintiffs claim that Webb developed (and died from) a

EPSXMAJ0000000059

PSXCAN00003086

form of cancer known as myelodysplastic syndrome (MDS). Comp. at ¶ 25. At the outset the Court should note that Defendant disputes a definitive diagnosis in this case of MDS. Defendant also disputes Plaintiffs' general causation theory—i.e., that exposure to fuels such as gasoline and diesel can cause this cancer (or any cancer) in humans.

Plaintiffs filed this action against sixteen defendants claiming that each owned and/or operated "terminals and loading racks" where Mr. Webb allegedly worked as a gasoline truck driver. Comp. at ¶ 22. Plaintiffs claim that "[i]n the course of his work at defendants' premises, Mr. Webb was exposed to benzene through inhalation and dermal absorption of defendants' gasoline." Comp. at ¶ 24. This exposure, according to Plaintiffs, resulted in Mr. Webb's illness and death. Plaintiffs allege negligence claims against all defendants under theories of premises liability and failure to warn. *See* Comp. at ¶¶ 27-43.

Turning to the disclosure rule, in order for ConocoPhillips to disclose all relevant "facts, legal theories, witnesses, documents, and other information relevant to the action," it must first understand what Plaintiffs' case is about. This includes a baseline understanding of Mr. Webb's exposure history, including the places he worked, the dates when he worked, and—perhaps most importantly—the particular fuels he loaded. Comp. at ¶ 22. No matter how Plaintiffs phrase, position, or categorize their claims, the **particular products** and manufacturers must be identified before relevant information about those products can be provided. In an automotive case, the make and model would have to be identified before a car maker would be required to disclose the details about a car. The same goes here. Generalities from Plaintiffs cannot trump basic fairness.

When it comes to the instant case, only some of this information is currently available. Plaintiffs' complaint identifies by address nine terminals that each of the defendants allegedly

EPSXMAJ0000000059

1   owned. Comp. at ¶ 22.  Plaintiffs claim that ConocoPhillips owned two of these locations: (1) South

2   51st Avenue, Phoenix, Arizona 85043, and (2) 134 North Avenue, Phoenix, Arizona 85005. *Id.*

3        ConocoPhillips has no record of any asset located at "**134 N. 55th Ave., Phoenix, AZ**

4   **85005.**" Comp. at ¶ 22.  It is aware of a terminal previously owned by Continental Oil Company

5

6   located off Van Buren Street in between South 55th Avenue and South 51st Avenue.  Defendant's

7   investigation suggests that Continental Oil Company owned the terminal in the 1970s and disposed

8   of it in the early-to-mid 1980s. Although its investigation remains ongoing, Defendant believes that

9   a Kinder Morgan-affiliated entity eventually acquired the property but it cannot say when. It is

10  believed that the Kinder Morgan-affiliated entity owned this terminal during the mid-2000s.

11       ConocoPhillips discloses the following information about the ownership history of the

12  terminal associated with the address: "**S. 51st Ave., Phoenix, AZ 85043.**" Complaint at ¶ 22. Tosco

13

14  Corporation purchased a terminal at this address from Union Oil Company of California in

15  December 1996.  Phillips Petroleum Company acquired the terminal after merging with Tosco in

16  2001. ConocoPhillips then acquired this asset as part of a merger between Conoco Inc. and Phillips

17  Petroleum Company.  This asset was sold by ConocoPhillips to a Kinder Morgan affiliate in 2008.

18  With respect to the location at South 51st Avenue, Phoenix, Arizona 85043, neither COP nor a

19  predecessor company operated the Tosco Terminal at that location before 1997 or after 2008.

20

21  Responsive information, to the extent it exists, will only be available for the Tosco Terminal, and

22  only between 1997 and 2008.

23       In addition, Plaintiffs do not identify when Webb visited the ConocoPhillips terminal during

24  his thirty-one year career as a gasoline truck driver. COP has yet to identify any evidence suggesting

25  that Webb loaded gasoline products from the Tosco Terminal. Although its investigation remains

26

EPSXMAJ0000000059

ongoing, COP has not identified any bills of lading or similar tickets reflecting Mr. Webb's signature or identification number. Records from Mr. Webb's employer, Coastal Transportation, indicate that Mr. Webb was assigned two employee identification numbers over the course of his career (3280 and 0490). Neither of these numbers could be found in the limited electronic data that COP possesses for the Tosco Terminal. Testimony from co-workers of Mr. Webb in this case have not identified when Mr. Webb loaded at the Tosco Terminal, how often, or what products. COP cannot be reasonably expected to conduct comprehensive discovery unless and until it is shown that Mr. Webb visited and worked at the Tosco Terminal between 1997 and 2008. Perhaps Plaintiffs have incomplete information, have no such information, or are counting on discovering this information from third parties as this case goes along. The point remains: Defendant has no idea when Webb loaded fuels (if ever) at a terminal owned or operated by it or one of its predecessor companies.[1]

Plaintiffs also fail to identify with sufficient specificity the products that Mr. Webb allegedly handled. Plaintiffs' pleadings and discovery responses make distinctions between the terminals and owners, but in describing the relevant products, Plaintiffs simply say "gasoline." *See, e.g.*, Comp. at ¶¶ 2-24. That is like describing "mail" as the material a particular mailman encountered. For purposes of this lawsuit, "gasoline" conceivably covers a range of motor fuels, with slightly different chemical compositions, formulas, additives, and having been derived from different refining methods and bulk crude oil. Stating that Mr. Webb loaded "gasoline" at a

---

[1] ConocoPhillips was created through the merger of Conoco Inc. and Phillips Petroleum Co. on August 30, 2002.

EPSXMAJ0000000059

ConocoPhillips terminal during an unspecified time period between 1985 and 2016 is insufficient for ConocoPhillips to identify, much less disclose, the product information that actually matters.

Once Plaintiffs identify, either through written discovery or deposition testimony, the specific products that Mr. Webb allegedly handled at a terminal owned by ConocoPhillips (or more likely from a predecessor), the specific product information—including MSDS sheets and related materials—will be specifically identified. In the interim, ConocoPhillips is disclosing relevant information that it either had in its possession, or that it found at the terminal in question.

As described herein, ConocoPhillips' investigation into the claims and defenses asserted in this action continues and, therefore, ConocoPhillips expressly reserves the right to supplement and/or amend these initial disclosures. ARIZ. R. CIV. P. 26.1(d)(2) ("The duty of disclosure prescribed in Rule 26.1(a) is a continuing duty, and each party must serve additional or amended disclosures when new or additional information is discovered or revealed.").

## I.    FACTUAL BASIS  AND LEGAL THEORIES FOR DEFENSES:

A.    **Negligence – Premise Liability.** To prevail on this claim, Plaintiffs must prove the existence of a duty, breach of that duty by Defendant, that the breach was the actual and proximate cause of injury and the nature and extent of damages. See e.g., *Glaze v. Larsen*, 207 Ariz. 26, 29, 83 P.3d 26, 29 (2004). Here, Plaintiffs cannot satisfy the burden of proof on the elements of their claim.

Mr. Webb was an independent contractor. "Arizona courts have consistently recognized that a landowner is not liable for the negligent conduct of an independent contractor unless the landowner has been independently negligent. See *Welker v. Kennecott*, 1 Ariz. App. 395, 401–04, 403 P.2d 330, 336–39 (1965) (citing Restatement (First) of Torts § 409 (1934) ("Except as stated

EPSXMAJ0000000059

in §§ 410 to 429, the employer of an independent contractor is not subject to liability for bodily harm caused to another by a tortious act or omission of the contractor or his servants."). Here Plaintiffs have no evidence that ConocoPhillips or any of its predecessors were independently negligent and ConocoPhillips denies that they breached any duty owned to Mr. Webb. *Barkhurst v. Kingsmen of Route 66, Inc.,* 234 Ariz. 470, 473, 323 P.3d 753, 756 (App. 2014).

ConocoPhillips further contends that Plaintiffs are unable to meet their burden of proof as to causation. Under Arizona law, "it is not sufficient in an action for damages that plaintiff show a certain injury might have been caused by the negligence of defendants. It is necessary to establish that the injuries have been so caused." *Butler v. Long,* 117 Ariz. 395, 396, 573 P.2d 86, 87 (Ariz. App. 1977). Furthermore, "[t]o establish the causal connection between an accident and injury, a sine qua non of liability, medical testimony as to the possibility of such causal connection, without more, is insufficient." *Id.* (citing *Coca-Cola Company of Tuscon v. Fitzgerald,* 3 Ariz. App. 303, 306, 413 P.2d 869, 872 (1966)). Here, Plaintiffs must be able to prove that gasoline in general causes the type of injuries that Mr. Webb sustained and that Mr. Webb's particular injuries were specifically caused by his exposure at the fuels loading rack at issue. Plaintiffs cannot establish either general or specific causation in this case.

Lastly, to the extent Plaintiffs cannot establish damages, Plaintiffs claim fails. Plaintiff has the burden of proving its damages with reasonable certainty. *Gilmore v. Cohen,* 95 Ariz. 34, 386 P.2d 81 (1963); *Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 304, 603 P.2d 921, 931 (App. 1979); accord *Valley National Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974). Speculation and conjecture cannot provide the basis for any award of damages. *Gilmore,* 95 Ariz. At 36, 386

EPSXMAJ0000000059

1   P.2d at 82. Plaintiffs cannot recover any damages that are not reasonably certain, unrelated, and/or

2   unnecessary.

3       To the extent Mr. Webb failed to mitigate his damages, Plaintiffs' damages must be reduced

4   accordingly. One "who is injured as the result of the negligence of another is bound to exercise

5   ordinary care to prevent or reduce the damages consequent to an injury, and cannot recover

6   
7   enhanced damages growing out his failure to use such care." *Sanders v. Beckwith*, 79 Ariz. 67, 71,

8   283 P.2d 235, 238 (1955).

9       In addition, Plaintiffs cannot meet their burden of proof with respect to punitive damages.

10  "[P]unitive damages are only recoverable under special circumstances . . . Something more than

11  the mere commission of a tort is always required for punitive damages." *Rawlings v. Apodaco*, 726

12  P.2d 565, 578 (Ariz. 1986). "Thus, to obtain punitive damages, plaintiff must prove that

13  defendant's evil hand was guided by an evil mind." *Id.* Plaintiff must prove an evil mind by

14  establishing the defendant intentionally caused the injury or "consciously pursued a course of

15  conduct knowing that it created a substantial risk of significant harm to others." *Id.* Thus, an evil

16  mind is "conduct involving some element of outrage similar to that usually found in a crime." *Id.*

17  Plaintiffs have no evidence to meet this burden as to ConocoPhillips.

18  
19      B.      **Negligence – Failure to Warn**. ConocoPhillips denies that it breached any duty it

20  owed to Mr. Webb with respect to his failure to warn claim. First, Mr. Webb was not employed by

21  ConocoPhillips or its predecessors and had no control over the manner in which Mr. Webb was

22  trained or performed his work duties outside of ConocoPhillips or its predecessor's loading rack.

23  In addition, Mr. Webb's employers had a non-delegable duty to warn Mr. Webb of the potential

24  
25  hazards related to his work. Based upon Webb's employer's policies, his commercial driver's

26  

EPSXMAJ0000000059

1  license, and 49 CFR § 177.816, et. seq., Mr. Webb was required by regulation to know the hazards

2  of the materials that he was transporting.  ConocoPhillips and its predecessors made the material

3  safety data sheets for products loaded or unloaded at its loading rack available to any third party

4  driver, including Mr. Webb.  Each material safety data sheet contained adequate warnings and

5  content information with respect to the products at the loading rack.  Mr. Webb's co-workers

6  confirmed that material safety data sheets were made available to third party drivers, such as Mr.

7  Webb.

8

9       Further, Plaintiffs face the same issue with respect to lack of causation and speculative

10  damages as outlined above.

11       A.      **Assumption of the Risk.**  "A plaintiff who fully understands a risk of harm to

12  himself or his things caused by the defendant's conduct or by the condition of the defendant's land

13  or chattels, and who nevertheless voluntarily chooses to enter or remain or to permit his things to

14  enter or to remain within the area of that risk, under circumstances that manifest his willingness to

15  accept it, is not entitled to recover for harm within hat risk".  *Hildebrand v. Minyard*, 494 P.2d

16  1328, 1330 (Ariz. Ct. App. 1972); Restatement (Second) of Torts § 496(C) (1965).  Plaintiffs'

17  claims are barred if Mr. Webb manifested his willingness to accept the risk of exposure by not

18  following safety precautions, protocols, policies and/or training to prevent the same.

19

20       B.      **Non-Parties at Fault.**  ConocoPhillips has already identified the non-parties at fault

21  pursuant to A.R.S. § 12-2506.  Mr. Webb was employed as a tanker truck driver from 1985 to 1993

22  for Calzona Tankways, Inc.  Calzona Tankways, Inc. was responsible for properly instructing

23  Decedent on how to safely load and unload gasoline and fuels.  In addition, Calzona Tankways,

24  Inc. was responsible for providing the personal protective equipment and training, including

25

26

PSXCAN00003093

EPSXMAJ0000000059

1  warnings and directives that Plaintiffs allege should have been provided to Mr. Webb by the

2  defendants named in this action.   To the extent Plaintiffs allege Mr. Webb contracted MDS from

3  exposure to gasoline or other fuels, it occurred in whole or in part due to Calzona's failure to

4  properly instruct Mr. Webb on how to safely load or unload gasoline or other hazardous materials,

5

6  failures to property warn or direct Mr. Webb, failure to instruct Mr. Webb on how to properly wear

7  personal protective equipment, and failure to properly supervise or oversee Mr. Webb. As a

8  company specializing in fueling transportation, Calzona Tankways, Inc. was a sophisticated user

9  (i.e. person of special experience) presumed to be knowledgeable regarding industrial standards

10  and related hazards. The sophistication of this intermediary, in combination with its relationship as

11  employer to the Mr. Webb, imposed upon it a duty to warn the Mr. Webb - if there was a duty to

12  warn at all. For the foregoing reasons, Calzona Tankways, Inc. is wholly or partially at fault in

13

14  causing the damages alleged and sought by Plaintiffs in this action.

15         In addition, Mr. Webb was employed as a tanker truck driver from 1994 to 2015 for Coastal

16  Transport Co., Inc.  Coastal Transport Co. Inc. was responsible for properly instructing Decedent

17  on how to safely load and unload gasoline and fuels.  Coastal Transport Co. Inc. was also

18  responsible for providing the personal protective equipment and training, including warnings and

19  directives that Plaintiffs allege should have been provided to Mr. Webb by the defendants named

20

21  in this action.  To the extent Plaintiffs allege Mr. Webb contracted MDS from exposure to gasoline

22  or other fuels, it occurred in whole or in part due to Coastal's failure to properly instruct Mr. Webb

23  on how to safely load or unload gasoline or other hazardous materials, failures to property warn or

24  direct Mr. Webb, failure to instruct Mr. Webb on how to properly wear personal protective

25  equipment, and failure to properly supervise or oversee Mr. Webb.  As a company specializing in

26

EPSXMAJ0000000059

fueling transportation, Coastal Transport Co., Inc. was a sophisticated user (i.e. person of special experience) presumed to be knowledgeable regarding industrial standards and related hazards. The sophistication of this intermediary, in combination with its relationship as employer to Mr. Webb, imposed upon it a duty to warn Mr. Webb - if there was a duty to warn at all. For the foregoing reasons, Coastal Transport Co., Inc. is wholly or partially at fault in causing the damages alleged and sought by Plaintiffs in this action.

To the extent additional non-parties at fault are identified through investigation or discovery, ConocoPhillips will provide appropriate notice in accordance with Rule 26(b)(g).

C. **Comparative and Contributory Fault.** The Uniform Contribution Among Tortfeasors Act (UCATA) abolished joint and several liability. A.R.S. § 12-2506. "Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be entered against the defendant for that amount. *Id.* The purpose of the UCATA is to increase fairness among the parties "by making each tortfeasor liable for only his or her share of fault, and no more." *Hutcherson v. City of Phoenix*, 961 P.2d 449, 452 (Ariz. 1998). To the extent Mr. Webb, other parties, and/or non-parties caused or contributed to Mr. Webb's injuries or death, Plaintiffs are estopped from seeking recovery from ConocoPhillips.

D. **Affirmative Defenses.** Defendant asserts the following affirmative and other defenses conditional upon facts, circumstances, and matters learned through discovery, investigation, disclosure, or from any source whatsoever:

    a. Plaintiffs' Complaint fails to state a claim upon which relief can be granted and should be dismissed with prejudiced.

EPSXMAJ0000000059

b. Plaintiffs' claims are barred by the applicable statutes of limitations and repose.

c. Plaintiffs' claims are barred by the doctrines of comparative negligence, contributory negligence, and assumption of the risk, as well as avoidable consequences. Mr. Webb failed to exercise ordinary care for his own safety and well-being in failing to follow proper safety protocols, written policies and procedures, warnings, and safe work practices.

d. ConocoPhillips is not liable for any pre-judgment interests or any punitive and/or exemplary damages which may be sought by Plaintiffs in this matter.

e. ConocoPhillips had not duty or responsibility with regard to the manner, method, and means for the performance of Mr. Webb's work. No relationship existed between Plaintiffs, including Mr. Webb, and ConocoPhillips which created any duty on the part of ConocoPhillips regarding the manner, method, or conditions under which Mr. Webb performed his work. ConocoPhillips had no right to control the manner, method or conditions under which Mr. Webb performed his work.

f. Plaintiffs' claims are barred by the doctrines of waiver, estoppel, laches, license and permitted activity.

g. At all relevant times, ConocoPhillips complied with all applicable laws, regulations, policies and standards.

h. ConocoPhillips affirmatively denies that there is valid medical or scientific evidence that meets the criteria for admission into evidence under the standard articulated in *Daubert v. Merrill Down Pharmaceuticals,* 113 S.Ct. 2786 (1993),

EPSXMAJ0000000059

that any of Mr. Webb's injuries or diseases were caused by exposure to the complained of product(s).

i.   Plaintiffs' claims are barred by the Bulk Supplier/Sophisticated User Doctrine and the Learned Intermediary Doctrine.

j.   Plaintiffs' claims are barred, in whole or in part, by the Federal Hazardous Substances Labeling Act.

k.   No act or omission by ConocoPhillips caused or contributed to the harm alleged by Plaintiffs.

l.   Plaintiffs cannot show that Mr. Webb had any exposure to any product at the Tosco Terminal, or that his exposure, if any, was in sufficient quantity to have been a proximate or producing cause of any injury alleged by Plaintiffs. Further, Plaintiffs cannot show that Mr. Webb's exposure, if any, to any benzene-containing product caused or contributed to, or was a substantial factor in bringing about, the alleged injury, condition or damages alleged in Plaintiffs' Complaint.

m.   Prior to Plaintiffs' non-suit or dismissal of any claims against any other party, ConocoPhillips specifically asserts its right to a submission of any non-suited or dismissed party as a non-party at fault as well as the submission of any other current party subsequently dismissed and any settling person or parties.

n.   Mr. Webb's injuries complained of herein were brought about wholly by a new and independent cause or causes not reasonably foreseeable by ConocoPhillips and; therefore, such new and independent cause or causes became the immediate

EPSXMAJ0000000059

PSXCAN00003097

and efficient cause or causes of injury to the extent that any and all of the allegedly negligence acts and/or omissions complained of by Plaintiffs against ConocoPhillips were wholly remote and non-causative of the injuries complained of by Plaintiffs.

o. To the extent Mr. Webb smoked tobacco products despite being aware of the health hazards of smoking tobacco cigarettes, if any damages are awarded, then those damages should be reduced in whole or in part by the damage caused by cigarette smoking.

p. To the extent Mr. Webb smoked tobacco products despite being aware of the health hazards associated with smoking and any warning given by his doctors, recovery should be barred to the extent he failed to mitigate these damages.

q. To the extent that smoking caused or contributed to the cause of Mr. Webb's injuries or diseases, then Plaintiffs' claims should be reduced in whole or in part by the damages caused by cigarette smoking.

r. Plaintiffs' claims based upon improper warnings, labels, or disclosure fail as a matter of law because the complained of product(s), at all relevant times, complied with applicable OSHA standards regarding labels and warnings for products which contain trace amounts of benzene, a preemption of the state law claims.

s. Plaintiffs' claims based on workplace exposure, warnings, labels, training and/or protective equipment fail as a matter of law because they impermissibly seek to shift the burden of providing a safe workplace, which OSHA imposes upon the

EPSXMAJ0000000059

PSXCAN00003098

1      employer, to ConocoPhillips, a violation of the statutes which preempt the state

2      law claims.

3      t.   Plaintiffs cannot identify any alleged benzene-containing product to which Mr.

4      Webb was specifically exposed that was manufacture, marketed, or supplied by

5

6      ConocoPhillips.

7      u.   Mr. Webb received adequate training regarding safe handling of the complained

8      of product(s).

9      v.   Plaintiffs' injuries and damages, if any, were caused by an act of nature beyond

10     the control of Defendant and/or were the natural and ordinary consequence of

11     life.

12     w.   Plaintiffs' injuries and damages, if any, were caused by acts or omissions of

13     persons or entities beyond the control of Defendant.

14

15     x.   Plaintiffs' injuries and damages, if any, were solely and proximately caused by

16     a superseding or intervening set of causes and events put in motion by others,

17     including but not limited to liable third parties.

18     y.   Plaintiffs have failed to join all necessary and/or indispensable parties to this suit

19     pursuant to Rule 19 of the Arizona Rules of Civil Procedure.

20

21     z.   Plaintiffs' claims are barred, in whole or in part, because they failed to mitigate

22     any damages they allegedly suffered.

23     aa. ConocoPhillips alleges that all or some of Plaintiffs' claims are barred as a

24     matter of law due to statutory compliance. See Restatement (Third) of Torts:

25     Product Liability § 4 cmt. e.

26

EPSXMAJ0000000059

PSXCAN00003099

bb. Plaintiffs' alleged damages, if any, should be apportioned among all parties at fault, and any nonparties at fault, pursuant to the Uniform Contribution Among Tortfeasors Act. *See, e.g.*, A.R.S. 12-2501, *et seq.*

cc. Plaintiffs' claims for punitive or exemplary damages violate provisions of the United States and Arizona Constitutions, including the Due Process Clause of the Fourteenth Amendment to the United States and Article 2, Section 4 of the Arizona Constitution.

dd. Plaintiffs' claims for punitive or exemplary damages may be barred by Article II, Section 35 of the Arizona Constitution.

ee. Plaintiffs' request for punitive or exemplary damages violates ConocoPhillips's right to equal protection under the law under both the United States Constitution and the Arizona Constitution, and therefore fails to state a basis upon which either punitive or exemplary damages can be awarded.

ff. During the period of time for which Plaintiffs have asserted a claim for injuries and damages, the Worker's Compensation Law of the State of Arizona provided that a person suffering from an alleged occupational disease could claim worker's compensation disability benefits against his last employer at the time the disease was discovered. ConocoPhillips would show that if Mr. Webb indeed contracted an illness or injury because of his occupation, the alleged injury or illness is due to the nature of the occupation and was acquired over a long period of time and is not the result of working with any particular product or the use of any particular product.

PSXCAN00003100

EPSXMAJ0000000059

1    gg. Plaintiffs' claims may be barred by other affirmative defenses that may come to

2        light during disclosure and discovery, including the failure of conditions

3        precedent, spoliation, and limitations imposed by law.

4    ConocoPhillips reserves the right to supplement or amend this section and plead additional

5
     or different defenses and/or affirmative defenses.
6

7    **III.    LAY WITNESSES DEFENDANT EXPECTS TO CALL AT TRIAL:**

8        ConocoPhillips is yet to identify the lay witnesses it expects to call at trial. ConocoPhillips

9    will call all custodians of records needed to provide the foundation for the admissibility of exhibits.

10   It may also call some or all of the witnesses listed by Plaintiffs and other defendants, including

11   current and former employees and corporate representatives. ConocoPhillips reserves the right to

12   supplement or amend this section in accordance with Rule 26.1(d)(2). ConocoPhillips preliminary

13
     identifies the following trial witnesses:
14

15                **Ms. Mary Major**
16                c/o Keith Patton, Esq.
                  Patton Law, P.C.
17                500 Copper Ave NW, Suite 100
                  Albuquerque, NM 87102
18                Tel.: (505) 910-4800

19       Ms. Major is a plaintiff in this case. It is anticipated that she will testify about her

20   knowledge of Decedent's work history, medical history and other relevant matters.

21   Additional information may be developed in her deposition.

22                **Mr. Joshua Major**
23                c/o Keith Patton, Esq.
                  Patton Law, P.C.
24                500 Copper Ave NW, Suite 100
                  Albuquerque, NM 87102
25                Tel.: (505) 910-4800

26

EPSXMAJ0000000059

PSXCAN00003101

1    Mr. Major is a plaintiff in this case. It is anticipated that he will testify about his

2    knowledge of Decedent's work history, medical history and other relevant matters.

3    Additional information may be developed in his deposition.

4    **Mark Loudermilk**
     Address & Telephone Number Unknown

5

6    Upon information and belief, Mr. Loundermilk was Decedent's co-worker. It is

7    anticipated that he will be presented to offer testimony regarding Decedent's work history,

8    working conditions, other issues relating to Decedent's employment, and other relevant

9    matters.

10

11   **Representatives of ConocoPhillips (and predecessors)**
     c/o Norton Rose Fulbright

12   1301 McKinney, Suite 5100
     Houston, Texas 77010

13   (713) 651-5151

14   ConocoPhillips representatives, and others who may be identified in discovery, are

15

16   expected to testify about their policies, procedures, training, work requirements, safety

17   measures, safety protocols, maintenance, test results, permitting, records, or lack thereof,

18   related to Mr. Webb, equipment, emissions, and other factual circumstances in this case.

19   ConocoPhillips's representatives are expected to testify consistent with any deposition

20   and/or written statement in this matter.

21

22

23

24

25

26

EPSXMAJ0000000059

## IV. OTHER PERSONS DEFENDANT BELIEVES MAY HAVE RELEVANT KNOWLEDGE OR INFORMATION:

| | |
|---|---|
| Ms. Mary Major<br>c/o Keith Patton, Esq.<br>Patton Law, P.C.<br>500 Copper Ave NW, Suite 100<br>Albuquerque, NM 87102<br>Tel.: (505) 910-4800 | Party, witness, custodian of records. |
| Mr. Joshua Major<br>c/o Keith Patton, Esq.<br>Patton Law, P.C.<br>500 Copper Ave NW, Suite 100<br>Albuquerque, NM 87102<br>Tel.: (505) 910-4800 | Party, witness, custodian of records. |
| Mark Loudermilk<br>Address Unknown<br>Phone Number Unknown | Co-worker. Time period unknown. Mr. Loudermilk may have knowledge about Mr. Webb's history, work conditions, and training. |
| Gene Martin<br>Address Unknown<br>Phone Number Unknown | Co-worker. Time period unknown. Mr. Martin may have knowledge about Mr. Webb's history, work conditions, and training. |
| Jim Melvin<br>Address Unknown<br>Phone Number Unknown | Co-worker. Time period unknown. Mr. Melvin may have knowledge about Mr. Webb's history, work conditions, and training. |
| Robert Super<br>Address Unknown<br>Phone Number Unknown | Co-worker. Time period unknown. Mr. Super may have knowledge about Mr. Webb's history, work conditions, and training. |
| Dennis Gilmore<br>Terminal Supervisor<br>2000-2008<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Gilmore is a former supervisor of the Terminal and may offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, Terminal training programs, Terminal health and safety procedures, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| Doug Kleopfer<br>Terminal Supervisor<br>1999-2000 | Mr. Kleopfer is a former supervisor of the Terminal and offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading |

EPSXMAJ0000000059

| | |
|---|---|
| c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | fuel products, procedures at the Terminal governing the loading and unloading of fuel products, Terminal training programs, Terminal health and safety procedures, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| **Bill Crawford**<br>Terminal Supervisor<br>Unknown – 1999<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Crawford is a former supervisor of the Terminal and offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, Terminal training programs, Terminal health and safety procedures, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| **Don Williams**<br>Former Senior Operator<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Williams is a former operator of the Terminal. Mr. Williams may offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| **Mario Ramierz**<br>Former Operator<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Rameriz is a former operator of the Terminal. Mr. Ramierz may offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| **Michael Drappo**<br>Former Operator<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Drappo is a former operator of the Terminal. Mr. Drappo may offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |

EPSXMAJ0000000059

| | |
|---|---|
| Sean McCallister<br>Former Operator<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. McCallister is a former operator of the Terminal. Mr. McCallister may offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| Larry Silva<br>Tosco Corporation<br>HSE Manager, Western Assets<br>1998-2001<br>ConocoPhillips Company/Phillips 66 Company<br>Environmental Manager, Western Assets<br>2000-unknown<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Silva was a Health, Safety and Environmental Manager for Tosco Corporation between 1998-2001. His area of responsibility covered Tosco's western assets, including the Terminal. Mr. Silva was an Environmental Manager for ConocoPhillips Company and Phillips 66 Company between 2002 and 2008. Mr. Silva may offer testimony regarding policies and procedures governing health and safety at the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures governing the loading and unloading of fuel products, Terminal training programs, the environmental history of the Terminal, and regulatory compliance at the Terminal, and experience the Terminal's industrial hygiene monitoring program, with third-party driving companies such as Decedent's former employer |
| Tom Thompson<br>Tosco Corporation/ConocoPhillips Company<br>Safety Coordinator, Southern Terminals and Pipelines<br>1998-2008<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Thompson was a Safety Coordinator for Tosco and ConocoPhillips between 1998 and 2008. His territory of responsibility included the Terminal. Mr. Thompson may offer testimony regarding policies and procedures governing health and safety at the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures governing the loading and unloading of fuel products, the Terminal's industrial hygiene monitoring program, Terminal training programs, regulatory compliance at the Terminal, and experience with third-party driving companies such as Decedent's former employer. |
| Al Cantu<br>Health/Safety/Emergency Coordinator<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Cantu was a Health/Safety/Emergency Coordinator for Tosco and ConocoPhillips Company between 2001 and 2004. His territory of responsibility included the Terminal. Mr. Cantu may offer testimony regarding policies and procedures governing health and safety at the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures governing the loading and unloading of fuel products, the Terminal's industrial hygiene monitoring program, Terminal training programs, regulatory compliance at the Terminal, and experience with |

PSXCAN00003105

EPSXMAJ0000000059

| | |
|---|---|
| | third-party driving companies such as Decedent's former employer. |
| Abe Castro<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Castro may offer testimony regarding policies and procedures governing health and safety at the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures governing the loading and unloading of fuel products, the Terminal's industrial hygiene monitoring program, Terminal training programs, regulatory compliance at the Terminal, and experience with third-party driving companies such as Decedent's former employer. |
| Cornelius Flynn<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Flynn may offer testimony regarding policies and procedures governing health and safety at the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures governing the loading and unloading of fuel products, the Terminal's industrial hygiene monitoring program, Terminal training programs, regulatory compliance at the Terminal, and experience with third-party driving companies such as Decedent's former employer. |
| Robert Lowe<br>Former Operator<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Lowe is a former operator of the Terminal. Mr. Lowe may offer testimony regarding the operations of the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures at the Terminal governing the loading and unloading of fuel products, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| Vance Webb<br>ConocoPhillips Company<br>Director of Health & Safety, Western Assets<br>2002-2008<br>c/o Brett J. Young<br>Norton Rose Fulbright US LLP<br>1301 McKinney Street, Suite 5100<br>Houston, Texas 77002 | Mr. Webb was the Director of Health and Safety for western asserts owned and operated by ConocoPhillips Company between 2002 and 2008. His area of responsibility included the Terminal. Mr. Webb may offer testimony regarding policies and procedures governing health and safety at the Terminal, equipment used at the Terminal for loading and unloading fuel products, procedures governing the loading and unloading of fuel products, Terminal training programs, regulatory compliance at the Terminal, the Terminal's industrial hygiene monitoring program, and experience with third-party driving companies such as Decedent's former employer. |
| Coastal Transport Company, Inc.<br>1214 S. 51st Ave., Phoenix, AZ 85043 | Employer<br>1985-2016 |

EPSXMAJ0000000059

| Phone Number Unknown<br><br>Custodian of Records<br>Coastal Transport Company, Inc.<br>Address Unknown<br>Phone Number Unknown | Employees and representatives of Coastal Transport Company, Inc. may have knowledge about Mr. Webb's history, employment, work conditions, and training. |
|---|---|
| Calzona Tankways<br>Address Unknown<br>Phone Number Unknown<br><br>Custodian of Records<br>Calzona Tankways<br>Address Unknown<br>Phone Number Unknown | Employer<br>1985-2016<br><br>Employees and representatives of Calzona Tankways may have knowledge about Mr. Webb's history, employment, work conditions, and training. |
| Dr. Manpreet Chadha<br>Palo Verde Cancer Specialists<br>5601 W. Eugie Ave., Suite 106<br>Glendale, AZ 85304 | Treated Mr. Webb for MDS. |
| Lois D. Salo, Custodian of Records<br>Various Medical Providers<br>Banner Estrella Medical Center<br>9201 W. Thomas Road<br>Phoenix, AZ 85037 | Treated Mr. Webb for MDS. |
| Dr. Robert Cercek<br>18444 N. 25th Ave., Ste. 210<br>Phoenix, AZ 85023 | Performed knee surgery on Mr. Webb. |

As discovery is in its early stages, ConocoPhillips reserves the right to supplement this section.

**V.     PERSONS KNOWN BY DEFENDANT TO HAVE GIVEN WRITTEN OR RECORDED STATEMENTS:**

ConocoPhillips is currently unaware of any such statements.

**VI.     EXPERT WITNESSES:**

ConocoPhillips will designate expert witnesses and supplement this section in accordance with Rule 26.1(d)(2) and the Scheduling Order entered by the Court.

**VII.     DAMAGES:**

EPSXMAJ0000000059

ConocoPhillips is not affirmatively seeking damages, but it disputes the amount and method of calculating the damages claimed by Plaintiffs and seeks to cross examine all witnesses offered by Plaintiffs on those subjects.

**VIII. TANGIBLE EVIDENCE & RELEVANT DOCUMENTS**

| | |
|---|---|
| Carrier Access Agreement Between Tosco and Coastal | PSXMAJ00000001-03 |
| Industrial Hygiene Monitoring Data from Phoenix Terminal | PSXMAJ00000004-06 |
| Coastal Delivery Data | PSXMAJ00000007-31 |
| Schedule of Terminal Acquired by Tosco from Union Oil Company of California | PSXMAJ00000032-33 |
| Coastal Delivery Data | PSXMAJ00000034 |
| Terminal Access Agreement between ConocoPhillips and Coastal | PSXMAJ00000035-39 |
| 2012 ConocoPhillips Consent to Assign | PSXMAJ00000040-41 |
| Master Motor Carrier Services Agreement Between ConocoPhillips and Coastal | PSXMAJ00000042-68 |
| Bills of Lading regarding Eugene (Gene) Martin | PSXMAJ00000069-111 |
| Coastal Delivery Data | PSXMAJ00000112 PSXMAJ00000113 PSXMAJ00000114-188 |
| Organizational Charts | PSXMAJ00000189-235 |
| Hazard Communication Policy | PSXMAJ00000236-242 |

EPSXMAJ0000000059

| | |
|---|---|
| Respiratory Protection Standard | PSXMAJ00000243-266 |
| Sample Forms | PSXMAJ00000267-272 |
| Air Emission and Vapor Recovery Unit Reports | PSXMAJ00000273-334 |
| Air Permitting, Air Emission, and Vapor Recovery Unit Reports | PSXMAJ00000335-590 |
| Air Permitting Documents, Air Emission Reports, Storage Tank Inspection Reports, and Vapor Recovery Unit Maintenance and Inspection Reports | PSXMAJ00000591-1394 |
| Phoenix Terminal Work Instructions | PSXMAJ00001395-1652 |
| Tosco Spill Response Plan for Phoenix Terminal | PSXMAJ00001653-1905 |
| Air Permitting, Air Emission, and Vapor Recovery Unit Reports | PSXMAJ00001906-2131 |
| Air Permitting, Air Emission, and Vapor Recovery Unit Reports | PSXMAJ00002132-2360 |
| Phoenix Terminal Environmental Manuals | PSXMAJ00002361-2422 |
| Air Permitting, Air Emission, and Vapor Recovery Unit Reports | PSXMAJ00002423-2686 |
| Phoenix Terminal Strategic Plan | PSXMAJ00002687-2807 |
| Health, Environmental & Safety Manual | PSXMAJ00002808-3211 |

EPSXMAJ0000000059

PSXCAN00003109

| Material Safety Data Sheets found at Phoenix Terminal | PSXMAJ00003212-3491 |
|---|---|
| Phoenix Terminal Emergency Response Plan | PSXMAJ00003492-4382 |
| Monthly Load Rack Inspection Reports | PSXMAJ00004383-4431 |
| Storage Tank Inspection Reports | PSXMAJ00004432-4465 |
| Information Regarding Terminal Safety Policies and Driver Information | PSXMAJ00004466-4470 |
| Vapor Monitoring Reports | PSXMAJ00004471-4493 |
| Seal Inspection logs | PSXMAJ00004494-4580 |
| Driver Domeout Lists | PSXMAJ00004581-4592 |
| Quarterly Emergency Shutdown Check | PSXMAJ00004593 |
| Operator Inspections | PSXMAJ00004594-4610 |
| Vapor Recovery Unit Preventative Maintenance Checklist | PSXMAJ00004611-4622 |
| Vapor Recovery Unit Documents | PSXMAJ00004623-4636 |
| Air Permit and Vapor Recovery Unit Documents | PSXMAJ00004637-4647 |

EPSXMAJ0000000059

PSXCAN00003110

| | |
|---|---|
| Vapor Recovery Unit Operation | PSXMAJ00004648-4660 |
| Phoenix Terminal Facility Inspection Reports | PSXMAJ00004661-4864 |
| Driver Infractions | PSXMAJ00004865-4866 |
| Driver Information | PSXMAJ00004867-4947 |
| Air Permit Documents | PSXMAJ00004948-4978 |
| Industrial Hygiene Monitoring Data | PSXMAJ00004979-5042 |
| Load Rack and Driver Loading Card Agreement for Elwyn Webb and Other Drivers | PSXMAJ00005043-5197 |
| Driver Information | PSXMAJ00005198-5236 |
| Phoenix Terminal Canopy Project Information | PSXMAJ00005237-5365 |
| Vapor Recovery Pressure Monthly Check | PSXMAJ00005366-5376 |
| Vapor Recover Unit Preventative Maintenance Checklist | PSXMAJ00005377-5596 |
| Phoenix Terminal Masterplan | PSXMAJ00005597-5743 |
| Material Safety Data Sheets found at Phoenix Terminal | PSXMAJ00005744-5795 |

| Vapor Recovery Unit Maintenance Logs and Documents | PSXMAJ00005796-5859 |
| --- | --- |
| Driver Domeot and Overfill Reports | PSXMAJ00005860-6278 |
| Phoenix Terminal Domeout/Loadrack Information | PSXMAJ00006279-6333 |
| Phoenix Terminal Inspection Reports | PSXMAJ00006334-6411 |
| Phoenix Terminal Information | PSXMAJ00006412-6546 |
| Phoenix Terminal Permit Information | PSXMAJ00006547-6716 |
| Phoenix Terminal Operating Documents | PSXMAJ00006717-6961 |

## IX: INSURANCE AGREEMENTS:

ConocoPhillips produces the following documents:

| Canal Insurance Policies | PSXMAJ00006962-7949 |
| --- | --- |

In addition, ConocoPhillips refers Plaintiffs to the Master Motor Carrier Services Agreement between ConocoPhillips and Coastal, PSXMAJ00000042-68.

PSXCAN00003112

NORTON ROSE FULBRIGHT US LLP


By: _____ /s/ Michael B. McTaggart_____
   Michael B. McTaggart
   State Bar No. 030178
   michael.mctaggart@nortonrosefulbright.com
   Brett J. Young (*pro hac vice*)
   State Bar No. 24042203
   brett.young@nortonrosefulbright.com
   devin.wagner@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246

**COUNSEL FOR DEFENDANT
CONOCOPHILLIPS COMPANY**

COPY of the foregoing delivered this
14th day of May 2019, to:

Scott I. Palumbo
Palumbo Wolfe & Palumbo P.C.
2800 N. Central Ave., Suite 1400
Phoenix, Arizona 85004
(602) 265-5777
(602) 265-7222 (fax)
pwsp@palumbowolfe.com

Keith E. Patton, Esq.
Patton Law, P.C.
500 Cooper Ave. NW, Suite 100
Albuquerque, NM 87102
(505) 910-4800
(505) 910-4382 (fax)
keith@pattonlaw.com
(*pro hac vice pending*)

**ATTORNEYS FOR PLAINTIFFS**

EPSXMAJ0000000059

PSXCAN00003113